# EXHIBIT 1



**CONFIDENTIAL AND PROPRIETARY**
**NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE**

**By Email to Chantelle.Britton@hrsa.hhs.gov**

June 27, 2025

Chantelle Britton, M.P.A., M.S.
Director, Office of Pharmacy Affairs
Health Resources and Services Administration
5600 Fishers Lane
Rockville, MD 20857

> RE: Reasonable Cause Letter for Barrio Comprehensive Family Health Care Center, Inc. (CH062360), inclusive of associated grantee sites

Dear Director Britton:

Federal law requires provides that a 340B "covered entity shall permit . . . the manufacturer of a covered outpatient drug . . . to audit . . . the [covered] entity's compliance with the requirements" of the 340B program, subject to the Secretary of Health and Human Services' procedures.[1] Accordingly, I write on behalf of AbbVie Inc. ("AbbVie") to request approval of the attached plan to audit Barrio Comprehensive Family Health Care Center, Inc. (CH062360), inclusive of associated grantee sites (collectively, "Barrio") based on our reasonable cause to believe that Barrio has violated the anti-diversion provision of the 340B statute. AbbVie has substantial evidence that Barrio is seeking discounts on AbbVie drugs that have been sold, transferred, and dispensed to individuals who do not qualify as patients of a 340B entity, as that phrase is best understood under the 340B statute.

AbbVie's audit request is premised on the best reading of the phrase "patient of the entity" in the 340B statute's anti-diversion provision,[2] which requires a narrower and more precise patient eligibility standard than that adopted by HRSA in its non-binding 1996 guidance ("1996 Guidance").[3] The "best reading"[4] of the 340B statute is that, among other requirements,[5] an individual is eligible to receive a 340B-priced covered outpatient drug only when (1) the drug is prescribed as a direct result of a health care encounter with a provider acting pursuant to an employment or contractual agreement to provide services at the covered entity; (2) the health care service meets the clinical practice standards for diagnosing and treating the condition for which the drug is prescribed; and (3) the health care professional prescribing the drug has direct oversight of the individual's care. Because HRSA's 1996 Guidance fails to specify these requirements, HRSA's Guidance sweeps more broadly than is permitted by the statutory text.

AbbVie has reasonable cause to believe that Barrio's practices fail to comply with these key elements of the statutory patient criteria. In particular, Barrio has told us that it does not require that the 340B-priced drug prescribed be related to the health care service Barrio provided to patients and that it often refers individuals to specialists outside of Barrio and still treats any prescriptions written by those specialists as 340B eligible. Moreover, its answers to AbbVie's good faith inquiries suggest that Barrio allows providers to prescribe 340B drugs following perfunctory one-off encounters and considers individuals to be 340B-eligible patients even when its providers have only minimal involvement in patients' care, including through

---

[1] 42 U.S.C. § 256b(a)(5)(C).
[2] *Id.* § 256b(a)(5)(B).
[3] *See* 61 Fed. Reg. 55,156, 55,157-58 (Oct. 24, 1996).
[4] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).
[5] *See infra* Part I (detailing the best reading of the 340B statute's patient eligibility requirements).

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



brief pretextual telehealth encounters. Because AbbVie has reasonable cause to believe that Barrio "resell[s] or otherwise transfer[s]" 340B drugs to individuals whose relationship with Barrio does not meet statutory program integrity requirements,[6] AbbVie requests HRSA's consent to audit Barrio against the statutory patient criteria set forth in this letter and in the attached audit work plan.

## I.    Criteria for a "Patient of the Entity" in the 340B Statute's Anti-Diversion Provision

AbbVie's audit request is premised on the best reading of the 340B statute's anti-diversion provision, which makes clear that, "with respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a *patient of the entity*."[7] HRSA's interpretation of the anti-diversion provision in the 1996 Guidance enabled covered entities to have broader access to 340B pricing than the statute demands. HRSA's guidance provides in relevant part that an individual is a 340B-eligible "patient of the entity" when:

1.  the covered entity has established a relationship with the individual, such that the covered entity maintains records of the individual's health care; and

2.  the individual receives health care services from a health care professional who is either employed by the covered entity or provides health care under contractual or other arrangements (e.g. referral for consultation) such that responsibility for the care provided remains with the covered entity; and

3.  the individual receives a health care service or range of services from the covered entity which is consistent with the service or range of services for which grant funding or Federally-qualified health center look-alike status has been provided to the entity. Disproportionate share hospitals are exempt from this requirement.

An individual will not be considered a "patient" of the entity for purposes of 340B if the only health care service received by the individual from the covered entity is the dispensing of a drug or drugs for subsequent self-administration or administration in the home setting.[8]

HRSA's interpretation of the 340B statute is over-inclusive and leaves too much latitude to the covered entity to determine who qualifies as a "patient of the entity." Under the best reading of the statutory text, as required by the Supreme Court's decision in *Loper Bright*, an individual is a patient of the covered entity *only* if the following conditions are met:

(I)  The individual receives an outpatient health care service from a covered entity site that is registered and listed in the OPAIS database, and that service meets all of the following requirements:

(a) The covered outpatient drug is prescribed <u>as a direct result</u> of the health care encounter by a health care professional who is acting pursuant to an employment or contractual agreement under which the health care professional provides services at the covered entity site;

(b) The health care encounter is sufficient to allow the health care professional to meet clinical practice <u>standards for diagnosing and treating the condition for which the covered outpatient drug is prescribed</u>;

(c) The health care service takes place within the period of validity of a prescription

---

[6] 42 U.S.C. § 256b(a)(5)(B).
[7] *Id.* (emphasis added).
[8] *See* 61 Fed. Reg. at 55,157-58.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



specified by state law, and in no event more than <u>12 months</u> prior to the dispensing or administration of the covered outpatient drug; and

(d) For covered entities other than Disproportionate Share Hospitals (like Barrio), the health care service is consistent with the services for which grant funding or federally qualified health center look-alike status has been provided to the entity.

(II) The health care professional who provides the service described above has <u>direct oversight</u> of the individual's care, which means that:

(a) The health care professional is personally responsible <u>for diagnosing and directly managing the patient's condition for which the covered outpatient drug is prescribed</u> as part of a provider-patient relationship that is sufficient to meet clinical practice standards for diagnosing and treating the condition for which the covered outpatient drug is prescribed; and

(b) The covered entity maintains <u>primary responsibility</u> for care for <u>the patient's condition for which the covered outpatient drug is prescribed</u>.

The best reading of the 340B statute requires that the 340B-priced drug be prescribed as a "direct result" of the health care encounter with a specific provider at the covered entity. The 340B statute also imposes temporal limitations as to patient eligibility. In contrast to HRSA's 1996 Guidance, the proper understanding of "patient of the entity" incorporates substantive clinical practice standards and oversight that must be met.

As explained below, these requirements are grounded in the text, structure, purpose, and legislative history of the 340B statute. When interpreted using "all relevant interpretive tools," the "best reading of the statute"[9] is that a "patient of the entity" must have a direct, medically substantive, and documented relationship with the covered entity, as reflected in the above requirements. Further, the covered entity must be seeking a discount in connection with covered outpatient drugs prescribed by health care professionals with an appropriate relationship with the covered entity and dispensed as a direct result of services provided to the individual by the specific covered entity.

### 1. Text

The statutory text supports the above criteria. First, the anti-diversion provision bars the transfer of 340B drugs to any individual "who *is not* a patient of the entity."[10] The use of the present tense ("is") demonstrates that a qualifying individual must have a current, active relationship with the covered entity and with a specific prescribing health care professional at that entity. The text also demands that receipt of the covered outpatient drug must be substantively connected to the health care service provided by the entity, and the health care service must meet minimum standards to ensure that the 340B drug is in fact accurately prescribed. The requirement of a substantive connection between the health care received from the entity and the drug prescribed is a commonsense way to give effect to the statute's present-tense patient requirement, and receipt of at least a minimal standard of medical care from the provider is part of the dictionary definition of being a "patient," which involves the receipt of "medical care and treatment."[11]

The statute's requirement of a "patient"-provider relationship mandates the need for the other criteria identified by AbbVie above. Inherent in the requirement of a "patient" relationship is that the encounter which generates the 340B prescription must involve a sufficient level of interaction between the provider and the putative patient. Such an understanding of a health care encounter is reflected in other related

---

[9] *Loper Bright Enters.*, 603 U.S. at 400.

[10] 42 U.S.C. § 256b(a)(5)(B) (emphasis added).

[11] *Patient*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/patient (defining patient as an "individual awaiting or under medical care and treatment").

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



areas of federal law as well. For example, Medicare regulations define a medical "[e]ncounter" as requiring "direct personal contact between a patient and a physician, or other person who is authorized by State licensure law," to "order or furnish hospital services for diagnosis or treatment of the patient."[12]

The 340B statute's use of the phrase "patient *of the entity*" necessarily requires that the covered entity's health care professional must have "direct oversight" over the patient's care and "primary responsibility" for treating the condition for which the patient is prescribed a 340B drug. Other regulatory provisions governing the provision of medical care require, at minimum, that the healthcare services provided to a patient must be, at minimum, furnished under the health care professional's "overall direction and control," and, in many cases, at the "direct supervision" of that professional.[13] These requirements, like the 340B statutory eligibility criteria described above, all draw from the same source—the standards inherent in the patient-provider relationship.

## 2. Structure

The structure of the 340B statute, which creates a highly reticulated scheme open only to a set of narrowly defined classes of beneficiaries and to the individuals that they serve, reinforces the requirements inherent in the patient criteria.[14] As various courts have recognized, Congress took steps to strictly delimit the scope of the 340B program, including by defining with "a high degree of precision"[15] a set of "narrow categories"[16] of entities that may participate in the program. This understanding of the 340B statute is also consistent with Congress's concern for the integrity of the program, as indicated by the express prohibition on diversion. Both the strictly limited nature of the 340B statute and the anti-diversion provision thus align with the statutory requirement, as set forth above, that the 340B prescription must originate from a specific health care encounter with the covered entity. Otherwise, multiple covered entities could claim a 340B discount for the same drug dispense, an absurd result that would undermine the integrity of the 340B program.[17]

The structure of the 340B statute thus corroborates that Congress rejected the broader approach to patient eligibility embraced by HRSA in favor of a more narrowly delimited set of eligibility criteria.

The structure of the 340B statute also supports the requirement that patients of a grantee must receive a health care service from the covered entity that is within the scope of the services for which grant funding or Federally qualified health center look-alike status has been provided to the entity. HRSA has long recognized (in this case, consistent with the text and structure of the 340B statute), that 340B drugs must be used in connection with services that are consistent with the scope of the grant.[18] Given that Congress identified a specific enumerated list of covered entity types, absent a requirement that a grantee provide

---

[12] 42 C.F.R. § 410.2 (defining "encounter" under Medicare regulations).

[13] *See id.* § 410.27(a)(1)(iv)(A), (B)(1); *id.* § 410.28(e)(1), (2).

[14] *See Fischer v. United States*, 603 U.S. 480, 494 (2024) (holding that where Congress had "careful[ly] deliniat[ed]" a set of enumerated categories in a statute, that decision to provide a "reticulated list" led the Court to read related provisions of the statute narrowly).

[15] *AstraZeneca Pharms. LP v. Becerra*, 543 F. Supp. 3d 47, 60 (D. Del. 2021), *aff'd sub nom. Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696 (3d Cir. 2023).

[16] *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 456 (D.C. Cir. 2024).

[17] Other parts of the 340B statute further reinforce that the 340B-eligible prescription must originate from a health care service with the covered entity claiming the discount. For instance, the statute allows for a discount to be claimed on an "over the counter drug," defined as a "a drug that may be sold without a prescription and which is prescribed by a physician." 42 U.S.C. § 256b(a)(2)(B)(ii). This reference to the prescribing "physician" refers to the physician of the covered entity whose treatment of the patient resulted in the relevant prescription, rather than a physician who lacks a relationship with the covered entity. The provision accordingly confirms that a covered entity may not claim a discount unless it rendered the health care service for which the prescription was written.

[18] The 1996 Guidance from HRSA provides that an individual must "receive[] a health care service or range of services from the covered entity which is consistent with the service or range of services for which grant funding . . . has been provided to the entity," 61 Fed. Reg. at 55,157-58.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



services consistent with the service or range of services for which grant funding was conferred, there would have been no need for the statute to identify certain entities by reference to the types of services they provide.[19] It necessarily follows that a grantee may not provide services inconsistent with its grant and still qualify the encounter with an individual as a "patient of the entity" for purposes of establishing eligibility for 340B pricing.

### 3. Purpose and History

The patient criteria presented by AbbVie is also consistent with the purposes of the 340B statute. In enacting Section 340B, Congress struck a balance between increasing patient access and "assur[ing] the integrity of the drug price limitation program."[20] While the key House report accompanying the legislation that became Section 340B states that the 340B program was created to help covered entities to "stretch scarce Federal resources as far as possible," that statement was expressly tied to reaching "more *eligible patients* and providing more comprehensive *services*"—language further confirming that the statute requires a direct relationship between the drugs prescribed by the covered entity and the health care services provided.[21] "[C]omprehensive services" does not extend to individuals with a temporally distant connection to the covered entity, to those treated off-site by providers who do not have a close connection to the covered entity, or to services that are not sufficiently medically substantive, necessary, or bona fide as to allow the provider to make an accurate diagnosis and prescribe an appropriate treatment.

Congress designed the 340B program to benefit patients by restoring the reduced pricing that manufacturers had *voluntarily* provided to safety-net providers before 1990 to help indigent and uninsured patients.[22] In Congress's words, the 340B program was enacted to restore this status quo for "Federally-funded clinics and public hospitals serving large numbers of low-income patients."[23] But Congress also recognized that covered entities "would be prohibited from obtaining payment for these drugs under Medicaid or from reselling or transferring the drugs to individuals other than their patients, and they would be subject to audit to verify compliance with these requirements."[24] The statute's prohibition on diversion (and its related prohibition on duplicate discounts) are not only sound policy judgments that Congress made and codified in the statute, but they are also essential to ensuring that the 340B statute remains within constitutional bounds.[25]

Neither Congress nor manufacturers anticipated the unchecked growth of the 340B program over the past three decades. That growth does not correlate with any growth in the Medicaid program or to an increased need from uninsured and indigent patients. To the contrary, as has been well documented, the explosive growth in the 340B program has been driven by covered entity arbitrage for their own financial benefit (at the expense of patients). The emergence of contract pharmacies, replenishment models, and covered entities' increased targeting of affluent, insured communities means that 340B-priced drugs are now routinely provided to individuals who were not covered by the voluntary discount practices that

---

[19] *Cf.* 42 U.S.C. § 256b(a)(4)(K) (identifying STD clinics in connection with the "treatment [for] sexually transmitted diseases").

[20] H.R. Rep. No. 102-384, pt. 2, at 16 (1992).

[21] *Id.* at 12 (emphasis added).

[22] *See id.* at 10-12*; see also id.* at 12 (explaining that the 340B program would "remove any disincentive that the Medicaid rebate program creates to discourage manufacturers from providing substantial voluntary or negotiated discounts to these clinics, programs, and hospitals").

[23] *Id.* at 10.

[24] *Id.* at 12.

[25] Indeed, Congress has no authority to force manufacturers to transfer drugs to covered entities and commercial pharmacies for their own private financial benefit. Instead, to be constitutionally valid, the obligations imposed by the 340B statute must have a close nexus to a valid governmental purpose and must be proportional to the benefits that manufacturers receive in return for participating in the 340B program and Medicaid.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



manufacturers had adopted before 1990.[26] The legislative history and context of the 340B statute clearly demonstrate that Congress was aiming to create a narrowly defined benefit for a narrow group of entities which both the government and manufacturers could readily police to ensure compliance. The statutory requirements listed above are consistent with that understanding.

## II.    Reasonable Cause to Audit Barrio for Diversion

AbbVie has reasonable cause to believe that Barrio is providing 340B drugs to individuals who do not qualify under the proper criteria for patient, as articulated above.[27] This is supported by AbbVie's observation of Barrio's utilization of AbbVie products, and by Barrio's own responses to AbbVie's inquiries, which, after initial cooperation, ended with Barrio's refusal to engage AbbVie's requests.

### A.  AbbVie's Good Faith Inquiries and Barrio's Responses

AbbVie reviewed Barrio's 340B purchases of AbbVie products from January 1, 2021 through December 31, 2024 ("Time Period") and has observed an unusual and atypical increase in Barrio's 340B purchases related to three brands, Humira, Skyrizi, and Rinvoq ("immunology products"). Barrio's 340B purchases of these immunology products increased by over 119% from 2021 to 2022. From 2022 to 2023, purchases of these three products continued to grow over 53%. In 2024, purchases of immunology products comprised over 97% of Barrio's total 340B purchases of AbbVie products.

This is a drastic outlier as compared to similar covered entities.  For example, Barrio is the top purchaser of immunology products across <u>all</u> Community Health Centers ("CH") and Federally Qualified Health Centers ("FQHC") covered entity types in the 340B Program nationwide. In fact, Barrio's immunology products purchasing from 2022 through 2024 is 12,977% greater than the average immunology product purchases for <u>all</u> CH covered entities in the 340B Program and 203% more than the second ranked CH entity's purchases of immunology products.

AbbVie also analyzed Barrio's contract pharmacy usage as compared to all covered entities in the State of Texas during 2024. AbbVie's analysis observed that approximately 80% of Texas covered entities' 340B purchases (measured by gross sales) of AbbVie covered outpatient drugs are dispensed through pharmacies located in the State of Texas. In contrast, 71% of Barrio's purchases (measured by gross sales) utilize pharmacies located *outside* the State of Texas.

On February 5, 2025, AbbVie sent a letter to Barrio detailing our observations and seeking clarity on Barrio's dramatic increases in requests to purchase immunology products at the 340B price and AbbVie's concerns about diversion.[28] We met telephonically with Barrio on March 7, 2025.

---

[26] *See, e.g.*, Tom Mirga, *New Study Finds 340B Contract Pharmacy Growth in Affluent and White Neighborhoods, Hospitals Criticize Research*, 340B Report (Jun. 17, 2022), https://340breport.com/new-study-finds-340b-contract-pharmacy-growth-in-affluent-and-white-neighborhoods-hospitals-criticize-research; Berkeley Rsch. Grp., *340B Covered Entity Acquisitions of Physician-based Oncology Practices* 3, 10 (Apr. 22, 2014), http://media.thinkbrg.com/wp-content/uploads/2020/06/19094747/449_340B-Physician-based-Oncology-Practice-Acquisitions.pdf (demonstrating that acquisitions by Disproportionate Share Hospitals of oncology practices increased significantly from 2009 to 2012 and involved higher median-income communities compared to the typical DSH covered entity).

[27] HRSA's "reasonable cause" standard does not appear in the 340B statute. The statute grants AbbVie an unconditional right to perform audits of covered entity records related to diversion and duplicate discounting subject only to "procedures established by the Secretary relating to the number, duration, and scope of audits." 42 U.S.C. § 256b(a)(5)(C). Because a reasonable cause standard is not a limitation on the "number, duration, and scope" of an audit, AbbVie could proceed without specifying a reasonable cause threshold. We have nevertheless laid out the evidence supporting reasonable cause to audit Barrio consistent with HRSA's nonbinding guidance. *See* 61 Fed. Reg. 65,406, 65,412 (Dec. 12, 1996).

[28] AbbVie's correspondence with Barrio is attached to this letter.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

abbvie

On the call, Barrio informed us, among other things, that:

- Barrio will request a 340B discount for a prescription even if there is no connection between that prescription and the services that Barrio provides.

- Barrio considers an individual a 340B patient based on single encounter, such as a telehealth visit.

- An individual is considered a 340B-eligible patient for 24 months after a visit, including a one-time telehealth visit.

On the call, Barrio agreed to provide written responses to AbbVie's questions by April 3. AbbVie also sent an additional set of questions to Barrio by email on March 19 to seek clarity on some of Barrio's statements from the telephone conversation. After Barrio requested an extension, AbbVie agreed to a response deadline of April 30 instead of April 3. On April 30, Barrio provided written responses and policy documents. A summary of the key points is below.

- In explaining its anomalous increases in 340B purchases, Barrio credited, among other things, "increased capabilities for patients to access services through telemedicine," and "rising patient volume."

- Barrio noted that, to be a 340B-eligible "patient," an individual must have a "medical encounter with a [Barrio] affiliated (employed or under contract) provider." Barrio did not respond to AbbVie's questions regarding the "level of service of encounter" necessary to establish 340B patient eligibility, but reiterated that it did "not distinguish between in-person and telehealth encounters."

- When asked whether Barrio "require[d] that a healthcare service be related to the drug ordered" in order to be considered 340B-eligible, Barrio responded that it did "not have a strict requirement that an outside prescription be directly linked to the care provided by" Barrio.

- When asked to explain why Barrio's "340B purchases appear[ed] to be multiples higher than the number of prescriptions written by affiliated Barrio providers," Barrio attributed this to its referral practices. Barrio stated that "prescriptions for certain drugs often prescribed by specialists can exceed the prescriptions that [Barrio] writes directly." In other words, Barrio often refers individuals to specialists outside of Barrio and still treats any prescriptions written by those specialists unaffiliated with Barrio as 340B eligible.

- Barrio stated that it has worked with a third-party vendor called "Pharma Strategies" "for referral prescription validation at BioPlus."

Barrio's responses prompted additional questions from AbbVie. In particular, AbbVie was concerned about Barrio's reference to its relationship with Pharma Strategies. Consistent with what was recently reported in the Wall Street Journal ("WSJ"), AbbVie has evidence to establish the existence of referral schemes that manipulate the 340B program. These schemes use brief pretextual telehealth referrals to attempt to qualify individuals as "patients" of a covered entity solely to claim 340B drug prices, even though these individuals do not otherwise receive substantive health care services from the covered entity.[29] For example, the WSJ article reported that a Louisiana covered entity is working with third-party vendors to qualify individuals as 340B-eligible patients following one-off telehealth appointments with a clinical pharmacist.[30] These arrangements could even involve a situation where a patient's initial diagnosis is made by their primary care physician (who does not practice at a covered entity site), then the patient is

---

[29] See Joseph Walker, *Employers Get Big Drug Discounts Through Program For Hospitals that Serve Poor Patients*, Wall St. J. (Mar. 15, 2025), https://www.wsj.com/health/healthcare/prescription-drug-prices-340b-pharmacy-benefit-plans-6834cc08. This article is also attached to this letter.
[30] *Id.*

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



referred to a telehealth visit with a covered entity to obtain the prescription already identified as appropriate by the primary care physician (purporting to establish 340B eligibility), and then the patient is sent back to the primary care physician for continued treatment. Thus, the only connection between the "patient" and the covered entity is a contrived telehealth referral after the diagnosis and prescribing decision have already been made by a doctor unaffiliated with the covered entity. As detailed below, AbbVie has evidence to believe that Pharma Strategies is engaged in one of these schemes and was therefore concerned to learn that Barrio has contractual relationships with Pharma Strategies.

To address these concerns, AbbVie asked Barrio further questions in a May 7 letter about how Barrio defined medical encounters for the purpose of patient eligibility, the extent and nature of Barrio's use of telehealth appointments, and its referral practices, including its relationship with Pharma Strategies. Barrio requested an extension to respond, and AbbVie agreed to defer the response deadline until June 2. However, on May 30, Barrio informed AbbVie via email that it was refusing to provide any additional information in response to AbbVie's inquiries. Barrio thus terminated any prospect of further good faith discussions concerning its compliance with 340B program integrity requirements.

B.   *Barrio's Practices Allow Patient Eligibility in Scenarios Not Covered by the 340B Statute*

Barrio's responses to AbbVie's good faith inquiry clearly establish reasonable cause to believe that Barrio is engaging in diversion in violation of the 340B statute.

###### 1.   Barrio Does Not Require that the 340B Drug Prescribed Be Related to the Health Care Service Provided

As discussed above, one of the key elements of the patient criteria is that the covered outpatient drug must be prescribed as a direct result of a health care encounter with a health care professional who is acting pursuant to an employment or contractual agreement under which the health care professional provides services at the covered entity site. Barrio's responses indicate that it does not come close to complying with this aspect of the statutory patient criteria.

On our March 7 call, Barrio told us that it requests 340B prices in connection with drugs previously dispensed to individuals even when the dispensed drug is *unrelated* to the health care service for which the individual saw the Barrio health care professional. That is contrary to the 340B statute. By limiting eligibility to a "patient *of the entity*,"[31] the text of the 340B statute demands a substantive relationship between the individual receiving care and the covered entity prescribing the outpatient drug. This link is provided by the specific health care service for which the patient saw the health care professional, which must result in the 340B-eligible prescription. As noted in the House report, the purpose of the 340B statute is to facilitate "more comprehensive *services*" for "*eligible* patients."[32] "[E]ligible patients" means something less than *all* patients.[33] As HRSA itself has noted during litigation over the patient definition, limiting 340B eligibility to patients who have received treatment from Barrio related to the 340B prescription is a "reasonable and commonsense way of giving effect to Congress's words and the legislative intent to link the 'patient' with the 'entity.'"[34]

Barrio's overbroad understanding of a 340B patient would allow a covered entity to claim an after-the-fact discount on a covered outpatient drug dispensed to any individual based solely on an *unrelated* encounter at some *unspecified* point in the past, which undermines the statute's present-tense requirement that the individual "is" a current patient of the entity. The statute's prohibition on diversion would make little sense

---

[31] 42 U.S.C. § 256b(a)(5)(B) (emphasis added).
[32] H.R. Rep. No. 102-384, pt. 2, at 12 (emphasis added).
[33] *Id.*
[34] Defs.' Combined Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 18, *Genesis Health Care Inc. v. Becerra*, No. 4:19-cv-01531-RBH (Jul. 28, 2023), ECF No. 101.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



if the covered entity were not required to provide services which are actually connected to the prescription written for a 340B discounted drug.

AbbVie recognizes that, in a decision that is not binding as to any 340B entity other than Genesis Health Care, Inc., the United States District Court for the District of South Carolina interpreted the phrase "patient of the entity" for purposes of the 340B statute as not requiring a link between a 340B prescription sold by a covered entity to a patient and the origination of that prescription.[35] AbbVie disagrees with the *Genesis* court's conclusions in these regards and respectfully submits that the better reading of the statute's text, purpose, structure, and history is that the phrase "patient of the entity" must be connected to the particular health care service provided by the covered entity. Indeed, the structure and history of the 340B statute, as explained in this letter, support a narrower purpose of the 340B program than the one articulated by the court in *Genesis*. AbbVie's position on the patient criteria is consistent with the Government's position in *Genesis*, in which it argued that "a covered entity should use 340B-discount drugs for prescriptions that are actually part of the covered entity's care," and rejected that a "patient-provider relationship can spring forth even when only an attenuated connection exists between the person and the entity."[36] The *Genesis* court's analysis should not apply to AbbVie's requested audit of Barrio.

> 2. Barrio's Policies Allow for 340B Eligibility Following a Perfunctory Encounter that is Insufficient to Create a Patient-Provider Relationship under the 340B Statute

For an individual to be considered a "patient" of an entity, the entity must provide legitimate medical care for the patient's condition. Thus, the health care encounter which generates 340B patient eligibility must be sufficient to allow the health care provider to meet the clinical practice standards for diagnosing and treating the disease or illness for which the 340B-eligible prescription was written.

During the good faith inquiry, Barrio acknowledged that, to be a 340B-eligible "patient," an individual must have a "medical encounter with a [Barrio] affiliated (employed or under contract) provider." However, Barrio did not respond to AbbVie's questions regarding the "level of service of encounter" necessary to establish 340B patient eligibility, or whether Barrio has substantive standards for evaluating what type of interaction is a "medical encounter."

Barrio informed us, however, that it will dispense a 340B-priced drug after a single telehealth encounter. But Barrio did not respond to AbbVie's questions regarding what types of telehealth services confer patient eligibility. AbbVie asked these questions because we are aware of schemes that manipulate the 340B program by using perfunctory telehealth referrals to qualify individuals as patients of a covered entity for purposes of their prescriptions, even though they do not otherwise receive substantive health care services from the covered entity.[37] As was revealed in recent litigation, one of these schemes is operated by a vendor called Pharma Strategies, in coordination with BioPlus, a specialty pharmacy.[38] Pharma Strategies touts the ability for plan members to "keep all their existing primary care and specialty physicians" while having access to the "available drug discounts" of "established community health networks."[39] In practice, Pharma Strategies seeks to qualify individuals as patients with 340B entities

---

[35] *See Genesis Health Care Inc. v. Becerra,* 701 F. Supp. 3d 312, 324-26 (D.S.C. 2023).

[36] Defs.' Combined Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. at 19, *Genesis Health Care, Inc.,* No. 4:19-cv-01531-RBH, ECF No. 101.

[37] *See* Walker, *supra,* (discussing a program in which individuals were treated as 340B eligible patients of a hospital system merely by completing "a telehealth visit with one of [the covered entity's] clinical pharmacists."

[38] *See* Tr. of Jan. 30, 2025 Prelim. Inj. Hr'g, *AbbVie, Inc. v. Payer Matrix, LLC,* No. 23-cv-2836 (filed Feb. 4, 2025), ECF No. 322, at 402-03 (hereinafter "*Payer Matrix* Injunction Hearing") ("Q. BioPlus is the pharmacy that Payer Matrix uses in its new Enhanced Care Management Program, right? A. It's actually not our program. That's another vendor called Pharma Strategies."). AbbVie has attached the relevant excerpt of the transcript to this letter.

[39] A Pharma Strategies brochure with this language is attached to this letter (hereinafter "Pharma Strategies Brochure").

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



through a single 30-minute telehealth appointment[40] in order to qualify the patient for 340B discounts.[41] These individuals are told that they will have a single, yearly, telehealth appointment, but get to "keep [their] actual real doctors" for the purposes of ongoing treatment, monitoring, and evaluation.[42] Pharma Strategies' entire premise is that the individual receiving the 340B-priced drug does *not* have to change their existing physicians or find a new specialist.[43] Indeed, given this telehealth use, it is unsurprising that AbbVie's data show that Barrio prescribes at anomalously high rates to patients located in other states.

Barrio's answers to the good faith inquiry confirm that Barrio has contractual relationships with Pharma Strategies, which "assists [Barrio] with referral prescription validation at BioPlus." This arrangement, along with Barrio's failure to articulate what substantive standards it has in place to ensure that a telehealth appointment is a bona-fide medical encounter as is required by the 340B statute, and Barrio's lack of a requirement that a Barrio-provided healthcare service be related to the drug ordered, raises serious concerns that Barrio is claiming 340B discounts on prescriptions from health care encounters that fail to meet the substantive standards of care as required by the 340B statute. In this regard, Barrio refused to answer AbbVie's questions about what types of telehealth services confer patient eligibility or whether Barrio's telehealth appointments must meet any substantive criteria at all to qualify as a 340B-eligible encounter.

These requirements derive directly and plainly from the text of the 340B statute, including the instruction that a recipient of covered outpatient drugs must be a "patient of the entity."[44] Just as the 340B statute requires a substantive relationship between the service provided and the drug prescribed, a health care service also must meet certain minimum standards to demonstrate that the "patient" is "under medical care and treatment" of a health care professional consistent with a bona fide provider-patient relationship, and thus qualifies as a patient under the dictionary definition of the term.[45] That is consistent as well with the purposes of the 340B statute's anti-diversion requirements, and provides an effective means of safeguarding against program abuse.

Thus, a medical visit (whether telehealth or otherwise) that is not the result of a bona fide health care encounter with the covered entity, but rather is contrived solely for the pretext of establishing 340B

---

[40] *Payer Matrix* Injunction Hearing, at 405 ("This is a program that members, if they're interested and if their plan is interested, they are -- they become part of that federal qualified health center and become a patient of the FQHC."); *see* Pharma Strategies Brochure, at 2, 5 (stating that "[t]o participate, patients have one annual telehealth visit or video conference consultation for a minimal fee," and that the program requires a "30-minute telehealth consultation").

[41] *See Payer Matrix* Injunction Hearing, at 404 ("Q. [H]ow does BioPlus manage to get a 20 percent discount on AbbVie's products? A. I believe that they're utilizing 340(b) discounts.").

[42] *Id.* at 407; Pharma Strategies Brochure, at 4-6 (noting that members must speak "with a program healthcare provider once a year," by "telehealth or a video phone call," but that these consultations "do not replace your visits with your current PCPs and specialists").

[43] Pharma Strategies Brochure, at 3 ("One of the great features of the ECMP is that your relationship with your current physician or specialist does not change.").

[44] 42 U.S.C. § 256b(a)(5)(B).

[45] *See Patient*, Merriam-Webster Dictionary (defining patient as an "individual awaiting or under medical care and treatment"). The 340B statute's requirement of a "patient"-provider relationship also aligns with Texas state law governing the practice of medicine and pharmacy. *See* Tex. Occ. Code Ann. § 562.056(a-1) (requiring as a condition of a pharmacy dispense that a prescription "must be issued for a legitimate medical purpose by a practitioner acting in the usual course of the practitioner's professional practice"). Moreover, Texas law prohibits dispensing a drug if the order "may have been authorized in the absence of a valid patient-practitioner relationship, or otherwise in violation of the practitioner's standard of practice to include that the practitioner, (A) did not establish a diagnosis through the use of acceptable medical practices for the treatment of patient's condition; (B) prescribed prescription drugs that were not necessary for the patient due to a lack of a valid medical need or the lack of a therapeutic purpose for the prescription drugs; or (C) issued the prescriptions outside the usual course of medical practice." 22 Tex. Admin. Code § 291.29(b)(2). The telehealth visits at issue here are at odds with these requirements under state law.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



eligibility, violates the 340B statute. Barrio's policies appear to allow 340B eligibility after a brief telehealth visit, with no other connection whatsoever to the covered entity. AbbVie has reasonable cause to believe that Barrio's practices fall well short of the standards required for a bona fide "patient"-provider relationship and thus demonstrate reasonable cause to audit.

3. Barrio's Practices Appear to Allow for 340B Eligibility without Direct Oversight Over 340B Drug Recipients' Care

To be a "patient of the entity" under the 340B statute, the health care professional who provides the service leading to the 340B priced prescription must have direct oversight over the individual's care, meaning that the health care professional is personally responsible for diagnosing and directly managing the patient's condition for which the covered outpatient drug is prescribed. The covered entity must also maintain primary responsibility for care for the patient's condition for which the covered outpatient drug is prescribed.[46]

Barrio's answers to AbbVie's inquiries provide reasonable cause to believe that Barrio is violating these aspects of the statute as well. As discussed above, AbbVie believes that Barrio is claiming individuals as 340B-eligible after perfunctory, one-off telehealth visits, potentially with providers who may not be qualified to diagnose and treat the condition for which the covered outpatient drug is prescribed. These practices also violate the "direct oversight" requirements of the 340B statute. To the extent that Barrio works with Pharma Strategies to accept referrals, Pharma Strategies' marketing materials expressly promise that participating individuals can *keep* their existing primary care and specialty physicians while accessing 340B drug discounts.[47] This scenario establishes that the patient's primary care physician retains regular care over the patient, but refers the patient for a short visit at Barrio for the *sole purpose* of purporting to establish 340B eligibility, with the remainder of the treatment then shifting back to the primary care physician who is unaffiliated with Barrio. Such a practice runs counter to the requirement that the *covered entity's* provider must be directly responsible for diagnosing and managing the patient's condition for which the covered outpatient drug is prescribed, and that the *covered entity* must maintain primary responsibility for the treatment of that condition.

Barrio's policies and responses thus raise serious concerns about whether Barrio maintains direct oversight over the 340B drug recipient's care as is required by the statute.

C. *AbbVie Has Reasonable Cause to Audit for Diversion*

The foregoing demonstrates that AbbVie has reasonable cause to believe that Barrio is violating the 340B statute's anti-diversion provision. As HRSA has noted in litigation with other manufacturers, to initiate an audit, a manufacturer "simply needs to show reasonable cause that a covered entity is violating the 340B statute through duplication or diversion."[48]

Barrio's answers to AbbVie's good faith inquiries demonstrate that it is providing 340B-priced drugs to individuals who do not qualify as patients under a proper reading of that term in the 340B statute. These statements, among other things, are sufficient to lead a reasonable person to "believe that a covered entity have violated"[49] the anti-diversion provision.

---

[46] *See supra* Part I.

[47] *See Pharma Strategies Brochure*, at 2 ("Members keep all their existing primary care and specialty physicians."); *id.* at 3 ("[Y]our relationship with your current physician or specialist does not change."); *Payer* Matrix Injunction Hearing, at 407 ("[Y]ou get to keep your actual real doctors, right? A. Correct.").

[48] Defs'. Reply in Further Support of Mot. for Summ. J., at 11, *Johnson & Johnson Healthcare Sys., Inc. v. Kennedy*, 1:24-cv-03188-RC (Apr. 30, 2025), ECF No. 46.

[49] 61 Fed. Reg. at 65,409.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE



**III.     Conclusion**

AbbVie requests HRSA authorization to audit Barrio for diversion pursuant to the attached audit plan. AbbVie wants to better understand how Barrio applies its 340B patient eligibility policy, and to confirm, as the evidence appears to demonstrate, that Barrio employs patient criteria that sweep far more broadly than the 340B statute permits. The attached work plan has been developed by PricewaterhouseCoopers for the purpose of auditing Barrio for diversion consistent with the legal analysis contained in this letter.

Thank you for your attention to this important matter regarding 340B program integrity. We look forward to your response, and would be happy to discuss our request with you at any point.


Sincerely,

*Electronically signed by: Edward Scheidler*
*Reason: Approver*
*Date: 27-Jun-2025 18:54 CDT*

Edward Scheidler
Head of 340B Center of Excellence


NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

**340B AUDIT WORKPLAN**

**Covered Entity Identification**

**Name:** Barrio Comprehensive Family Health Care Center, Inc. ("Barrio")
**340B ID:** CH062360 including affiliated grantee sites and associated contract pharmacies active during the scope period (Please refer to Appendix A for affiliated grantee sites)
**Independent Auditor**: PwC

**Audit Scope**

1. **Drug Diversion**
   Determine Barrio's compliance with Section 340B(a)(5)(B) of the Public Health Service Act (PHSA), with regards to the 340B Program prohibition against drug diversion during the period of January 1, 2024, through December 31, 2024 (scope period) for the following products, henceforth referred to as "340B Drugs":

| **"340B Drugs"** | |
|---|---|
| NDC | Product Name |
| 00074-0124-02 | HUMIRA(CF) PEN 80 MG/0.8 ML PS=2 |
| 00074-0124-03 | HUMIRA(CF) PEN CRHN-UC-HS 80MG PS=3 |
| 00074-0124-04 | HUMIRA(CF) PEN PEDI UC 80 MG PS=4 |
| 00074-0243-02 | HUMIRA(CF) 40 MG/0.4 ML SYRING PS=2 |
| 00074-0554-02 | HUMIRA(CF) PEN 40 MG/0.4 ML PS=2 |
| 00074-0616-02 | HUMIRA(CF) 20 MG/0.2 ML SYRING PS=2 |
| 00074-0817-02 | HUMIRA(CF) 10 MG/0.1 ML SYRING PS=2 |
| 00074-1539-03 | HUMIRA(CF) PEN PS-UV-AHS 80-40 PS=3 |
| 00074-2540-03 | HUMIRA(CF) PEDI CROHN 80MG/0.8 PS=3 |
| 00074-3799-02 | HUMIRA 40 MG/0.8 ML SYRINGE PS=2 |
| 00074-4339-02 | HUMIRA PEN 40 MG/0.8 ML PS=2 |
| 00074-4339-06 | HUMIRA PEN CROHN-UC-HS 40 MG PS=6 |
| 00074-4339-07 | HUMIRA PEN PS-UV-ADOL HS 40 MG PS=4 |
| 00074-1043-28 | RINVOQ ER 45 MG TABLET PS=28 |
| 00074-2306-30 | RINVOQ ER 15 MG TABLET PS=30 |
| 00074-2310-30 | RINVOQ ER 30 MG TABLET PS=30 |
| 00074-1050-01 | SKYRIZI 150 MG/ML SYRINGE PS=1 |
| 00074-1070-01 | SKYRIZI 360 MG/2.4 ML ON-BODY PS=2 |
| 00074-2042-02 | SKYRIZI 150 MG DOSE KIT-2 SYRN PS=1 |
| 00074-2100-01 | SKYRIZI 150 MG/ML PEN PS=1 |
| 00074-5015-01 | SKYRIZI 600 MG/10 ML VIAL PS=10 |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

**Audit Testing Procedures**

| | |
|---|---|
| **PLANNING** | |
| 1. | Send Audit notification letter to Barrio at least 15 days prior to audit pursuant to the manufacturer audit guidelines (61 Fed. Reg. 65406 (Dec 12, 1996). |
| 2. | Send initial document request list to Barrio in advance of the onsite/virtual audit. Items requested will include the following, please refer to Appendix B for a detailed Document Request List and Instructions to be provided to Barrio: <br><br> • Evidence of Grant approval during the scope period for Grantee Sites registered on the 340B Office of Pharmacy Affairs Information Systems (340B OPAIS) including the services that are approved under the scope of grant <br><br> • Any relevant 340B compliance testing results or external Audit Reports concerning Barrio's participation in the 340B Program, including but not limited to 340B purchases, 340B billing, etc., during the audit scope period <br><br> • Policies and procedures related to 340B purchases, including purchases at ceiling and sub-ceiling prices. <br><br> • Policies and procedures related to identifying 340B eligible patients including Barrio definition(s) for patient statuses to determine appropriate alignment to "inpatient"/ "outpatient" categorization. <br><br> • Policies and procedures related to contract pharmacy relationships for the dispense of 340B product on behalf of Barrio. <br><br> • Information, documentation, and contracts related to third party administrators that assist in the acquisition or dispense of 340B product on behalf of Barrio. <br><br> • Policies and procedures around system related procedures (i.e., purchasing systems, and/or split-billing software). <br><br> • Any executed Contract Pharmacy Agreements between Barrio and Contract Pharmacy(ies) dispensing AbbVie's products in scope (Financial Information / Arrangements can be redacted by Barrio and will not be included in the final report). <br><br> • Purchase Reports by NDC and account type (i.e. 340B, WAC, GPO) for the relevant 340B drugs. <br><br> • Quantity Dispensed by NDC to patients who have received the 340B drugs. <br><br> • A listing of all healthcare professionals (HCPs) who are either employees of Barrio or have a contractual or other arrangement with Barrio and dispense 340B drug(s) to patients of Barrio. <br><br> • A deidentified listing of all patients who received the relevant 340B drug(s) for the scope period and the following information for each patient for sampling purposes: <br>    ○ Date the 340B drug(s) was prescribed and dispensed to the patient. <br>    ○ Prescription numbers (Rx Numbers). <br>    ○ Fill Numbers <br>    ○ Order Nos for 340B Purchases by NDC |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| | |
|---|---|
| | <ul><li>Prescribing provider National Provider Identifer (NPI) number.</li><li>NPI number and/or Medicaid Billing Numbers ("MBN") related to dispensing entity</li><li>Purchase price of the drug(s) dispensed to the patient.</li><li>MRN # or Patient Identifier</li><li>Dispensing Pharmacy Name</li><li>Patient's Health Insurance (e.g., Medicaid, Medicare, private payor, self-pay, some combination, etc.) including corresponding Group, BIN and Processor Control Numbers (PCN)</li></ul> |
| 3. | Conduct opening meeting with Barrio via teleconference to discuss the scope and approach for the audit. |
| 4. | PwC will attempt to perform the audit in the minimum time necessary with minimum intrusion to Barrio.<br><br>- To that end, it is PwC's expectation that the audit can be conducted entirely virtually but would be amenable to an on-site visit if requested. However, if Barrio is non-responsive to audit requests or outreaches from PwC, PwC reserves the right to reconsider its decision to conduct the audit virtually. Moreover, auditors reserve the right to update the Work Plan, document request list(s), and audit additional topics to the extent additional bases for reasonable cause arise after obtaining Health Resources and Services Administration (HRSA) Approval. |

| | |
|---|---|
| **340B POLICY, CONTRACT PHARMACY AGREEMENT, PROCESS & CONTROL ENVIRONMENT REVIEW RELATED TO 340B DRUG DIVERSION** | |
| 1. | Conduct interviews and document the results of each interview with the following Barrio personnel *(the following lists examples of personnel roles)*:<br><br>- 340B Pharmacy Director<br>- Systems owners (e.g., owners for split-billing software, Electronic Medical Record (EMR) systems, procurement systems, and other applicable systems)<br>- Individuals involved in invoicing, purchasing, dispensing, or billing of products including interactions with contract pharmacies that purchase 340B product on Barrio's behalf.<br>- Hospital Admissions Personnel<br>- Revenue Cycle Personnel<br>- Roles Identified in 340B Enrollment.<br>    ○ Authorizing Official<br>    ○ Primary Contact<br>    ○ Manager of applicable Contract Pharmacy |
| 2. | Review policy and procedure training documentation and verify whether individuals responsible for the procurement, administration, and billing of the relevant drug(s) have been trained or provided access to compliance procedures. |

*Proprietary & Confidential*

| | |
|---|---|
| 3. | Review 340B policies and procedures to understand the definition of an "eligible patient." Specifically understand and outline objective criteria related to the definition of a "patient" and how criteria is being applied by Barrio as per Section 340B of the PHSA.  Specifically, the audit will review to what extent Barrio's definition meets the following criteria:<br><br>1) The individual receives an outpatient healthcare service at a covered entity (CE) site that is registered and listed in the OPAIS database, and the service meets all of the following requirements:<br>   a) the covered outpatient drug (COD) is prescribed as direct result of the healthcare encounter, by a HCP who is acting pursuant to an employment or contractual relationship under which the health care professional provides services at the covered entity site;<br>   b) the health care encounter is sufficient to allow the HCP to meet the clinical practice standards for diagnosing and treating the condition for which the COD is prescribed;<br>   c) the healthcare service takes place within the period of validity of a prescription specified by state law, and in no event more than 12 months prior to the dispensing or administration of the covered outpatient drug; and<br>   d) For covered entities other than Disproportionate Share Hospitals (like Barrio), the health care service is consistent with the services for which grant funding or federally qualified health center look-alike status has been provided to the entity.<br><br>2) The HCP who provides the service described in (1) above has direct oversight of the individual's care, which means that<br>   a) the HCP personally is responsible for diagnosing and directly managing the patient's condition for which the COD is prescribed as part of a provider-patient relationship sufficient to provide the standard of care for diagnosing and treating the condition for which the COD is prescribed; and<br>   b) the CE maintains primary responsibility for care for the patient's condition for which the COD is prescribed. |
| 4. | Review Barrio's Contract Pharmacy Agreement(s) to assess any specific provisions outlining criteria enumerated by HRSA regarding the relationship between the Covered Entity and the Contract Pharmacy based on the following objective criteria:<br><br>- Consistent with HRSA guidance, the audit will confirm to what extent "the contract pharmacy would act as an agent of the covered entity, in that it would not resell a prescription drug but rather distribute the drug on behalf of the covered entity," 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996), and that covered entity engages an independent auditor for annual audits of the contract pharmacy, 75 Fed. Reg. 10,272, 10,278 (Mar. 5, 2010). |
| 5. | Perform a walkthrough of the Covered Entity's billing procedures, including a review of the Barrio's split-billing software, if applicable. Evaluate that the business rules are appropriately set up in order to accurately calculate, accumulate, and order the relevant drug(s) based on patient status. Document the walkthrough by obtaining copies of key documents to clearly identify the billing transaction flow. |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| | |
|---|---|
| **340B DRUG DIVERSION TESTING** | |
| 1. | For each patient selected who was administered or received the 340B drug(s) at Barrio and its affiliated grantee sites including associated contract pharmacies during the scope period, perform the following procedures: |
| | A. Review Barrio's EMR to obtain evidence of the patient's encounter/visit and status (inpatient or outpatient, if applicable) at the time the drug(s) was administered or dispensed, and the price paid for the drug(s) for that patient.<br><br>Based on patient status, verify whether Barrio purchased the drug(s) at the discounted 340B price or non-340B price. (Request Barrio definition(s) for patient statuses to determine appropriate alignment to "inpatient"/ "outpatient" categorizations if applicable) |
| | B. For patients who were classified as 340B eligible, verify that the prescriptions or dispenses to the patient were written/dispensed at locations and affiliated grantee sites for which Barrio deems itself responsible for the health care services provided and registered on 340B OPAIS. |
| | C. Determine the level of service provided.  For patients who were classified as 340B eligible, review patient's EMR to assess whether the scope of the healthcare service provided is sufficient to meet the standard of care for diagnosing and treating the condition for which the covered outpatient drug is prescribed for which Barrio is seeking to claim 340B discounts, and the relationship between each such healthcare service and the 340B drug(s) furnished to an individual as a result of such service. |
| | D. For patients who were classified as 340B eligible, verify that the individual received health care services from a health care professional who is either employed by Barrio or provided health care under contractual or other appropriate arrangements such that responsibility for the care provided remains with Barrio.<br>   a. For other arrangements, review the associated documentation in the EHR to determine if it captures all the necessary and relevant information.<br>   b. Review contractual and other arrangements for healthcare professionals who are acting pursuant to a contract or other arrangement with Barrio when prescribing the covered outpatient drug and assess the following components:<br>      i. Definition of parties to the contractual agreement or otherwise involved<br>      ii. Itemization of defined roles and responsibilities of each party including general category of care (for example: dermatology, rheumatoid arthritis etc.)<br>      iii. Details related to communication and care-coordination plans between Barrio and healthcare professionals (for example: sharing of EMR data, patient notes etc.) |
| | E. For patients who were classified as 340B eligible, verify whether the healthcare service furnished to a patient that led to drug dispensation and/or prescription of a covered outpatient drug is consistent with the scope of grant. |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| 2. | For any diversion findings identified during the scope period, quantify the financial impact for any detected violation(s) of the diversion prohibition for the 340B drugs. |
|---|---|

| **QUANTIFICATION OF NON-COMPLIANCE** | |
|---|---|
| 1. | Quantify the impact of the identified non-compliance with the diversion prohibition. Mechanism for determination will be based on each particular non-compliance, but is generally categorized as: <br><br>    A. **Diversion:** For purchases inappropriately identified as 340B resulting in diversion, calculate the impact utilizing the difference between 340B ceiling price and non-340B price, multiplied by the quantity for each respective NDC for 340B Drugs within scope. |

| **REPORTING** | |
|---|---|
| 1. | Document preliminary findings based upon audit procedures performed. PwC to discuss preliminary findings with Barrio. |
| 2. | Develop a draft performance Audit Report in accordance with Government Auditing Standards ("GAS") / Generally Accepted Government Auditing Standards ("GAGAS") and orally communicate audit findings to Barrio. Incorporate feedback from Barrio as deemed appropriate by the independent auditor. Ensure all protected health information is redacted from the draft and final Audit Reports. |
| 3. | PwC will finalize the draft Audit Report and send to AbbVie for distrubution. |
| 4. | AbbVie to provide Barrio with thirty (30) days to respond to all findings and plans for resolving any issues identified. |
| 4. | AbbVie to incorporate any Barrio response(s) as deemed appropriate and issue the final audit report, providing a copy of the final report to HRSA, Office of Special Health Initiatives (OSHI), Office of Inspector General, Office of Audit Services, and PHS Audits Division. |
| 5. | Perform final review of the audit work papers, ensuring that all protected health information is redacted. Archive the work papers in accordance with document retention requirements. |

**Data Confidentiality**

AbbVie and PwC respect Barrio's responsibility to protect patient confidentiality and proprietary information.  Therefore, during the 340B audit, AbbVie and PwC will comply with applicable United States federal, state and local laws and regulations regarding privacy and confidentiality, data security and communication methods including but not limited to the Health Insurance Portability and Accountability Act (HIPAA), the Fair Credit Reporting Act (FCRA), the Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) the Telephone Consumer Protection Act (TCPA), state data security breach notification laws, state privacy and information security laws, and any other state, local and federal requirements covering the same or similar topics affecting Protected Health Information (PHI), Individually Identifiable Health Information (IIHI), and/or other forms of Personally Identifiable

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

Information (PII) affected / accessed during the audit.  AbbVie will not have access to any PHI, IIHI, or PII in connection with the audit, and PwC will not share any PHI, IIHI, or PII accessed during the audit with AbbVie.


**Skill and Knowledge of Audit Organization's Personnel**
PwC is an international accounting and consulting firm that has significant experience in performing engagements under GAGAS for performance audits.  In addition, PwC has years of experience in working in the 340B Covered Entity environment, including instituting policies and procedures to protect patient privacy and confidentiality.

**PwC Audit Team**
Shea Fowler, Partner
Tim Krzeminski, Managing Director
Aakash Shah, Senior Manager
Jack McCarter, Experienced Associate
Kyle Albertson, Experienced Associate

All staff will be appropriately monitored and supervised in accordance with PwC's internal policies and procedures, which comply with Generally Accepted Government Accounting Standards. Staff assigned to this engagement will complete all required Continuing Professional Education (CPE) requirements within the timeframe stipulated under Generally Accepted Government Accounting Standards.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

# Appendix A: Listing of Barrio and Affiliated Grantee Sites

Please see below the affiliated grantee sites:

| 340B ID | 340B Status | Name | Sub Name | Address | City | State |
|---|---|---|---|---|---|---|
| CH062360 | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - West | 1102 Barclay St | San Antonio | TX |
| CH06236AA | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | San Antonio Specialty Health & Sports Medicine | 1200 Brooklyn Ave. STE 320 | San Antonio | TX |
| CH06236AB | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Encino Park | 20306 Encino Ledge Ste 101 | San Antonio | TX |
| CH06236AC | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Alamo Ranch | 6838 Alamo Pkwy Ste 5 | San Antonio | TX |
| CH06236AD | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Stone Oak | 20642 Stone Oak Pkwy STE 105 | San Antonio | TX |
| CH06236AE | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare at The MAC | 5210 Thousand Oaks Dr STE 1203 | San Antonio | TX |
| CH06236AF | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Hallmark University | 9855 Westover Hills Blvd. STE 156 | San Antonio | TX |
| CH06236AG | Active | BARRIO COMPREHENSIVE FAMILY HEALTH | CommuniCare Health | 7355 Barlite | San Antonio | TX |

Proprietary & Confidential

| | | CARE CENTER, INC. | Centers - South | Blvd, Ste 101 | | |
|---|---|---|---|---|---|---|
| CH06236AH | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Westover Hills | 9022 Culebra Rd STE 101 | San Antonio | TX |
| CH06236AJ | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | Apollo Wellness | 6511 West FM 1604 North STE 105 | San Antonio | TX |
| CH06236AK | Terminated - 1/1/2024 | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Westover Hills | 9022 Culebra Rd STE 101 | San Antonio | TX |
| CH06236AL | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Town & Country | 10350 Bandera Rd, Ste 210 | San Antonio | TX |
| CH06236AM | Active | Barrio Comprehensive Family Health Care Center, Inc. | CommuniCare Health Centers - Mobile Health Unit | 3066 E Commerce St | San Antonio | TX |
| CH06236AN | Active | Barrio Comprehensive Family Health Care Center, Inc. | CommuniCare Health Centers - Allergy Institute | 4456 Lockhill Selma Rd, Ste 103 | San Antonio | TX |
| CH06236AP | Active | Barrio Comprehensive Family Health Care Center, Inc. | CommuniCare Health Centers - Vital Life Wellness Broadway | 2520 Broadway St, Ste 100 | San Antonio | TX |
| CH06236AQ | Active | Barrio Comprehensive Family Health Care Center, Inc. | CommuniCare Health Centers - Vital Life Wellness Stone Oak | 418 N Loop 1604 W | San Antonio | TX |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| | | | | | | |
|---|---|---|---|---|---|---|
| CH06236D | Active | BARRIO COMPREHENSIVE HEALTH CARE CENTER, INC | CommuniCare Health Centers - San Marcos | 1941 S Interstate 35, Ste 101 | San Marcos | TX |
| CH06236I | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - East | 3066 E Commerce St | San Antonio | TX |
| CH06236J | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Kyle | 2810 Dacy Ln | Kyle | TX |
| CH06236K | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Northwest | 8210 Callaghan | San Antonio | TX |
| CH06236L | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Potranco | 10002 Westover Blf | San Antonio | TX |
| CH06236N | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Metropolitan | 1200 Brooklyn Ave, Ste 300 | San Antonio | TX |
| CH06236P | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Wimberley | 203 Stillwater, Ste 6 | Wimberley | TX |
| CH06236R | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Boerne | 430 W. Bandera, Suite 9 | Boerne | TX |
| CH06236S | Active | BARRIO COMPREHENSIVE FAMILY HEALTH | CommuniCare Health Centers - Hill | 14811 San Pedro Ave | San Antonio | TX |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

Proprietary & Confidential

| | | | | | | |
|---|---|---|---|---|---|---|
| | | CARE CENTER, INC. | Country Village | | | |
| CH06236T | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | Health Outcomes Centers | 4751 Hamilton Wolfe Rd, Ste 200 | San Antonio | TX |
| CH06236U | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Medical Center | 7220 Louis Pasteur Dr, Ste 140 | San Antonio | TX |
| CH06236V | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Leon Springs | 21195 W. Interstate 10 STE 2101 | San Antonio | TX |
| CH06236W | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Helotes | 12850 Bandera Rd Ste 106 | Helotes | TX |
| CH06236X | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Blvd Dental | 5138 Utsa Blvd Ste 116 | San Antonio | TX |
| CH06236Y | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Luckey Ranch | 11930 W US Highway 90 Ste 110 | San Antonio | TX |
| CH06236Z | Active | BARRIO COMPREHENSIVE FAMILY HEALTH CARE CENTER, INC. | CommuniCare Health Centers - Navigation Center | 7420 Blanco Rd Ste 210 | San Antonio | TX |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

# Appendix B: Document Request List(s) and Instructions

AbbVie Inc. ("AbbVie") is requesting the following initial information in advance of a HRSA-approved independent audit of Barrio Comprehensive Family Health Care Center, Inc. ("Barrio") in San Antonio, Texas (CH062360), including affiliated grantee sites and associated and its contract pharmacies, in order to determine Barrio's compliance with Section 340B(a)(5)(A) and Section 340B(a)(5)(B) of the Public Health Service Act (PHSA) (collectively, the "340B Program"), with regard to the 340B Program prohibition against drug diversion during the period of January 1, 2021, through December 31, 2024 ("scope period"). In order to perform this audit, PwC requests the following documentation for the period of January 1, 2021, to December 31, 2024:[1]

| ID | Document(s) | Description | File Type |
|---|---|---|---|
| 1. | Grant Approval Documentation | Documentation evidencing Grant approval for Barrio and its grantee sites registered in 340B OPAIS including the services that are approved under the scope of grant | Word Document or PDF |
| 2. | 340B Program Integrity Efforts including External Audits performed | Detailed results of compliance testing performed by Barrio related to 340B Program Integrity efforts, including: <br>• Internal 340B Audit Report(s) performed by Barrio <br>• External 340B Audit Report(s) performed by external vendor regarding Barrio's participation in the 340B program to satisfy HRSA's annual external 340B Audit expectation <br>• Corrective Action Plans/Remediation steps for 340B non-compliance identified (not limited to material breach) if applicable <br><br>*Please note a summary of audit scope, methodology, samples tested, findings and any corrective action plans (if applicable) would suffice* | Word Document or PDF |
| 3. | 340B Policies and Procedures Documentation <br><br>Provide all versions of the policy that were effective within the audit period | Policies and procedures related to, but not limited to, the following: <br>• 340B purchases, including purchases at ceiling and sub-ceiling prices <br>• Identifying 340B-eligible patients and Barrio's 340B eligible patient definition <br>• System related procedures (i.e., purchasing systems, split-billing software) <br>• determination of inpatient versus outpatient status (if applicable) <br>• Mechanisms to prevent 340B product diversion <br>• 340B Program Integrity efforts including oversight over 340B contract pharmacies | Word Document or PDF |

---

[1] Auditors reserve the right to update and supplement the document request list(s) and audit additional topics to the extent additional bases for reasonable cause arise after obtaining HRSA approval.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| 4. | Third Party Administrator (TPA) Documentation | Information, documentation, and contracts related to third party administrators that assist in the acquisition or dispense of 340B product on behalf of Barrio outlining the methodology and process for 340B eligibility determination and inventory management.<br><br>*Please note any proprietary and confidential financial arrangements/information that is unrelated to the prevention of diversion can be redacted by Barrio from Third-party administrator contracts* | Word Document or PDF |
| --- | --- | --- | --- |
| 5. | Contract Pharmacy Agreements / Pharmacy Service Agreements | All contracts maintained by Barrio with Contract Pharmacy(ies) for dispensing of AbbVie's in-scope products outlining the roles and responsibilities of Barrio and its contract pharmacies to help maintain 340B Program Integrity.<br><br>*Please note any proprietary and confidential financial arrangement/information that is unrelated to the prevention of diversion related to contract pharmacies can be redacted by Barrio.* | Word Document or PDF |
| 6. | Wholesaler Purchase Reports by NDC and Account Type | Barrio purchasing for each in-scope AbbVie's 340B drugs by NDC-11 and by account type (340B, WAC, GPO). Please include the following data elements:<br>• Invoice Number (if applicable)<br>• Wholesaler Name<br>• NDC-11<br>• Drug Description<br>• Quantity Purchased (in Packages)<br>• Account Name<br>• Account Type | Excel or Pipe De-limited Text files or CSV |
| 7. | Quantity Dispensed Reports by NDC | Number / quantity of 340B dispenses by NDC-11 to patients who have received 340B drugs. | Excel or Pipe De-limited Text files or CSV |
| 8. | Healthcare Professional (HCP) Roster & Employment/ Contractual Agreements | 1. Listing of all HCPs who are employees of Barrio or have a contractual or other arrangement with Barrio and dispense 340B drug(s) to Barrio patients. Please include the following elements:<br>• HCP Name<br>• HCP NPI and/or other identifier (DEA number, etc.)<br>• HCP Title (M.D., Nurse Practitioner, Physician Assistant, etc.)<br>• HCP License(s) (Texas medical license, etc.)<br>• HCP Therapeutic Area/Specialty<br>• HCP Employment status (Please indicate whether the HCP is a full-time employee | 1. PDF or Excel<br><br>2. Word Document or PDF |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

Proprietary & Confidential

| | | and/or contracted or under another arrangement with Barrio)<br>• HCP Employment or Contract Arrangement Start Date<br>• HCP Employment or Contract Arrangement End Date<br><br>2. Copies of employment and/or other contractual arrangements with contracted HCPs detailing the following: definition of contractual parties, the services and level of care to be provided, frequency and volume of care provide to Barrio patients, and the coordination of care between Barrio and the HCP<br><br>3. Documentation of any referrals between Barrio and any healthcare professionals who prescribe 340B drugs.<br><br>4. Documentation concerning Barrio's relationship with Pharma Strategies.<br><br>5. For any telehealth encounters resulting in 340B prescriptions, documentation supporting the nature, frequency and duration of the medical services provided, documentation of any referrals from the patient's primary care physician to the telehealth provider and from the telehealth provider back to the patient's primary care physician, documentation showing the relationship between the telehealth provider and Barrio, and documentation in the Barrio EMR of any such telehealth encounters. | |
| 9. | Third Party Administrator Claims Reports (include only 340B eligible claims) | Deidentified listing of all patients who received the relevant 340B drug(s) for the scope period, including the following information for sampling purposes:<br>• Date the 340B drug(s) was prescribed and date dispensed to the patient.<br>• Prescription numbers (Rx Numbers).<br>• Fill Numbers<br>• Order Numbers for 340B Purchases by NDC<br>• Prescribing HCP NPI number. NPI number and/or Medicaid Billing Numbers ("MBN") related to dispensing entity<br>• Purchase price of the drug(s) dispensed to the patient.<br>• MRN # or Patient Identifier<br>• Dispensing Pharmacy Name<br>• Patient's Health Insurance (e.g., Medicaid, Medicare, private payor, self-pay, some | Excel or Pipe De-limited Text files or CSV |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| | | | |
|---|---|---|---|
| | | combination, etc.) including corresponding Group, BIN and Processor Control Numbers (PCN) | |
| 10. | Electronic Medical Record (EMR) Access | Access to Barrio's EMR for selected claims sample to assess the following: <ul><li>Patient Encounter date and time</li><li>Patient Status at time of drug dispense and/or prescription written</li><li>Medical/Progress notes and Encounter Details including diagnosis (e.g., ICD-10 codes) and the procedures and services provided by healthcare professionals</li><li>Drug prescribed as a direct result of service provided during the encounter</li><li>Patient Encounter Location</li><li>Patient Location During Encounter</li><li>Attending Physician/ HCP Oversight</li><li>Length of encounter (particularly related to Telehealth encounters)</li></ul>Additionally, in case of referrals, qualifying patients as 340B eligible, access to EMR to assess the following: <ul><li>Request for referral originating from Barrio HCP to referral provider documented in the EMR</li><li>Evidence of Care-Coordination and/or Communication (e.g. documentation in EMR medical progress notes, sharing of patient notes etc.)</li></ul>*Please note the access to EMRs is being requested virtually by PwC during the course of audit fieldwork to assess if the elements of the 340B eligible patient definition are being met by Barrio. This data does not need to be provided offline to PwC.* | Virtual Access during Audit fieldwork |
| 11. | Billing Records | For sampled transactions, billing records including all relevant billing codes for the services provided to patients receiving the relevant 340B drugs in scope | Excel or Pipe De-limited Text files or CSV |

In addition to the documentation requested above, PwC requests that the following information/resources be available during the virtual audit: (**Note:** specifics, *i.e.*, personnel to interview, and systems or processes to walk through, will be identified and discussed during the pre-audit call.)

| Information/Resources Requested: | |
|---|---|
| 1. | Provide overview of the Third-party system(s) used to order drugs, track drugs, and distribute drugs, adjudicate claims for 340B eligibility, document patient encounters, referrals etc. *e.g.*, EMR system, split billing systems, third party administrator systems utilized. |

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

*Proprietary & Confidential*

| 2. | Provide overview of split-billing software system (separate GPO & 340B accounts, if applicable) including but not limited to parameters and controls used to maintain 340B compliance with product diversion, duplicate discounts as well as virtual replenishment process or physical inventory. |
|---|---|
| 3. | Personnel available or accessible to conduct interviews or process walkthroughs, including (but not limited to) the following (as applicable): <br><br> • 340B Pharmacy Director. <br><br> • Systems Owners (*e.g.,* owners for split-billing software, procurement systems, EMR systems, and other applicable systems). <br><br> • Individuals involved in invoicing, purchasing, dispensing, or billing of product, including interactions with contract pharmacies that purchase 340B products on Barrio's behalf <br><br> • Revenue Cycle Personnel <br><br> • Roles Identified in 340B Enrollment <br>    o Authorizing Official <br>    o Primary Contact <br>    o Manager of applicable Contract Pharmacy |

Please note that additional information may be requested based on our review and analysis of the initial documentation/data provided and throughout the virtual/remote audit. All requested documentation/data (except EMR records) that is available and able to be provided before the virtual/remote audit begins will expedite the audit process and potentially decrease the number of days required to be spent conducting the virtual/remote audit.

NOT SUBJECT TO RELEASE OR DISCLOSURE UNDER FOIA OR OTHERWISE

Correspondence between AbbVie and Barrio:

1. February 5, 2025

2. March 19, 2025

3. April 3, 2025

4. April 9, 2025

5. April 30, 2025

6. May 7, 2025

7. May 30, 2025

**February 5, 2025 correspondence between AbbVie and Barrio**

## Van Etten, Elizabeth

**From:**          elizabeth.vanetten@abbvie.com
**Attachments:**   CH062360_GFI_20250206.pdf

---

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Thursday, February 6, 2025 1:22 PM
**To:** pnguyen@communicaresa.org
**Cc:** acantri@communicaresa.org; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** AbbVie Letter to Barrio Comprehensive Family Health Care Center

Hello Mr. Nguyen,

Please see the attached letter.

Thank you,

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228

# abbvie

26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE   847-452-8228
EMAIL   EDWARD.SCHEIDLER@ABBVIE.COM

1



*By Email and FedEx*

February 6, 2025

Barrio Comprehensive Family Health Care Center Inc.
HRSA-Funded Health Center
Paul Nguyen
President & CEO
1102 Barclay Street
San Antonio, TX 78207

Cc: Alexander Cantri, Director of Accounting


RE: Purchases of Immunology Products by Barrio Comprehensive Family Health Care Center Inc. (CH062360), inclusive of associated grantee sites ("Barrio")

Dear Mr. Nguyen,

AbbVie Inc. ("AbbVie") values your business and appreciates your organization's use of our immunology product portfolio in the treatment of your patients. As a matter of routine oversight, AbbVie periodically reviews customer purchases of these products through the 340B Drug Pricing Program ("340B Program"). We continually try to work with our customers to ensure that these purchases comply with the applicable laws and regulations, and terms and provisions of the 340B Program, namely those prohibiting product diversion and duplicate discounts, and as questions or concerns arise, AbbVie seeks ways to address them in good faith with the Authorizing Official and Primary Contact listed in the 340B Office of Pharmacy Affairs Information System ("340B OPAIS").

As part of a recent review, we examined Barrio's purchases of AbbVie outpatient covered drugs that received the 340B discount from January 1, 2021 through December 31, 2024 (the "Time Period"). Based on records obtained through chargeback data from wholesalers, Barrio's purchasing activity during the Time Period was as follows:

| Barrio Total 340B Purchasing by year (in millions) * | | | | |
|---|---|---|---|---|
| | 2021 | 2022 | 2023 | 2024 |
| Humira® (all NDCs) | 14.2 | 24.9 | 32.3 | 23.9 |
| Skyrizi® (all NDCs) | 2.4 | 9.7 | 20.1 | 26.0 |
| Rinvoq® (all NDCs) | 0.7 | 3.3 | 5.7 | 7.9 |
| Other products | 0.9 | 1.1 | 1.8 | 1.7 |
| **Total** | **18.2** | **39.0** | **59.9** | **59.5** |

*See Appendix A for breakdown by NDC-11

As a result of this analysis, AbbVie has observed an unusual and atypical increase in Barrio's 340B purchases related to three brands, Humira, Skyrizi and Rinvoq ("Immunology Products"). Barrio's 340B purchases of Immunology Products increased by over 119% from 2021 to 2022. From 2022 to 2023, purchases of these three products continued to grow by over 53%. Although AbbVie did not see a significant change in Barrio's 2024 purchasing as compared to the prior year, purchases of Immunology Products made up over 97% of Barrio's total 340B purchases of AbbVie products.

| Barrio Total Packages of 340B Immunology Products Purchased by year ** | | | | |
|---|---|---|---|---|
| | 2021 | 2022 | 2023 | 2024 |
| Humira® (all NDCs) | 3,538 | 5,777 | 6,493 | 4,397 |
| Skyrizi® (all NDCs) | 607 | 1,423 | 2,268 | 2,259 |
| Rinvoq® (all NDCs) | 444 | 1,646 | 2,090 | 2,373 |
| **Total** | **4,589** | **8,846** | **10,851** | **9,329** |

**See Appendix B for breakdown by NDC-11

1

# abbvie

A review of data containing AbbVie 340B purchases made by all covered entities in the 340B Program from January 1, 2024 through December 31, 2024 revealed that Barrio is disproportionately purchasing Immunology Products—and is the only covered entity in the top five purchasers nationwide that is not a Disproportionate Share Hospital (DSH). Barrio is also the top purchaser nationwide of Immunology Products among all Health Centers (CH) and Federally Qualified Health Centers (FQHC) covered entity types in the 340B Program.

As part of our routine review, AbbVie also analyzed Barrio's contract pharmacy usage as compared to all covered entities in the State of Texas during 2024. AbbVie observed that 80% of 340B purchases (measured by gross sales) of AbbVie covered outpatient drugs are dispensed through pharmacies located in the State of Texas. However, 71% of Barrio's purchases (measured by gross sales) utilize pharmacies located outside of the State of Texas.

Given the trends that we have observed in Barrio's 340B purchases of Immunology Products, AbbVie wishes to understand the following:

1. **Background**
   a) Please provide or describe the policies and procedures used by Barrio to govern the 340B Program.
   b) Please describe how the revenue generated from the 340B Program is used in alignment with Program intent to serve vulnerable patients (including but not limited to offering the 340B discounts directly to patients within the contract pharmacy setting, prescription co-pay assistance, etc.)

2. **340B Purchasing Trends**
   a) Do Barrio's 340B purchase records for each of these three products— Humira, Skyrizi, and Rinvoq—respectfully align with the data provided above? If not, what figures do your records reflect for each product?
   b) Please explain the reasons why there has been a substantial increase in Barrio's 340B sales during the Time Period.
   c) Please explain why 340B purchases appear to be multiples higher than the number of prescriptions written by affiliated Barrio providers.

3. **Diversion**
   a) Please describe Barrio's definition of a 340B-eligible "patient".
      i. Please share Barrio's full definition, including all specific facts and circumstances Barrio uses to evaluate and apply a determination of whether an individual is a 340B-eligible patient as it applies to Barrio's purchases of AbbVie covered outpatient drugs.
   b) Please share how Barrio's definition of a 340B-eligible "patient" has changed over time, if applicable, specifically highlighting all changes made over the past three years? Please indicate the relevant time-period for each iteration of the definition.
   c) In determining 340B "patient" eligibility, does the "patient" definition require that an individual receive a healthcare service at an eligible site registered on 340B OPAIS within a particular time period?
      i. If so, what is that time period?
      ii. Has that time period changed during the past three years? If so, please explain how it has changed.
   d) What level of healthcare service qualifies an individual as a "patient" of Barrio?
      i. Is an in-person encounter required? Does a telehealth encounter alone suffice?
      ii. Does Barrio require that in-person and/or telehealth encounters take place with a certain frequency? Please describe Barrio's requirements with respect to the frequency and cadence of patient visits and type and level of service of encounter.
   e) Does Barrio require that a healthcare service occur in-person at the eligible site within a certain time period in order to be considered 340B-eligible? If so, what is the time period?
   f) Does Barrio require that a healthcare service be related to the drug ordered and/or subsequently described in order to be considered 340B-eligible? If so, please describe Barrio's requirement.

2

abbvie

g) How long after an individual's last healthcare service encounter will they no longer be considered a 340B-eligible patient of Barrio?

h) Are there any exceptions to Barrio's standard 340B patient eligibility qualification process? If yes, please describe each exception category. For example, but not limited to:

    i.    Are there any locations or service areas where individuals are "green lit" for 340B patient eligibility?

    ii.    Is there a manual qualification process for 340B patient eligibility (e.g., referrals)?

    iii.    Are there any 340B purchases associated with NDCs listed in Appendix A and Appendix B of this letter that correlate to an "exception" to your standard 340B patient eligibility determination process and were manually qualified?

i) Please provide an explanation of your process for ensuring that you and your affiliated grantee sites act within the scope of the grant that qualifies your 340B Program eligibility.

j) What are the processes and/or criteria used by Barrio to appropriately ensure that all covered outpatient drugs purchased through the 340B Program are administered only to eligible patients thus preventing diversion?

k) What supporting information is used by Barrio to ensure the 340B discounted drug is not dispensed, resold, or otherwise transferred to an ineligible patient?

l) How is compliance with the 340B statute and Program guidelines maintained at Barrio and its contract pharmacies in connection with ensuring that all covered outpatient drugs purchased through the 340B Program are dispensed only to eligible patients thus preventing diversion?

m) Have there been any errors in applying Barrio's definition(s) of a 340B-eligible "patient" during the past three years? If so, please describe what occurred.

n) What is the process used to identify and resolve errors, including but not limited to, Barrio's definition of material breach and reporting?

o) Does Barrio capture 340B prescriptions for "referral" providers? If so, is the referral provider required to send follow-up documentation summarizing patient care back to Barrio? When does Barrio consider a patient referred to Barrio by an unaffiliated provider to be a 340B-eligible patient? What percentage of Barrio's 340B-eligible patients are referred by an unaffiliated provider?

p) Does Barrio maintain any policies or procedures specific to 340B prescriptions for "referral" providers? If so, please describe.

q) Does Barrio perform ad-hoc, retrospective prescription reviews for 340B eligibility determinations? If so, how often? Please describe the circumstance that would initiate this type of review. How long is the lookback period?

r) Has Barrio performed any self-audits and/or external third-party audits of the 340B program? If yes, could you provide the name of the external auditor vendor, the scope period for the audits including dates, and results of the audits performed?

s) Which third party administrator(s) and split-billing software(s) has Barrio used during the Time Period? Please provide an overview of the controls used by the software to appropriately classify and virtually accumulate 340B eligible transactions.

t) Does Barrio any other third-party vendors to facilitate the 340B Program (e.g. referral, alternative funding, etc.)? If yes, which vendors are used and for what purpose? If yes, what softwares do they use?

u) Please provide the criteria used by Barrio to determine a 340B-eligible provider, as defined in your 340B policies and procedures. Please describe how the criteria has changed, if at all, during the past three years.

v) Please provide a list that documents the providers at each of Barrio's 340B registered sites who are eligible to submit scripts and the locations from which prescriptions may be initiated.

w) Please describe how this list of providers is maintained and reviewed for compliance with Barrios' policies and procedures, as well as with 340B Program requirements.

4. **Inventory Control**

3

abbvie

    a)   Please explain the inventory model (e.g., virtual or physical) utilized by Barrio during the Time Period for 340B purchases of self-administered and/or provider-administered medications. If virtual, are products accumulated at the 9-digit or 11-digit NDC level?

**5.  Duplicate Discount**
    a)   Considering the increase in 340B volume, please provide an overview of the controls put in place to prevent Medicaid FFS and MCO duplicate discounts.

**6.  <u>Site Eligibility</u>**
    a)   Please describe the process or procedures Barrio utilizes to verify site eligibility.
        i.   Specifically, how does Barrio ensure the 340B drug is dispensed at an eligible site?
    b)   Are 340B-purchased drugs dispensed in locations not currently registered as active on 340B OPAIS?
        i.   If so, what are those locations and their addresses?
    c)   Do you operate an entity-owned outpatient pharmacy?
    d)   For providers who practice at multiple locations, one of which is an associated site and one of which is not, does Barrio differentiate between prescriptions written at one location versus another in the context of determining 340B eligibility, and if so, how?

**7.  <u>Contract Pharmacies</u>**
    a)   What is the division of responsibility between Barrio and its contract pharmacies in maintaining compliance with 340B Program requirements?
    b)   Please explain the nature of your contractual relationship with contract pharmacies, including specifically clarifying whether Barrio's contract pharmacy agreements detail whether the pharmacies are agents of Barrio or independent contractors.
    c)   Please provide the names and locations of the Contract Pharmacies used to dispense AbbVie's drugs. What percentage of total volume of AbbVie's drugs are dispensed by each of the top three pharmacies during the Time Period? Please list the name of each pharmacy, its location, and the respective percentage.
    d)   Please explain why Barrio utilizes a high number of Contract Pharmacies located outside of the community it serves.

We kindly request a written response to our inquiries within 30 days of the date of this letter. Please send your response by email to edward.scheidler@abbvie.com. If you have any questions, please do not hesitate to contact me.

Thank you for your time and cooperation.

Sincerely,

Edward Scheidler
Senior Director

4

abbvie

**Appendix A**

**\*Product Purchasing by year by NDC-11**

Table 1: Humira

| Barrio Total 340B HUMIRA Purchasing by Year by NDC-11 (in millions) | | | | | |
|---|---|---|---|---|---|
| Product | NDC11 | 2021 | 2022 | 2023 | 2024 |
| HUMIRA | 00074-0067-02 | $0.00 M | $0.00 M | $0.00 M | $0.00 M |
| HUMIRA | 00074-0124-02 | $0.00 M | $0.00 M | $0.07 M | $0.50 M |
| HUMIRA | 00074-0124-03 | $0.36 M | $0.37 M | $0.50 M | $0.54 M |
| HUMIRA | 00074-0124-04 | $0.00 M | $0.02 M | $0.00 M | $0.00 M |
| HUMIRA | 00074-0243-02 | $0.18 M | $0.44 M | $0.85 M | $0.58 M |
| HUMIRA | 00074-0554-02 | $9.08 M | $16.79 M | $23.60 M | $15.76 M |
| HUMIRA | 00074-0616-02 | $0.00 M | $0.01 M | $0.05 M | $0.02 M |
| HUMIRA | 00074-0817-02 | $0.00 M | $0.00 M | $0.00 M | $0.01 M |
| HUMIRA | 00074-1539-03 | $0.44 M | $0.35 M | $0.31 M | $0.29 M |
| HUMIRA | 00074-2540-03 | $0.00 M | $0.00 M | $0.01 M | $0.00 M |
| HUMIRA | 00074-3799-02 | $0.47 M | $0.44 M | $0.55 M | $0.26 M |
| HUMIRA | 00074-4339-02 | $3.52 M | $6.43 M | $6.27 M | $5.96 M |
| HUMIRA | 00074-4339-06 | $0.00 M | $0.00 M | $0.02 M | $0.00 M |
| HUMIRA | 00074-4339-07 | $0.12 M | $0.04 M | $0.04 M | $0.00 M |
| HUMIRA | 00074-9374-02 | $0.00 M | $0.00 M | $0.00 M | $0.00 M |
| HUMIRA | **Total** | **$14.17 M** | **$24.89 M** | **$32.28 M** | **$23.92 M** |

Table 2: Rinvoq

| Barrio Total 340B RINVOQ Purchasing by Year by NDC-11 (in millions) | | | | | |
|---|---|---|---|---|---|
| | NDC11 | 2021 | 2022 | 2023 | 2024 |
| RINVOQ | 00074-1043-28 | $0.00 M | $0.03 M | $0.30 M | $0.51 M |
| RINVOQ | 00074-2306-30 | $0.68 M | $3.28 M | $5.05 M | $6.31 M |
| RINVOQ | 00074-2310-30 | $0.00 M | $0.03 M | $0.39 M | $1.13 M |
| RINVOQ | 00074-2320-01 | $0.00 M | $0.00 M | $0.00 M | $0.00 M |
| RINVOQ | Total | $0.68 M | $3.34 M | $5.74 M | $7.95 M |

Table 3: Skyrizi

| Barrio Total 340B SKYRIZI Purchasing by Year by NDC-11 (in millions) | | | | | |
|---|---|---|---|---|---|
| Product | NDC11 | 2021 | 2022 | 2023 | 2024 |
| SKYRIZI | 00074-1050-01 | $0.42 M | $3.83 M | $3.82 M | $3.56 M |
| SKYRIZI | 00074-1065-01 | $0.00 M | $0.00 M | $0.00 M | $0.00 M |
| SKYRIZI | 00074-1070-01 | $0.00 M | $0.00 M | $0.85 M | $1.48 M |
| SKYRIZI | 00074-2042-02 | $1.84 M | $0.00 M | $0.00 M | $0.00 M |
| SKYRIZI | 00074-2100-01 | $0.15 M | $5.87 M | $15.42 M | $20.91 M |
| SKYRIZI | 00074-5015-01 | $0.00 M | $0.01 M | $0.02 M | $0.00 M |
| SKYRIZI | Total | $2.42 M | $9.70 M | $20.11 M | $25.95 M |



**Appendix B**

**\*\*Products Purchased by year by NDC-11**

Table 4: Humira

| Barrio Total Packages of 340B HUMIRA Purchased by Year by NDC-11 | | | | | |
|---|---|---|---|---|---|
| **Product** | **NDC11** | **2021** | **2022** | **2023** | **2024** |
| HUMIRA | 00074-0067-02 | 0 | 0 | 0 | 0 |
| HUMIRA | 00074-0124-02 | 0 | 0 | 7 | 51 |
| HUMIRA | 00074-0124-03 | 36 | 34 | 37 | 37 |
| HUMIRA | 00074-0124-04 | 0 | 1 | 0 | 0 |
| HUMIRA | 00074-0243-02 | 55 | 120 | 189 | 121 |
| HUMIRA | 00074-0554-02 | 2,747 | 4,526 | 5,245 | 3,273 |
| HUMIRA | 00074-0616-02 | 0 | 3 | 12 | 5 |
| HUMIRA | 00074-0817-02 | 0 | 0 | 0 | 2 |
| HUMIRA | 00074-1539-03 | 22 | 16 | 12 | 10 |
| HUMIRA | 00074-2540-03 | 0 | 0 | 1 | 0 |
| HUMIRA | 00074-3799-02 | 79 | 69 | 80 | 37 |
| HUMIRA | 00074-4339-02 | 589 | 1,005 | 906 | 861 |
| HUMIRA | 00074-4339-06 | 0 | 0 | 1 | 0 |
| HUMIRA | 00074-4339-07 | 10 | 3 | 3 | 0 |
| HUMIRA | 00074-9374-02 | 0 | 0 | 0 | 0 |
| **HUMIRA** | **Total** | **3,538** | **5,777** | **6,493** | **4,397** |

Table 5: Rinvoq

| Barrio Total Packages of 340B RINVOQ Purchased by Year by NDC-11 | | | | | |
|---|---|---|---|---|---|
| **Product** | **NDC11** | **2021** | **2022** | **2023** | **2024** |
| RINVOQ | 00074-1043-28 | - | 8 | 60 | 85 |
| RINVOQ | 00074-2306-30 | 444 | 1,624 | 1,892 | 1,943 |
| RINVOQ | 00074-2310-30 | - | 14 | 138 | 345 |
| RINVOQ | 00074-2320-01 | - | - | - | - |
| RINVOQ | Total | 444 | 1,646 | 2,090 | 2,373 |

Table 6: Skyrizi

| Barrio Total Packages of 340B SKYRIZI Purchased by Year by NDC-11 | | | | | |
|---|---|---|---|---|---|
| **Product** | **NDC11** | **2021** | **2022** | **2023** | **2024** |
| SKYRIZI | 00074-1050-01 | 105 | 562 | 419 | 341 |
| SKYRIZI | 00074-1065-01 | - | - | - | - |
| SKYRIZI | 00074-1070-01 | - | - | 113 | 175 |
| SKYRIZI | 00074-2042-02 | 463 | - | - | - |
| SKYRIZI | 00074-2100-01 | 39 | 856 | 1,731 | 2,043 |
| SKYRIZI | 00074-5015-01 | - | 5 | 5 | - |
| SKYRIZI | Total | 607 | 1,423 | 2,268 | 2,559 |

6

**March 19, 2025 correspondence between AbbVie and Barrio**

# Van Etten, Elizabeth

| | |
|---|---|
| **From:** | Scheidler, Edward A |
| **Sent:** | Wednesday, March 19, 2025 10:00 AM |
| **To:** | Ricardo Gonzalez; Alexander Cantri |
| **Cc:** | Paul Nguyen; Schmidt, Vanessa; Scheidler, Edward A |
| **Subject:** | Follow-up to March 7th meeting with AbbVie |

**Importance:**   High

Hello Rick and Alex,

Thank you for taking the time to meet with our team on March 7th to discuss the letter sent to Barrio Comprehensive Family Health Care Center Inc. ("Barrio") on February 6th.

During the March 7, 2025 meeting, it was explained that:

- Barrio leverages the "standard patient definition that was on HRSA before they pulled it off '2-3 years ago".
- Barrio's Patient Eligibility criteria did not get revised in response to the *Genesis opini*on.
- Patients must see a Barrio provider and provider documents are maintained in Barrio's EMR software.
- Patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system.
- An in-person visit is not required. Telehealth visits alone will qualify the patient as eligible for 340B.
- A patient is considered a patient of the covered entity for 24 months meaning that the visit is within 24 months of the eligible prescription. The Third-Party Administrator (TPA) used by Barrio leverages an 18-month window, but the policy lists 24 months.
- The 340B patient eligibility and provider policies are updated on a 3-year cadence and were just updated and sent to the Board on March 6th.
- Providers either have to be an employee or a paid contractor per Barrio policy. However, there are no contractors in practice.
- A patient visit encounter does not have to be related to the patient's prescription that is designated as 340B eligible.
- In a referral relationship, the referring provider must document the name of the provider writing the prescription within the EMR when referring out from Barrio. However, Barrio processes a small amount of referral captures. Rick mentioned a new policy that requests an "actual referral" versus other documentation.
- Enrollment in a clinical study is not sufficient to establish patient eligibility. All study patients must be seen by the physician. Rick confirmed a patient enrolled in a study, like a longevity study, would not be 340B-eligible.
- Form 5 of the federal grant application describes all services that are approved under the scope of a grant. This is approved by HRSA. Rick offered to provide AbbVie with a copy of the grant for review.
- Barrio is familiar with third-party vendors that seek to provide additional savings revenue, such as Sharks, Payer Matrix, and Paydhealth, but Barrio stated that they do not work with any alternative funding vendor.
- In response to why 70% of Barrio's 340B contracted pharmacies are located outside of Texas, neither Rick nor Alex knew the answer directly. However, Barrio did state that patient prescribers designate which specialty pharmacies are in network. CVS dictates which pharmacies the prescription must be sent to and that is typically sent to FL, NM, and AZ. It was explained that Barrio has relationships with out of state patients in New Mexico specifically for Rheumatology. There was a lack of Rheumatology providers in this area, and they were contacted and asked to provide care for these patients.

1

Please confirm your agreement with the details included in the summary above. If you find errors or inaccuracies in the summary, please contact me immediately.

In addition to the question in AbbVie's letter dated February 6, 2025, AbbVie would like to ask Barrio to provide the following in response to the March 7, 2025 meeting:

1) Please provide the patient eligibility policy sent to the Board on March 6th in addition to any other versions of patient eligibility criteria effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration.

2) Please provide copies of the qualified provider policies sent to the Board on March 6th in addition to any other version effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration

3) Please provide a copy of the HRSA-approved Form 5 detailing the scope of Barrio's federal grant.

4) Please provide copies of Barrio's new referral policy and the prior referral policy. Please be sure to indicate the effective dates of each iteration

5) Does Barrio engage either directly or indirectly with a third-party vendor called Pharma Strategies? If yes, please detail the services the vendor provides, such as consulting services, additional savings revenue advising, referral coordination, etc.

6) To clarify, you stated that CVS dictates which pharmacies the prescription must be sent to and that is typically sent to pharmacies in FL, NM, and AZ. How does the prescription get to the patient if they are not located in the state where the prescription was sent?

7) Do contract pharmacies utilized by Barrio dispense AbbVie's covered outpatient drugs, act as Barrio's agent, meaning that the contract pharmacy would not resell the drug, but distributes the drug on Barrio's behalf?

8) In our meeting, it was stated that patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system. What does it mean to conduct a telehealth visit at an approved site? Please describe Barrio's requirements with respect to frequency, cadence and duration of telehealth visits.

I look forward to your written response to our February 6th letter as well as the additional request above. As agreed, Barrio will provide information that will be sent on a rolling basis between now and April 3rd. Please contact me if you have any questions.

Thanks,


Edward

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228

abbvie
26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE  847-452-8228
EMAIL  EDWARD.SCHEIDLER@ABBVIE.COM

**April 3, 2025 correspondence between AbbVie and Barrio**

**Van Etten, Elizabeth**

**From:**                    elizabeth.vanetten@abbvie.com

On Apr 4, 2025, at 5:28 PM, Ricardo Gonzalez <rgonzalez@communicaresa.org> wrote:

Edward,

See email immediately below that was sent yesterday.  Please verify receipt of this email.

Thank you.

**Rick C. Gonzalez | Vice President and CFO**
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070  **|** communicaresa.org
**<image.png>**

**<image.png>**

**<image.png>**

**<image.png>**

**<image.png>**

**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

**From:** Ricardo Gonzalez <rcgonz@hotmail.com>
**Sent:** Thursday, April 3, 2025 10:13 AM
**To:** edward.scheidler@abbvie.com
**Cc:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>;

1

vanessa.schmidt@abbvie.com; edward.scheidler@abbvie.com; Michael Hernandez <mhernandez@communicaresa.org>
**Subject:** Fw: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**CAUTION**: External email. Do not open attachments, click on links or comply with requests unless you trust the sender. Never share your User ID or password.

Hello Edward,

I'm sending this from my personal email since it seems like I'm blocked on your end.  Since we did originally talk about having data for you on April 3rd, I did want to reach out and let you know that we do need some more time.  We are knee deep in our annual audit in addition to training a number of new staff. Also, as you have probably seen on the news, all the craziness with the federal programs is having an impact as well.  I believe that we can have everything done and reviewed by the end of the month.

I apologize for any inconvenience, but it really could not be avoided.

Respectfully,


**Rick C. Gonzalez | Vice President and CFO**

**Corporate Campus**

431 Wolfe Rd., San Antonio, TX 78216

210-233-7070 | communicaresa.org


**<image.png>**



**<image.png>**

**<image.png>**

**<image.png>**

**<image.png>**




**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used

or disclosed in accordance with applicable laws. Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Thursday, April 3, 2025 10:05 AM
**To:** Ricardo Gonzalez <rcgonz@hotmail.com>
**Subject:** FW: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Tuesday, March 25, 2025 2:05 PM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**CAUTION**: External email. Do not open attachments, click on links or comply with requests unless you trust the sender. Never share your User ID or password.

I am resending to ensure the email went through. I am traveling and the internet is unstable.

Apologies if you receive this note a second time.

--------

Hello Rick,

3

I wanted to follow up on Barrio's response to our February 6ᵗʰ letter. I also wanted to make sure that you did not have any comments on the summary of our March 7ᵗʰ call sent on last Wednesday. Please note that the summary does contain some additional questions that resulted from the information shared in the call. When we spoke on March 7ᵗʰ, you and Alex committed to providing responses to our inquiries on a rolling basis between now and April 3ʳᵈ. AbbVie looks forward to receiving your reply on or before April 3ʳᵈ. Please let us know if there is anything we can do to assist.

Best regards,

Edward

**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228

<Picture (Device Independent Bitmap) 1.jpg>

---

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Tuesday, March 25, 2025 2:03 PM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

Hello Rick,

4

I wanted to follow up on Barrio's response to our February 6th letter. I also wanted to make sure that you did not have any comments on the summary of our March 7th call sent on last Wednesday. Please note that the summary <u>does</u> contain some additional questions that resulted from the information shared in the call. When we spoke on March 7th, you and Alex committed to providing responses to our inquiries on a rolling basis between now and April 3rd.  AbbVie looks forward to receiving your reply on or before April 3rd. Please let us know if there is anything we can do to assist.

Best regards,

Edward

**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228

<< OLE Object: Picture (Device Independent Bitmap) >>

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Wednesday, March 19, 2025 9:00 AM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** Follow-up to March 7th meeting with AbbVie
**Importance:** High

Hello Rick and Alex,

Thank you for taking the time to meet with our team on March 7th to discuss the letter sent to Barrio Comprehensive Family Health Care Center Inc. ("Barrio") on February 6th.

During the March 7, 2025 meeting, it was explained that:

5

1. Barrio leverages the "standard patient definition that was on HRSA before they pulled it off '2-3 years ago".
2. Barrio's Patient Eligibility criteria did not get revised in response to the *Genesis opini*on.
3. Patients must see a Barrio provider and provider documents are maintained in Barrio's EMR software.
4. Patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system.
5. An in-person visit is not required. Telehealth visits alone will qualify the patient as eligible for 340B.
6. A patient is considered a patient of the covered entity for 24 months meaning that the visit is within 24 months of the eligible prescription. The Third-Party Administrator (TPA) used by Barrio leverages an 18-month window, but the policy lists 24 months.
7. The 340B patient eligibility and provider policies are updated on a 3-year cadence and were just updated and sent to the Board on March 6th.
8. Providers either have to be an employee or a paid contractor per Barrio policy. However, there are no contractors in practice.
9. A patient visit encounter does not have to be related to the patient's prescription that is designated as 340B eligible.
10. In a referral relationship, the referring provider must document the name of the provider writing the prescription within the EMR when referring out from Barrio.  However, Barrio processes a small amount of referral captures.  Rick mentioned a new policy that requests an "actual referral" versus other documentation.
11. Enrollment in a clinical study is not sufficient to establish patient eligibility. All study patients must be seen by the physician. Rick confirmed a patient enrolled in a study, like a longevity study, would not be 340B-eligible.
12. Form 5 of the federal grant application describes all services that are approved under the scope of a grant. This is approved by HRSA. Rick offered to provide AbbVie with a copy of the grant for review.
13. Barrio is familiar with third-party vendors that seek to provide additional savings revenue, such as Sharks, Payer Matrix, and Paydhealth, but Barrio stated that they do not work with any alternative funding vendor.
14. In response to why 70% of Barrio's 340B contracted pharmacies are located outside of Texas, neither Rick nor Alex knew the answer directly.  However, Barrio did state that patient prescribers designate which specialty pharmacies are in network.  CVS dictates which pharmacies the prescription must be sent to and that is typically sent to FL, NM, and AZ.  It was explained that Barrio has relationships with out of state patients in New Mexico specifically for Rheumatology. There was a lack of Rheumatology providers in this area, and they were contacted and asked to provide care for these patients.

Please confirm your agreement with the details included in the summary above.  If you find errors or inaccuracies in the summary, please contact me immediately.

In addition to the question in AbbVie's letter dated February 6, 2025, AbbVie would like to ask Barrio to provide the following in response to the March 7, 2025 meeting:

1. Please provide the patient eligibility policy sent to the Board on March 6th in addition to any other versions of patient eligibility criteria effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration.

2. Please provide copies of the qualified provider policies sent to the Board on March 6th in addition to any other version effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration

3. Please provide a copy of the HRSA-approved Form 5 detailing the scope of Barrio's federal grant.

4. Please provide copies of Barrio's new referral policy and the prior referral policy. Please be sure to indicate the effective dates of each iteration

5. Does Barrio engage either directly or indirectly with a third-party vendor called Pharma Strategies? If yes, please detail the services the vendor provides, such as consulting services, additional savings revenue advising, referral coordination, etc.

6. To clarify, you stated that CVS dictates which pharmacies the prescription must be sent to and that is typically sent to pharmacies in FL, NM, and AZ. How does the prescription get to the patient if they are not located in the state where the prescription was sent?

7. Do contract pharmacies utilized by Barrio dispense AbbVie's covered outpatient drugs, act as Barrio's agent, meaning that the contract pharmacy would not resell the drug, but distributes the drug on Barrio's behalf?

8. In our meeting, it was stated that patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system. What does it mean to conduct a telehealth visit at an approved site? Please describe Barrio's requirements with respect to frequency, cadence and duration of telehealth visits.


I look forward to your written response to our February 6th letter as well as the additional request above. As agreed, Barrio will provide information that will be sent on a rolling basis between now and April 3rd. Please contact me if you have any questions.

Thanks,


Edward



**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228



<< OLE Object: Picture (Device Independent Bitmap) >>

7

**April 9, 2025 correspondence between AbbVie and Barrio**

**Van Etten, Elizabeth**

| | |
|---|---|
| **From:** | Scheidler, Edward A |
| **Sent:** | Wednesday, April 9, 2025 7:10 PM |
| **To:** | Ricardo Gonzalez |
| **Cc:** | Alexander Cantri; Paul Nguyen; Michael Hernandez; Schmidt, Vanessa; Scheidler, Edward A |
| **Subject:** | RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th |

Rick,

Thank you for your email dated April 3rd. I understand that a response to our inquiries takes time and that you are delayed due to other commitments you are balancing right now. Accordingly, we will expect a response on or before April 30th. As previously discussed on our call, to increase efficiency, we would appreciate a rolling production of information to the extent possible.

We look forward to hearing from you on or before April 30th.

Edward

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228



26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE  847-452-8228
EMAIL  EDWARD.SCHEIDLER@ABBVIE.COM

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Saturday, April 5, 2025 9:40 AM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

Hi Rick,

I am acknowledging receipt of this email.

I checked my spam folder for Thursday's email from you Hotmail email account, and could not find it. It's likely Abbvie's system blocks these from delivery to individual's email addresses.

Thanks for forwarding using your business email address.

**EDWARD SCHEIDLER**

i

Head of 340B Center of Excellence
Mobile: 847-452-8228

**abbvie**

26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE   847-452-8228
EMAIL   EDWARD.SCHEIDLER@ABBVIE.COM

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Friday, April 4, 2025 5:28 PM
**To:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
**Subject:** [EXTERNAL] FW: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

Edward,

See email immediately below that was sent yesterday.  Please verify receipt of this email.

Thank you.

**Rick C. Gonzalez | Vice President and CFO**
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070 | communicaresa.org



**CommuniCare**

**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

**From:** Ricardo Gonzalez <rcgonz@hotmail.com>
**Sent:** Thursday, April 3, 2025 10:13 AM
**To:** edward.scheidler@abbvie.com
**Cc:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; vanessa.schmidt@abbvie.com; edward.scheidler@abbvie.com; Michael Hernandez

<mhernandez@communicaresa.org>
**Subject:** Fw: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**CAUTION:** External email. Do not open attachments, click on links or comply with requests unless you trust the sender. Never share your User ID or password.

Hello Edward,

I'm sending this from my personal email since it seems like I'm blocked on your end.  Since we did originally talk about having data for you on April 3rd, I did want to reach out and let you know that we do need some more time.  We are knee deep in our annual audit in addition to training a number of new staff. Also, as you have probably seen on the news, all the craziness with the federal programs is having an impact as well.  I believe that we can have everything done and reviewed by the end of the month.

I apologize for any inconvenience, but it really could not be avoided.

Respectfully,


**Rick C. Gonzalez | Vice President and CFO**

**Corporate Campus**

431 Wolfe Rd., San Antonio, TX 78216

210-233-7070 | communicaresa.org




   


**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Thursday, April 3, 2025 10:05 AM
**To:** Ricardo Gonzalez <rcgonz@hotmail.com>
**Subject:** FW: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Tuesday, March 25, 2025 2:05 PM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

**CAUTION**: External email. Do not open attachments, click on links or comply with requests unless you trust the sender. Never share your User ID or password.

I am resending to ensure the email went through.  I am traveling and the internet is unstable.

Apologies if you receive this note a second time.

--------

Hello Rick,

I wanted to follow up on Barrio's response to our February 6th letter. I also wanted to make sure that you did not have any comments on the summary of our March 7th call sent on last Wednesday. Please note that the summary does contain some additional questions that resulted from the information shared in the call. When we spoke on March 7th, you and Alex committed to providing responses to our inquiries on a rolling basis between now and April 3rd.  AbbVie looks forward to receiving your reply on or before April 3rd. Please let us know if there is anything we can do to assist.

Best regards,

Edward

**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228



abbvie
26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE  847-452-8228
EMAIL  EDWARD.SCHEIDLER@ABBVIE.COM

---

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Tuesday, March 25, 2025 2:03 PM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** RE: Follow-up to March 7th meeting with AbbVie and notes sent on March 19th

Hello Rick,

I wanted to follow up on Barrio's response to our February 6th letter. I also wanted to make sure that you did not have any comments on the summary of our March 7th call sent on last Wednesday. Please note that the summary does contain some additional questions that resulted from the information shared in the call. When we spoke on March 7th, you and Alex committed to providing responses to our inquiries on a rolling basis between now and April 3rd. AbbVie looks forward to receiving your reply on or before April 3rd. Please let us know if there is anything we can do to assist.

Best regards,

Edward

**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228

<< OLE Object: Picture (Device Independent Bitmap) >>

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Wednesday, March 19, 2025 9:00 AM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Alexander Cantri <acantri@CommuniCareSa.org>
**Cc:** Paul Nguyen <pnguyen@communicaresa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** Follow-up to March 7th meeting with AbbVie
**Importance:** High

Hello Rick and Alex,

Thank you for taking the time to meet with our team on March 7th to discuss the letter sent to Barrio Comprehensive Family Health Care Center Inc. ("Barrio") on February 6th.

During the March 7, 2025 meeting, it was explained that:

- Barrio leverages the "standard patient definition that was on HRSA before they pulled it off '2-3 years ago".
- Barrio's Patient Eligibility criteria did not get revised in response to the *Genesis opinion*.
- Patients must see a Barrio provider and provider documents are maintained in Barrio's EMR software.
- Patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system.
- An in-person visit is not required. Telehealth visits alone will qualify the patient as eligible for 340B.
- A patient is considered a patient of the covered entity for 24 months meaning that the visit is within 24 months of the eligible prescription. The Third-Party Administrator (TPA) used by Barrio leverages an 18-month window, but the policy lists 24 months.
- The 340B patient eligibility and provider policies are updated on a 3-year cadence and were just updated and sent to the Board on March 6th.

6

- Providers either have to be an employee or a paid contractor per Barrio policy. However, there are no contractors in practice.
- A patient visit encounter does not have to be related to the patient's prescription that is designated as 340B eligible.
- In a referral relationship, the referring provider must document the name of the provider writing the prescription within the EMR when referring out from Barrio.  However, Barrio processes a small amount of referral captures.  Rick mentioned a new policy that requests an "actual referral" versus other documentation.
- Enrollment in a clinical study is not sufficient to establish patient eligibility. All study patients must be seen by the physician. Rick confirmed a patient enrolled in a study, like a longevity study, would not be 340B-eligible.
- Form 5 of the federal grant application describes all services that are approved under the scope of a grant. This is approved by HRSA. Rick offered to provide AbbVie with a copy of the grant for review.
- Barrio is familiar with third-party vendors that seek to provide additional savings revenue, such as Sharks, Payer Matrix, and Paydhealth, but Barrio stated that they do not work with any alternative funding vendor.
- In response to why 70% of Barrio's 340B contracted pharmacies are located outside of Texas, neither Rick nor Alex knew the answer directly.  However, Barrio did state that patient prescribers designate which specialty pharmacies are in network.  CVS dictates which pharmacies the prescription must be sent to and that is typically sent to FL, NM, and AZ.  It was explained that Barrio has relationships with out of state patients in New Mexico specifically for Rheumatology. There was a lack of Rheumatology providers in this area, and they were contacted and asked to provide care for these patients.

Please confirm your agreement with the details included in the summary above.  If you find errors or inaccuracies in the summary, please contact me immediately.

In addition to the question in AbbVie's letter dated February 6, 2025, AbbVie would like to ask Barrio to provide the following in response to the March 7, 2025 meeting:

1. Please provide the patient eligibility policy sent to the Board on March 6th in addition to any other versions of patient eligibility criteria effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration.
2. Please provide copies of the qualified provider policies sent to the Board on March 6th in addition to any other version effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration
3. Please provide a copy of the HRSA-approved Form 5 detailing the scope of Barrio's federal grant.
4. Please provide copies of Barrio's new referral policy and the prior referral policy.  Please be sure to indicate the effective dates of each iteration
5. Does Barrio engage either directly or indirectly with a third-party vendor called Pharma Strategies?  If yes, please detail the services the vendor provides, such as consulting services, additional savings revenue advising, referral coordination, etc.
6. To clarify, you stated that CVS dictates which pharmacies the prescription must be sent to and that is typically sent to pharmacies in FL, NM, and AZ.  How does the prescription get to the patient if they are not located in the state where the prescription was sent?
7. Do contract pharmacies utilized by Barrio dispense AbbVie's covered outpatient drugs, act as Barrio's agent, meaning that the contract pharmacy would not resell the drug, but distributes the drug on Barrio's behalf?
8. In our meeting, it was stated that patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system.  What does it mean to conduct a telehealth visit at an approved site?  Please describe Barrio's requirements with respect to frequency, cadence and duration of telehealth visits.

I look forward to your written response to our February 6th letter as well as the additional request above.  As agreed,

Barrio will provide information that will be sent on a rolling basis between now and April 3ʳᵈ. Please contact me if you have any questions.

Thanks,


Edward


**EDWARD SCHEIDLER**

Head of 340B Center of Excellence

Mobile: 847-452-8228


<< OLE Object: Picture (Device Independent Bitmap) >>

**April 30, 2025 correspondence between AbbVie and Barrio**

## Van Etten, Elizabeth

| | |
|---|---|
| **From:** | elizabeth.vanetten@abbvie.com |
| **Attachments:** | acc_822_340b_policy_03_06_2025.pdf; Form 5A 03262025.pdf; Form 5B 04162025.pdf; com_003_1_340b_contract_pharmacy_compliance_02-26-2024.pdf; com_003_340b_contract_pharmacy_policy_03-07-2024.pdf; com_002_1_clinic_administered-dispensed_drugs_02-26-2024.pdf; com_002_340b_clinic_administered_drug_policy_03-07-2024.pdf; Provider List.xlsx; Response 4-30-25.pdf |

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Wednesday, April 30, 2025 6:41 PM
**To:** Van Etten, Elizabeth <elizabeth.vanetten@abbvie.com>; Mathai, Nithya A <nithya.mathai@abbvie.com>
**Cc:** Schmidt, Vanessa <vanessa.schmidt@abbvie.com>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** FW: Response to AbbVie Letter Dated February 6, 2025 - Barrio Responses

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228

## abbvie

26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE  847-452-8228
EMAIL  EDWARD.SCHEIDLER@ABBVIE.COM

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Wednesday, April 30, 2025 4:58 PM
**To:** Scheidler, Edward A <edward.scheidler@abbvie.com>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>
**Subject:** [EXTERNAL] FW: Response to AbbVie Letter Dated February 6, 2025

Edward,

Please find attached our response to your inquiry as well as our associated documents. I appreciate your patience in the time we took to respond.

Thank you.

**Rick C. Gonzalez | Vice President and CFO**
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070 | communicaresa.org

i



**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.



April 30, 2025

Edward Scheidler
Head of 340B Center of Excellence
AbbVie
26525 Riverwoods Blvd., ABV1-3SE
Mettawa, IL 60045

**RE:    Response to Your February 6, 2025 Letter re 340B Purchases**

Dear Mr. Scheidler,

Thank you for your letter dated February 6, 2025, regarding CommuniCare Health Centers' (Barrio Comprehensive Family Health Care Center Inc., 340B ID: CH062360) participation in the 340B Drug Pricing Program and its purchases of AbbVie immunology products. We appreciate the opportunity to respond to your good faith inquiry and reaffirm our commitment to full compliance with HRSA's 340B Program requirements.

We have reviewed your inquiry thoroughly and have provided responses below to each of your questions. We maintain and follow an internal 340B Policy and Procedure (Policy Number: ACC 822), which we support through internal audit practices. Our answers reflect those policies and practices.

Our answers below are organized in the same manner as your letter, using the same numbering and lettering.

## 1. Background

a) Please provide or describe the policies and procedures used by Barrio to govern the 340B Program.

> **Response:** CommuniCare maintains comprehensive policies and procedures aligned with HRSA requirements, outlined in our 340B Policy ACC 822, specifically under "General Policy Statement" and 340B Committee Responsibilities – Sections 4.D.2.g, 4.F.

b) Please describe how the revenue generated from the 340B Program is used in alignment with Program intent to serve vulnerable patients (including but not limited to offering the 340B discounts directly to patients within the contract pharmacy setting, prescription co-pay assistance, etc.)

{D1178325.DOCX / 4 }

**Response:** Revenue generated from the 340B Program is used in accordance with Program intent—providing copay assistance, discounting medications, expanding access to services, and investing in care for vulnerable populations (ACC 822, Use of 340B Savings – Section 4.D.2.d). As a federally qualified health center, CommuniCare is required to use program revenues only to further the objectives of the federal health center project. *See* 42 U.S.C. § 254b(e)(5)(D).

## 2. 340B Purchasing Trends

a) Do Barrio's 340B purchase records for each of these three products—Humira, Skyrizi, and Rinvoq—respectfully align with the data provided above? If not, what figures do your records reflect for each product?

> **Response:** CommuniCare's internal third-party administrator (TPA) and wholesaler data confirm that purchases align with utilization records. CommuniCare reviews purchase and utilization records for discrepancies, and investigates and reconciles any that are found. (ACC 822, Inventory Management, Section 4.H, I, and J).

b) Please explain the reasons why there has been a substantial increase in Barrio's 340B sales during the Time Period.

> **Response:** Increased 340B purchases stem from expanded specialty services, new sites, increased capabilities for patients to access services through telemedicine, improved medication adherence, and rising patient volume.

c) Please explain why 340B purchases appear to be multiples higher than the number of prescriptions written by affiliated Barrio providers.

> **Response:** As a federally qualified health center, CommuniCare must provide certain "required primary health services." 42 U.S.C. § 254b(a)(1)(A), (b)(1). Among those, CommuniCare must "refer its patients to providers of medical services when it is unable to provide care itself, including to specialty providers. § 254b(b)(1)(A)(ii). We are also required to provide pharmaceutical services (§ 254b(b)(1)(A)(i)(V)) and patient case management (§ 254b(b)(1)(A)(iii)). HRSA requires CommuniCare to "make every reasonable effort to establish and maintain collaborative relationships, including with other health care providers that provide care with [its] catchment area, local hospitals, and specialty providers in the catchment area of the center, to provide access to services not available through the health center." HRSA Health Center Compliance Manual, Ch. 14: Collaborative Relationships, p. 59.
>
> CommuniCare has done an excellent job developing collaborative care systems with specialty providers in its area, ensuring that patients who otherwise would have difficulty accessing such services can be seen by those specialists. We maintain responsibility for our patients' overall health care, including the care that

they receive from our specialist partners. We follow all HRSA requirements for using 340B drugs to fill outside prescriptions when we maintain the requisite responsibility for those patients. As a result, prescriptions for certain drugs often prescribed by specialists can exceed the prescriptions that CommuniCare writes directly. Our compliant referral capture practices are reflected in our policies. (ACC 822, Referrals, Section 4.K).

## 3. Diversion

a) Please describe Barrio's definition of a 340B-eligible "patient".

**Response:** A 340B-eligible patient must have a documented care relationship and receive care from a CE-employed or contracted provider that is consistent with the scope of CommuniCare's health center project. Further, CommuniCare must maintain records of the individual's health care. (ACC 822, Patient Eligibility, Section 4.E.2). CommuniCare follows HRSA's 1996 patient definition guidance.

b) Please share how Barrio's definition of a 340B-eligible "patient" has changed over time, if applicable, specifically highlighting all changes made over the past three years? Please indicate the relevant time-period for each iteration of the definition.

**Response:** No changes have occurred to our patient eligibility definition in the past three years (ACC 822, Patient Eligibility, Section 4.E.2).

c) In determining 340B "patient" eligibility, does the "patient" definition require that an individual receive a healthcare service at an eligible site registered on 340B OPAIS within a particular time period? If so, what is that time period? Has the time period changed in the past three years? If so, please explain how it has changed.

**Response:** Yes. Each patient must have received a health care service as described above from a registered site within the two years preceding the prescription. (ACC 822, Patient Eligibility, Section 4.E.2). That time period has not changed in the past three years.

d) What level of healthcare service qualifies an individual as a "patient" of Barrio? Is an in-person encounter required? Does a telehealth encounter alone suffice? Does Barrio require that in-person and/or telehealth encounters take place with a certain frequency? Please describe Barrio's requirements with respect to the frequency and cadence of patient visits and type and level of service of encounter.

**Response:** Only patients who have a medical encounter with a CommuniCare-affiliated (employed or under contract) provider can qualify as a "patient." (ACC 822, Visits, Section 4.C.22). Patients must have a medical encounter in the two years preceding the prescription to remain a patient. There is no specific cadence beyond this timeframe, but CommuniCare documents all care services (ACC 822, Patient Eligibility, Section 4.E.2). In accordance with HRSA guidance and health

center requirements, CommuniCare does not distinguish between in-person and telehealth encounters and offers the same services equitably to patients who obtain their care in either manner.

e) Does Barrio require that a healthcare service occur in-person at the eligible site within a certain time period in order to be considered 340B-eligible? If so, what is the time period?

> **Response:** Our timing requirements do not distinguish between in-person and telemedicine medical encounters. (ACC 822, Visits, Section 4.C.22).

f) Does Barrio require that a healthcare service be related to the drug ordered and/or subsequently described in order to be considered 340B-eligible? If so, please describe Barrio's requirement.

> **Response:** As the medical home for most of its patients, CommuniCare typically will discuss each patients' overall healthcare, including care the patient is receiving from specialty providers. CommuniCare does not have a strict requirement that an outside prescription be directly linked to the care provided by CommuniCare. (ACC 822, Referrals, Section 4.K).

g) How long after an individual's last healthcare service encounter will they no longer be considered a 340B-eligible patient of Barrio?

> **Response:** Patients not seen within the last two years are considered ineligible (ACC 822, Patient Eligibility, Section 4.E.2).

h) Are there any exceptions to Barrio's standard 340B patient eligibility qualification process? If yes, please describe each exception category.

> **Response:** We do not have any exceptions to our patient eligibility policy (ACC 822, Patient Eligibility, Section 4.E.2).

i) Please provide an explanation of your process for ensuring that you and your affiliated grantee sites act within the scope of the grant that qualifies your 340B Program eligibility.

> **Response:** We are a federally qualified health center. Our scope of grant is defined by HRSA and reflected in Forms 5A (service types) and 5B (service sites). All healthcare services that we provide are within the scope of our Section 330 project. (ACC 822, Scope of Project, Section 4.C.21)

j) What are the processes and/or criteria used by Barrio to appropriate ensure that all covered outpatient drugs purchased through the 340B Program are administered only to eligible patients thus preventing diversion.

**Response:** We self-audit to ensure that our utilization complies with our patient eligibility policies. Please see our eligibility policy (ACC 822, Patient Eligibility, Section 4.E.2). More detailed responses are above.

k) What supporting information is used by Barrio to ensure the 340B discounted drug is not dispensed, resold, or otherwise transferred to an ineligible patient?

**Response:** We reconcile 340B purchases against 340B eligible dispenses. We can account for every dose we purchase. (ACC 822, Inventory Management, Section 4.H, I, and J)

l) How is compliance with the 340B statute and Program guidelines maintained at Barrio and its contract pharmacies in connection with ensuring that all covered outpatient drugs purchased through the 340B Program are dispensed only to eligible patients thus preventing diversion.

**Response:** We reconcile 340B purchases against 340B eligible dispenses. We self-audit to ensure that our utilization complies with our patient eligibility policies. We can account for every dose we purchase. (ACC 822, Patient Eligibility, Section 4.E.2 and Inventory Management, Section 4.H, I, and J).

m) Have there been any errors in applying Barrio's definition(s) of a 340B-eligible "patient" during the past three years? If so, describe what occurred.

**Response:** No. We review prescriptions and might decide to reverse a prescription initially deemed eligible out of an abundance of caution, because we acquired additional information, or because we cannot obtain replenishment inventory, but we would not consider those errors.

n) What is the process used to identify and resolve errors, including but not limited to, Barrio's definition of material breach and reporting.

**Response:** Any identified error would be corrected, via offer of repayment or (if small and timely), reversal of a prescription. Our material breach policy is reflected in our policy. (ACC 822, Material Breach, Section 4.G.2).

o) Does Barrio capture 340B prescriptions for "referral" providers? If so, is the referral provider required to send follow-up documentation summarizing patient care back to Barrio? When does Barrio consider a patient referred to Barrio by an unaffiliated provider to be a 340B-eligible patient? What percentage of Barrio's 340B-eligible patients are referred by an unaffiliated provider?

**Response:** Yes, in accordance with HRSA guidance CommuniCare will qualify a prescription written by an external provider only if a) CommuniCare has a documented referral out to the provider; and b) CommuniCare has received notes back from the external provider or other shared adequate records reflecting the care

that resulted in a prescription. (ACC 822, Referrals, Section 4.K) CommuniCare establishes a 340B-eligible patient relationship with all patients in the same manner – regardless of whether they walk in off the street or are referred by another provider (including community providers, social services organizations, county health departments, etc.) or member of the community (word of mouth, family and friends, etc.). We are a safety net provider open to the public, and do not track how patients come to us.

p) Does Barrio maintain any policies or procedures specific to 340B prescriptions for "referral" providers? If so, please describe.

> **Response:** Please see the response above and ACC 822, Patient Eligibility, Section 4.E.2.

q) Does Barrio perform ad-hoc, retrospective prescription reviews for 340B eligibility determinations? If so, how often? Please describe the circumstances that would initiate this type of review. How long is the lookback period?

> **Response:** We are continuously self-auditing our 340B eligibility determinations. Prescriptions and patients that qualify under our policies are captured when they are identified. Patients must have had an encounter in the two years preceding the prescription.

r) Has Barrio performed any self-audits and/or external third-party audits of the 340B program? If yes, could you provide the name of the external auditor vendor, the scope periods of the audits including dates, and the results of the audits performed?

> **Response:** Yes, we have an annual independent audit from SpendMend, going back the past 7 years. Each year reviews the prior year. We have not had any adverse findings in those audits.

s) Which third party administrator(s) and split-billing software(s) has Barrio used during the Time Period? Please provide an overview of the controls used by the software to appropriately classify and virtually accumulate 340B eligible transactions.

> **Response:** We use ScriptCare as a TPA for some community pharmacies (HEB, Walmart, Optum, community pharmacies). CVS requires us to use Wellpartner. Walgreens provides its own in-house TPA solution. We provide our patient eligibility rules to our TPA and they interface with our electronic medical record (EMR) system to ensure that all required records exist, that the patient is eligible, and that the provider is eligible.

t) Does Barrio [have] any other third-party vendors to facilitate the 340B Program (e.g., referral, alternative funding, etc.)? If yes, what vendors are used for what purpose? If yes, what softwares do they use?

**Response:** CommuniCare uses drug wholesalers to acquire drugs at 340B pricing. Our TPAs are described above. We use SpendMend for our annual independent audits. We use Cloudmed to assist with referral prescription validation at CVS and Walgreens. Pharma Strategies assists with referral prescription validation at BioPlus. We do not know what software our partners use.

u) Please provide the criteria used by Barrio to determine a 340B-eliible provider, as defined in your 340B policies and procedures. Please describe how the criteria has changed, if at all, during the past three years.

**Response:** Please see ACC 822, Patient Eligibility, Section 4.E.2 and Referrals, Section 4.K. The criteria have not changed in the past three years.

v) Please provide a list that documents the providers at each of Barrio's 340B registered sites who are eligible to submit scripts and the locations from which prescriptions may be initiated.

**Response:** A list of our current eligible providers is attached. Associated site participation is described in ACC 822, Associated Site Participation, Section 4.D.10.

w) Please describe how this list of providers is maintained and reviewed for compliance with Barrio's policies and procedures, as well as with 340B Program requirements.

**Response:** We add and remove providers as they on-board and off-board with CommuniCare. Prescriptions are evaluated based on the provider's status at the time the prescription is written. (ACC 822, 340B Eligible Provider, Section 4.C.5, Healthcare Professional, Section 4.C.16, Patient/Prescriber Eligibility Compliance, Section 4.E.2.).

## 4. Inventory Control

a) Please explain the inventory model (e.g., virtual or physical) utilized by Barrio during the Time Period for 340B purchases of self-administered and/or provider-administered medications. If virtual, are products accumulated at the 9-digit or 11-digit NDC level?

**Response:** CommuniCare uses a virtual inventory model with 11-digit NDC tracking. ACC 822, Patient Eligibility, Section 4.E.2 and Inventory Management, Section 4.H, I, and J.

## 5. Duplicate Discount

a) Considering the increase in 340B volume, please provide an overview of the controls put in place to prevent Medicaid FFS and MCO duplicate discounts.

**Response:** Duplicate discounts are prevented through MEF registration, Medicaid billing protocols, and managed care coordination policies (ACC 822, Duplicate Discount Prevention, Section 3.E.3). CommuniCare follows all HRSA and Texas requirements (including MCO-specific requirements) when dispensing or administering 340B drugs to Medicaid beneficiaries.

## 6. Site Eligibility

a) Please describe the process or procedures Barrio utilizes to verify site eligibility. Specifically, how does Barrio ensure that 340B drug is dispensed at an eligible site?

**Response:** All sites are verified through the HRSA Electronic Handbook as "active" health center sites included in CommuniCare's "scope of project." CommuniCare registers all active sites in the OPA Information System. Our EMR identifies where prescriptions are written and where drugs are administered. (ACC 822, Associated Site Participation, Section 4.D.10).

b) Are 340B-purchased drugs dispensed in locations not currently registered as active on 340B OPAIS?

**Response:** No.

c) Do you operate an entity-owned outpatient pharmacy?

**Response:** Yes.

d) For providers who practice at multiple locations, one of which is an associated site and one of which is not, does Barrio differentiate between prescriptions written at one location versus another in the context of determining 340B eligibility, and if so, how?

**Response**: CommuniCare has a small number of obstretrics/gynecology providers that moonlight at local hospitals. Our EMR system differentiates between CommuniCare prescriptions and prescriptions written outside of CommuniCare by other providers.

## 7. Contract Pharmacies

a) What is the division of responsibility between Barrio and its contract pharmacies in maintaining compliance with 340B Program requirements?

**Response:** CommuniCare maintains oversight of 340B compliance, including patient eligibility, audit procedures, and policy enforcement. Contract pharmacies are responsible to CommuniCare for accurate recordkeeping and reporting, and for operating in compliance under their contracts with CommuniCare, but we are responsible for all aspects of 340B compliance (ACC 822, Contract Pharmacy Universe, Section 4.J).

b) Please explain the nature of your contractual relationship with contract pharmacies, including specifically clarifying whether Barrio's contract pharmacy agreements detail whether the pharmacies are agents of Barrio or independent contractors.

> **Response**: Our contracts comply with HRSA's guidance, including all essential compliance elements. See 75 Fed. Reg. 10,272 (Mar. 5, 2010). Concepts like "agent" and "independent contractor" are questions of law.

c) Please provide the names and locations of the Contract Pharmacies used to dispense AbbVie's drugs. What percentage of total volume of AbbVie's drugs are dispensed by each of the top three pharmacies during the Time Period? Please list the name of each pharmacy, its location, and the respective percentage.

> **Response**: Our contract pharmacy agreements contain strict confidentiality provisions and we cannot discuss the details of those arrangements to a private company without obtaining permission from our partners.

d) Please explain why Barrio utilizes a high number of Contract Pharmacies located outside of the community it serves.

> **Response**: Manufacturers use limited distribution networks and payers require patients to use specific pharmacies. The "out of community" pharmacies include Accredo (specialty/mail), CVS Specialty (specialty/mail), BioPlus Specialty (specialty/mail), Express Scripts (specialty/mail), Optum (specialty/mail), Wal-Mart (some specialty/mail, some local), Walgreens (some specialty/mail, some local). We would prefer to be able to deliver all of our patients' drugs using only local pharmacies, but manufacturers and payers have made that impossible.

## 8. E-Mail Questions

In addition, you posed questions in an e-mail dated March 19:

a)    Please provide the patient eligibility policy sent to the Board on March 6th in addition to any other versions of patient eligibility criteria effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration.

> **Response:** Enclosed.

b)    Please provide copies of the qualified provider policies sent to the Board on March 6th in addition to any other version effective from January 1, 2022 through March 5, 2025. Please be sure to indicate the effective dates of each iteration.

> **Response:** Enclosed.

c)    Please provide a copy of the HRSA-approved Form 5 detailing the scope of Barrio's federal grant.

**Response**: Enclosed.

d)      Please provide copies of Barrio's new referral policy and the prior referral policy. Please be sure to indicate the effective dates of each iteration

**Response:** Enclosed.

e)      Does Barrio engage either directly or indirectly with a third-party vendor called Pharma Strategies? If yes, please detail the services the vendor provides, such as consulting services, additional savings revenue advising, referral coordination, etc.

> **Response:** CommuniCare has worked with Pharma Strategies for referral validation. Due to contractual confidentiality provisions, we cannot disclose the details of those arrangements to a private company without obtaining permission from the counterparty.

f)      To clarify, you stated that CVS dictates which pharmacies the prescription must be sent to and that is typically sent to pharmacies in FL, NM, and AZ. How does the prescription get to the patient if they are not located in the state where the prescription was sent?

> **Response:** Mail, though we do not have any contract pharmacies located in New Mexico.

g)      Do contract pharmacies utilized by Barrio dispense AbbVie's covered outpatient drugs, act as Barrio's agent, meaning that the contract pharmacy would not resell the drug, but distributes the drug on Barrio's behalf?

> **Response:** Our contract pharmacies dispense our 340B drugs on our behalf. The concept of "agency" is a question of law.

h)      In our meeting, it was stated that patient encounters must occur at an approved site on OPAIS, with one of their providers, documented in the EHR system. What does it mean to conduct a telehealth visit at an approved site? Please describe Barrio's requirements with respect to frequency, cadence and duration of telehealth visits.

> **Response:** A telehealth encounter occurs at an approved site if the CommuniCare provider is physically located at the approved site at the time of the encounter. In accordance with HRSA guidance and health center requirements, CommuniCare does not distinguish between in-person and telehealth encounters and offers the same services equitably to patients who obtain their care in either manner.

{D1178325.DOCX / 4}

Thank you again for this opportunity to explain our 340B policies and practices as they relate to AbbVie products. We look forward to continuing to work together to provide care to vulnerable and underserved Texans.


Sincerely,


Ricardo Gonzalez
VP & Chief Financial Officer
CommuniCare Health Centers

| COMMUNICARE HEALTH CENTERS | | |
|---|---|---|
| Policy Name: | 340B Policy | |
| Department or Committee: | Accounting | |
| Policy Number: | ACC 822 | Page: 1 of 16 |
| Department/Committee Chair: | *Rc M* | |
| Print Name: | Ricardo C. Gonzalez | |
| Chief Executive Officer: | *signature* | |
| Print Name: | Paul M. Nguyen | |
| Board Chair: | *signature* | |
| Print Name: | Shawn Lovorn | |
| Effective Date: | 3-6-25 | |

1. **GENERAL POLICY STATEMENT:**

   This policy is intended to ensure that CommuniCare, which participates in the Health Resources and Services Administration (HRSA) 340B Drug Pricing Program (340B Program), remains compliant with all applicable 340B state and federal laws and regulations. As such, this policy should not be interpreted or implemented in a manner that would contradict any such law, furthermore, the purpose is to define a systematic approach to protect the integrity of and adherence to the rules and regulations of the HRSA 340B Program.

2. **AFFECTED DEPARTMENT(S), COMMITTEE(S) OR PERSONNEL:**

   All employees, contract employees, or agents of CommuniCare providing services under the 340B program.

3. **MATERIALS, and/or EQUIPMENT REQUIRED:**

   Electronic medical records and associated modules, 340B electronic audit tools

4. **POLICY:**

   **A. BACKGROUND**

   Section 340B of the Public Health Service Act (1992) requires drug manufacturers participating in the Medicaid Drug Rebate Program to sign a pharmaceutical pricing agreement (PPA) with the Secretary of Health and Human Services. This agreement limits the price that manufacturers may charge certain covered entities for covered outpatient drugs. The 340B Program is administered by the Federal Health Resources and Services Administration in the Department of Health and Human Services (DHHS). Upon registration on the HRSA 340B Database/Office of Pharmacy Affairs Information System (OPAIS) as a participant in the 340B Program, 340B covered entities agree to abide by specific statutory requirements and prohibitions to access 340B drugs.

   **B. SCOPE**

   This policy and procedure document is applicable to CommuniCare's participation in the 340B Program, which provides 340B covered outpatient drugs to its patients.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 2 of 16** |

This document includes guidelines for managing 340B drug purchasing and compliance at CommuniCare.

## C. DEFINITIONS

(1) Actual Acquisition Cost (AAC):
Actual prices are paid to acquire marketed drugs, or drugs sold by specific manufacturers, as defined in the Covered Outpatient Drug Rule.

(2) 340B Drug Pricing Program (340B Program):
The 340B Program resulted from the enactment of Public Law 102-585, Section 602, the Veterans Health Care Act of 1992, which is codified as Section 340B of the Public Health Service Act. The 340B Program is managed by the HRSA Office of Pharmacy Affairs (OPA). Section 340B limits the cost of covered outpatient drugs to certain federal grantees, federally qualified health center look-alikes, and qualified hospitals. Participation in the 340B Program can result in savings on the cost of pharmaceuticals for safety-net providers. The purpose of the 340B Program is to enable these entities to stretch scarce federal resources, reaching more eligible patients, and providing more comprehensive services.

(3) 340B Eligible Location:
A clinic location that is an integral part of a 340B federally qualified health center (FQHC) covered entity, is within scope of the grant and actively listed on the Electronic Handbook (EHB). Both associated sites actively registered on the OPAIS and new locations that are not yet actively registered as associated sites on OPAIS but are within covered entity's scope of grant and actively listed on the EHB, are 340B Eligible Locations where 340B drugs can be purchased and/or used. 340B Eligible Locations shall be registered as associated sites on OPAIS during the OPA registration window which follows the site becoming active on the EHB.

(4) 340B Eligible Patient:
A patient of a covered entity that meets HRSA's definition of a patient. A 340B eligible patient may receive 340B purchased covered outpatient drugs while receiving care as an established patient within the covered entity's scope of services.

(a) HRSA's definition of a patient requires that (1) The covered entity has established a relationship with the individual, such that the covered entity maintains records of the individual's healthcare; and (2) the individual receives healthcare services from a healthcare professional who is either employed by the covered entity or provides healthcare under contractual or other arrangements (e.g., referral for consultation) such that responsibility for the care provided remains with the health center.

(b) An individual is not considered a patient if the only service received from

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 3 of 16** |

the covered entity is the dispensing of drug(s) for self-administration in the home setting.

(5) 340B Eligible Provider:
A healthcare professional who is either employed by the covered entity or provides healthcare under contractual or other arrangement, such as a referral for consultation to a specialty practice.

(6) 340B Price:
The maximum price for a covered outpatient drug that manufacturers can charge covered entities participating in the 340B Program.

(7) 340B Purchased Drugs:
Covered outpatient drugs purchased by a covered entity under the 340B Program.

(8) Associated Site:
An outpatient clinic that is eligible to participate in the 340B Program because it is an integral part of a covered entity (e.g., health center, etc.) that participates in the 340B Program, as evidenced by the fact that it is within the CommuniCare's federally approved scope of project in the Electronic Handbook (EHB) (as maintained through HRSA's Bureau of Primary Health Care (BPHC) website) and actively registered on OPAIS.

(9) Contract Pharmacy:
A pharmacy that is not owned by the covered entity with which the covered entity has a written contract to provide services to the covered entity's patients, including the service of dispensing covered entity-owned 340B drugs.

(10) Contract Pharmacy Arrangement:
An arrangement in which a 340B covered entity signs a contract with a contract pharmacy to provide pharmacy services.

(11) Covered Entity:
A federally qualified health center or other facility enrolled in the 340B Program and eligible to purchase covered outpatient drugs for 340B eligible patients through the program at 340B prices.

(12) Covered Outpatient Drug:
A drug defined in Section 1927 (k) of the Social Security Act (42 USC § 1396r–8(k) that may be purchased, with certain possible exceptions, by covered entities under the 340B Program.

(13) Diversion Prohibition:
The prohibition against the resale or transfer of covered outpatient drugs purchased under the 340B Program to anyone other than a 340B eligible

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: | Page: 4 of 16 |

patient of a covered entity.

(14) Duplicate Discount Prohibition:
The prohibition against subjecting a manufacturer to providing both a drug at a discounted price under the 340B Program and providing a rebate for the drug under Title XIX of the Social Security Act (Medicaid).

(15) Electronic Handbook (EHB):
The grants and program management system used by HRSA and its grant recipients. This database is what HRSA uses to determine eligibility for certain entities.

(16) Healthcare Professional:
Physician, Physician Assistant, Pharmacist, Nurse Practitioner, Registered Nurse, Dental and Behavior Health practitioners and other licensed professionals who are trained to provide healthcare to patients.

(17) Health Resources and Services Administration (HRSA):
An agency of the U.S. Department of Health and Human Services that is the primary Federal Agency for improving access to healthcare services for people who are underinsured, isolated, or medically vulnerable.

(18) In-House (Entity-Owned) Pharmacy:
A pharmacy that is owned by, and a legal part of, the 340B covered entity. Typically, in-house pharmacies are listed as shipping addresses of the entity and the entity owns the license.

(19) Medicaid Exclusion File (MEF):
Covered entities are required to designate in the application process whether 340B drugs will be utilized for Medicaid fee-for-service (FFS) patients. HRSA maintains this information in the MEF, which is available to state Medicaid programs to identify all covered entities that have chosen to bill Medicaid for 340B-purchased drugs (carve-in).

(20) Office of Pharmacy Affairs (OPA):
OPA is located within HRSA's Special Programs Bureau and is the component that administers the 340B Program.

(21) Scope of Project:
An FHQC's scope of project defines the activities that are supported, all or in part, by Section 330 grant funds. Specifically, the scope of project defines the approved service sites, services, providers, service area(s) and target population(s). For each FQHC the Health Center Program approved scope of project must be consistent with statutory and regulatory requirements and the mission of the health center. Project scope evolves over time and expands each time a health center receives increased funding through new grant

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 5 of 16** |

awards. The scope of project is in the EHB (as maintained through HRSA's Bureau of Primary Health Care (BPHC) website).

(22) Visits:

Documented, individual, face-to-face, telemedicine, or virtual contacts between a patient and a licensed or credentialed provider who exercises independent, professional judgment in providing services.

## D. 340B Policy

(1) CommuniCare participates in the 340B Program as a 340B covered entity and does adhere to all applicable 340B state and federal laws and regulations.

(2) CommuniCare is responsible for implementing a policies & procedures to ensure compliance with all applicable state and federal 340B laws and regulations and ensures that the following requirements are met:

   (a) Only 340B Eligible Patients receive 340B purchased drugs to avoid diversion.

   (b) Annual 340B recertification by CommuniCare is kept current.

   (c) Manufacturers are not subject to duplicate discounts for 340B drugs purchased by CommuniCare under the 340B Program.

   (d) CommuniCare uses savings generated from the 340B Program in accordance with 340B Program intent.

   (e) CommuniCare has systems/mechanisms and internal controls in place to reasonably ensure ongoing compliance with all 340B requirements.

   (f) CommuniCare maintains auditable records demonstrating compliance with the 340B Program.

      i.   340B Program related records and transactions are maintained for a period of three years in a readily retrievable and auditable format.

      ii.  The Chief Financial Officer (CFO) will be responsible for ensuring the implementation of the 340B Program compliance and an audit plan.

   (g) CommuniCare utilizes a 340B Committee, for oversight and audit response, which will meet quarterly to assess the covered entity's overall compliance, address and resolve any lapses in compliance, discuss 340B Program related business, and otherwise oversee the covered entity's participation in the 340B Program.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 6 of 16** |

     i.   The 340B Committee will include the Chief Executive Officer (CEO), CFO, Chief Operations Officer (COO), Chief Clinical Officer (CCO), Chief Performance and Innovation Officer (CPIO) and General Counsel.

     ii.  The team will also include, either as regularly scheduled or ad hoc participants, other employees that are identified as being available to respond to a 340B Program audit notification from HRSA/OPA or a drug manufacturer (e.g., compliance staff, legal staff, information technology staff).

(3)  340B Eligibility:
CommuniCare's basis for 340B eligibility is determined by meeting the definition of "federally-qualified health center" in section 1905(I)(2)(B) of the Social Security Act. The term "federally-qualified health center" means-

    (a) CommuniCare is receiving a grant under section 330 of the Public Health Service act.

    (b) CommuniCare is a sub-grantee recipient that is receiving funding from a grant that is under contract with a recipient that meets the requirements to receive the 330 grant.

(4)  CommuniCare uses 340B drugs only in outpatient clinic locations included in scope of grant or FQHC-LA designation. The sites are registered on OPAIS 340B database or the sites are operational in the HRSA Electronic Handbook (EHB) to be registered on OPAIS.

(5)  Clinic sites (including associated sites) and provided services are kept up-to-date, complete, and accurate and included within CommuniCare listed scope of project in the (EHB), the grants and program management system used by HRSA and its grant recipients.  This database is what HRSA uses to determine eligibility for certain entities.

(6)  CommuniCare's scope of project includes service delivery sites, services, providers, service areas, and target population supported under the total budget approved for the center.  CommuniCare scope of project serves as the basis for its eligibility as a 340B Covered Entity.

(7)  Changes to the scope of project are approved and added to the EHB with the CEO (authorizing official) updating OPAIS during recertification or via a change request form.

(8)  CommuniCare's Authorizing Official and Primary Contact are responsible for completing the OPAIS registration during the open registration periods.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 7 of 16** |

(9)   HRSA/OPA database
CommuniCare's eligibility/registration information on the OPAIS 340B database is kept up-to-date, complete, and accurate. Any change, including CommuniCare becoming ineligible for participation in the 340B Drug Purchasing Program, is reported immediately to OPA.

(a) CommuniCare will ensure annually and with each change, that all CommuniCare information on the HRSA/OPA database is accurate and up-to-date, including all contact information for CommuniCare.

(b) CommuniCare immediately notifies OPA of any change to CommuniCare's eligibility or information:

(c) When outside of CommuniCare 's annual recertification period: change(s) will be submitted to OPA by Authorizing Official via OPA's online change/termination request form.

(10)  Associated Site Participation:
CommuniCare ensures that each new associated site (i.e., new service delivery site) is assessed/approved internally before beginning participation in the 340B Program:

(a) CommuniCare validates that the new service delivery site is added to the EHB prior to being enrolled as a new associated site of CommuniCare on OPAIS.

(b) The Authorizing Official enrolls each new associated site approved by CommuniCare on the HRSA/OPA 340B database during the next available online OPA registration period.

(c) CommuniCare deems that a new clinic location can begin 340B eligibility prior to the location's registration being active on OPAIS, as long as all elements of the patient definition are met, and the site is an integral part of the covered entity. The site would then need to be registered on OPAIS at the soonest possible date, during the enrollment window immediately following the site becoming active on the Electronic Handbook.

## E. Recertification:

(1)   CommuniCare completes the 340B Program recertification process annually within the HRSA assigned recertification window.

(a) CommuniCare's Authorizing Official completes the annual recertification prior to the stated deadline by following the directions as outlined in the email sent from HRSA to the Authorizing Official.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: | Page: 8 of 16 |

(b) CommuniCare submits specific recertification questions to HRSA's current available recertification email address.

(2) Patient/Prescriber Eligibility Compliance, an individual is considered a 340B eligible patient of CommuniCare if:

(a) CommuniCare has established a relationship with the individual, which includes maintaining records of the individual's healthcare.

(b) CommuniCare establishes such relationships with 340B eligible patients and provides healthcare services by healthcare professionals such that it remains responsible for their care during patient encounters (e.g., in-person and/or remotely via telemedicine services) at a CommuniCare 340B eligible location(s) and within scope of grant.

(c) The individual receives healthcare services from a healthcare professional that is either employed by CommuniCare or provides healthcare services under contractual or other arrangements (e.g., referral for consultation) such that responsibility for the individual's care remains with CommuniCare.

(d) An active patient is one who has had a visit, as defined by HRSA's Uniform Data Systems (UDS) Manual, documented in the electronic health record (EHR) within the last 2 years.

(e) During emergency situations where CommuniCare staff are required to respond with emergency medication/code cart, the individual is deemed a patient during the management of the emergency. In emergency situations, an abbreviated health record will be adequate for purposes of the 340B Program.

i.   The record must identify the patient, record the medical evaluation, and the treatment provided or prescribed.

ii.  For purposes of 340B Program eligibility, the record may be a single form or note page. It is the recorded information that creates a record which serves as auditable records. For example, under these emergency circumstances the patient may be without insurance cards or identity papers and providers may not have access to documented medical histories. In the case of an emergency, self-reporting of identity, condition, and history are adequate for purposes of 340B recordkeeping requirements.

(3) Duplicate Discount Prevention
CommuniCare has mechanisms in place to prevent duplicate discounts by ensuring manufacturers are not subject to Medicaid rebates for 340B

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 9 of 16** |

purchased drugs.

(a) CommuniCare ensures that its information on OPAIS and the Medicaid Exclusion File (MEF) is consistent with practice.

## F. 340B Committee

The oversight of the 340B program is the responsibility of the 340B Committee. The committee meets quarterly to assess the covered entity's overall compliance, address and resolve any lapses in compliance, discuss 340B Program related business, and otherwise oversee the covered entity's participation in the 340B Program.

(1) The 340B Committee will include the Chief Executive Officer (CEO), CFO, Chief Operations Officer (COO), Chief Clinical Officer (CCO), Chief Performance and Innovation Officer (CPIO) and General Counsel.

(2) The team will also include, either as regularly scheduled or ad hoc participants, other employees that are identified as being available to respond to a 340B Program audit notification from HRSA/OPA or a drug manufacturer (e.g., compliance staff, legal staff, information technology staff).

(3) The 340B committee has the following responsibilities:

(a) Setting the general direction and policy for 340B drug purchasing and compliance.

(b) Establishing a 340B Program audit plan to:

i. Ensure that internal and external self-audits are conducted on a regular basis.

(c) Staying abreast of information on current best practices by sending key personnel to related conferences and/or training programs.

(d) Determining 340B program modifications or expansion.

(e) Communicating with leadership and other staff of potential changes that could impact the program.

(f) Assessing discrepancy response, including the determination of an occurrence in which a material breach has been met.

## G. Discrepancies

(1) CommuniCare acknowledges that it may be liable to an individual

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 10 of 16** |

manufacturer of a covered outpatient drug that is the subject of a discrepancy, and depending upon the circumstances, may be subject to repayment.

(2) Material Breach
Discrepancies that are considered material are self-reported to HRSA as a material breach.

    (a) A material breach is defined as a discrepancy that results in a negative impact of more than 5% of the total pharmacy spend in a fiscal year and does not self-correct within six (6) months.

(3) CommuniCare acknowledges that it may be liable to an individual manufacturer of a covered outpatient drug that is the subject of a discrepancy, and depending upon the circumstances, may be subject to repayment.

## H. Competency

(1) Pharmacy staff as well as staff involved with the 340B Program, are provided with training on the 340B Program and some compliance requirements. Training is completed upon hire and annually.

(2) CommuniCare may utilize 340B purchased drugs in the outpatient location(s) of the clinic.

(3) CommuniCare will remain responsible for all 340B covered outpatient drugs purchased through the clinic purchasing accounts and for adhering to 340B Program requirements.

    (a) Only 340B eligible patients of CommuniCare will receive 340B purchased drugs.

    (b) A 340B eligible patient of CommuniCare is considered qualified for a 340B drug when patient meets all criteria noted in CommuniCare's patient eligibility definition.

(4) CommuniCare ensures strategies are in place to prevent manufacturers from being subject to duplicate discounts for 340B purchased drugs.

    (a) Carve-In Medicaid

        i. CommuniCare has listed all applicable Medicaid billing numbers and/or National Provider Identifiers (NPI) used to bill FFS Medicaid payers for each of its 340B IDs on the MEF.

        ii. CommuniCare dispenses or administers 340B purchased drugs to Medicaid patients AND subsequently bills Medicaid for those 340B

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 11 of 16** |

drugs (carve-in).

    iii. CommuniCare is responsible for the prevention of duplicate discounts for Medicaid Managed Care claims.

    iv. CommuniCare bills each MCO plan according to the plan's 340B remittance requirements as specified in each plan or as outlined by the state.

(5) Purchasing/Inventory Management

  (a) CommuniCare uses 340B inventory for Clinic Administered Drugs (CADS) for a limited formulary.

  (b) CommuniCare administers 340B drugs to patients meeting all criteria noted in in this policy.

  (c) CommuniCare places 340B orders from the wholesaler through regular inventory reviews and shelf inspections.

  (d) CommuniCare checks in 340B inventory by examining the wholesaler invoice against the shipment received, and reports inaccuracies to the wholesaler.

  (e) CommuniCare maintains auditable records of 340B-related transactions.

  (f) 340B inventory is stored in a secure location.

(6) Transfer of Medications

  (a) Transfer of 340B inventory only occurs between locations registered under the covered entity, not between unrelated covered entities (sites that do not share the same 340B ID).

  (b) Transfer of inventory occurs only in rare, emergency situations where patient care may be negatively impacted without the transfer.

  (c) To minimize complexity and compliance risk, CommuniCare follows a process of borrowing/loaning or buying and selling 340B purchased drugs only in emergent situations and not as part of its normal process for inventory replenishment. Replacement would be with an exact 11-digit NDC match.

(7) Management of Wasted Inventory

  (a) Expired 340B inventory is sent to a centralized source to be subsequently

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 12 of 16** |

returned to an authorized reverse distributor or destroyed per company policies and procedures.

(b) All returns to the wholesaler will be made on the same account that the drug was originally purchased.

## I. In-House Pharmacy Universe

Only 340B Eligible Patients of CommuniCare will receive 340B purchased drugs from a CommuniCare in-house pharmacy.

(1) CommuniCare ensures that strategies are in place for the in-house pharmacy to confirm that 340B purchased drugs are not provided to patients who are not 340B Eligible Patients (diversion).

(a) CommuniCare has systems in place to verify qualifying in-house pharmacy prescriptions. Prescriptions are verified as being associated with a CommuniCare provider.

(b) The in-house pharmacy maintains auditable customary business records demonstrating in-house pharmacy 340B Program compliance.

(2) CommuniCare ensures strategies are in place to prevent manufacturers from being subjected to duplicate discounts for 340B purchased drugs.

(3) CommuniCare will remain responsible for all 340B covered outpatient drugs purchased through an in-house pharmacy and for adhering to 340B Program requirements.

(4) CommuniCare entity-owned pharmacy location utilizes a physical 340B inventory system.

(a) Physical Inventory:

i. 340B drugs are dispensed only for 340B eligible patients.

ii. Only prescriptions written by CommuniCare providers are considered eligible.

iii. CommuniCare has established processes in place to ensure 340B program compliance and oversight at the in-house (entity-owned) pharmacy location.

## J. Contract Pharmacy Universe

(1) CommuniCare will establish a contract pharmacy arrangement with each

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 13 of 16** |

contract pharmacy and will provide comprehensive pharmacy services to 340B eligible patients.

(a) Each contract pharmacy arrangement will include a fully executed written agreement between the covered entity and the one or more applicable contract pharmacies that includes HRSA's suggested contract provisions and that specifies the responsibilities and duties of each party, with respect to the provisions of this procedure and the comprehensive pharmacy services provided by the contract pharmacy.

(b) CommuniCare will maintain auditable records demonstrating compliance with the 340B Program.

(c) CommuniCare will register each contract pharmacy arrangement on OPAIS during open registration and attest that each arrangement is active during each recertification period.

(2) Only 340B eligible patients of CommuniCare will receive 340B purchased drugs from a contracted pharmacy with CommuniCare.

(a) CommuniCare ensures that strategies are in place for each contract pharmacy to confirm that 340B purchased drugs are not provided to patients who are not 340B eligible patients (diversion).

 i. CommuniCare has systems in place to verify qualifying contract pharmacy prescriptions.

 ii. The contract pharmacy maintains auditable customary business records demonstrating contract pharmacy 340B program compliance.

 iii. A tracking system is in place that may include prescription files, reports, and records of ordering and receipt.

(3) CommuniCare ensures strategies are in place to prevent manufacturers from being subjected to duplicate discounts for 340B purchased drugs.

(4) CommuniCare carves out Medicaid fee-for-service from contract pharmacy services.

(5) CommuniCare carves out Medicaid managed care from contract pharmacy services *unless a process is identified* with the TPA or pharmacy that will allow for appropriate modifier reporting at the contract pharmacies.

(6) CommuniCare will remain responsible for all 340B covered outpatient drugs purchased through a contract pharmacy and for adhering to the 340B Program requirements.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: | Page: 14 of 16 |

(a) CommuniCare will periodically audit, with the use of the established tracking system, for instances of diversion.

(7) CommuniCare utilizes an 11-digit to 11-digit replenishment model at its contract pharmacy location(s).

(a) 340B purchases are made on the 340B purchasing account based upon utilization and full package accumulations.

(b) CommuniCare utilizes a "ship to, bill to" process.

   i.  CommuniCare will purchase covered 340B drugs at 340B prices from manufacturers/wholesalers but ship the drugs directly to the contract pharmacy.

   ii.  In accordance with its written contract, the contract pharmacy will compare all shipments of 340B-purchased drugs received to the orders for the drugs and inform CommuniCare of any discrepancies.

(8) CommuniCare will remain aware of, and adhere to, anti-kickback provisions of the Medicare and Medicaid Anti-Kickback statute.

## K. Referrals

If an eligible patient's CommuniCare provider refers them to an outside provider, prescription(s) written by the outside provider will be considered eligible for fill with 340B purchased inventory at CommuniCare Pharmacy or eligible for claim capture and replenishment at a CommuniCare contract pharmacy with 340B purchased inventory as long as CommuniCare remains compliant with meeting 340B eligibility requirements related to 340B referral prescription.

(1) Referral

Documentation entered by the patient's CommuniCare provider demonstrating a referral relationship between the patient, CommuniCare, and the specialist.

(a) Referral order entered by the patient's CommuniCare provider to a specialist, specialist group or specialty.

(b) Subsequent referrals made by the specialist.

(c) CommuniCare will determine if a prescription qualifies as 340B eligible by verifying the presence of supporting documentation within CommuniCare's electronic health record system.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page:  15 of 16** |

    i. Referral documented in patients' electronic health record as a referral order. This documentation will include:

    ii. Type of Specialty Care, Specialist, or Specialist Office

    iii. A patient may be seen by a specialist other than the specialist listed in the referral, so long as the specialty is the same. Patients may experience barriers to receiving care at the original referred location, such as limited availability, insurance, or distance, and as such may seek care at a different specialist location.

(d) The presence of a consult note/clinical summary within the patient's chart does not qualify nor disqualify the referral prescription as 340B eligible. The absence of a consult note should not be a barrier for an eligible patient receiving medication. Shared medical records between the eligible provider and referral specialist may serve as consult note/clinical summary. In addition to the referral, the presence of the medication in the patient's medication list, an associated diagnosis on the patient's problem list, and an active patient status are the best practice elements to demonstrate responsibility of care.

## L. Declared State of Emergency

(1) In a state of emergency CommuniCare will continue to ensure it has policies and procedures in place to address the purchasing and dispensing of 340B drugs, and it will continue to keep auditable records.

(2) During the state of emergency, patient care may be relocated as required by applicable patient care standards. Patients will still be considered eligible patients if care is moved outside standard care areas or if telehealth practices are utilized if the patient is registered to CommuniCare.

(3) CommuniCare may utilize volunteer health professionals to provide health care. Documentation will be generated and maintained to make the relationship between the provider and CommuniCare clear and to confirm the CommuniCare's responsibility for providing patient care. This documentation will recognize the emergency nature of the situation, the name and address of the volunteer, and his/her relationship to CommuniCare, and will be kept on file by the CommuniCare.

(a) Health care providers may work at CommuniCare on a short-term or temporary basis. The healthcare professional definition will still be in place and all providers including short-term or temporary providers are considered eligible.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Policy Number:** | **Page: 16 of 16** |

(4) An abbreviated health record may be adequate for purposes of the 340B Program. The record must identify the patient, record the medical evaluation (including any testing, diagnosis, or clinical impressions) and the treatment provided or prescribed. For purposes of 340B Program eligibility, the record may be a single form or note page. It is the recorded information that creates a record. For example, under these emergency circumstances, the patient may be without insurance cards or identity papers and providers may not have access to documented medical histories.

(5) If HRSA opens the window of eligibility where a non-340B covered entity can register as a 340B covered entity or an existing covered entity can register additional child sites and contract pharmacies, CommuniCare will notify HRSA and/or Apexus of any locations or pharmacies that will need to be registered.

## M. REFERENCES

Apexus: https://www.apexus.com/home/

Section 340B of the Public Health Service Act ("PHSA"), Section 602 of the Veterans Health Care Act of 1992

HRSA 340B Drug Pricing Program Notice Release, No. 2013-1: "Statutory Prohibition on Group Purchasing Organization Participation"

Federal Register, Vol. 75, No. 43, Friday, March 5, 2010

Federal Register, Vol. 76, No. 98, Friday, May 20, 2011

Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. 1320a-7b(b)

Health Resources and Services Administration (HRSA) Bureau of Primary Health Care, Office of Pharmacy Affairs (OPA): http://www.hrsa.gov/opa/index.html

https://docs.340bpvp.com/documents/public/resourcecenter/340B-ceiling-price-unavailable-incorrect-340b-ceiling-price-notification-for-hrsa.docx

https://www.hrsa.gov/opa/COVID-19-resources

https://www.hrsa.gov/sites/default/files/opa/programrequirements/policyreleases/prohibitionongpoparticipation020713.pdf

https://bphcdata.net/docs/uds_virtual_visits.pdf

NACHC (See p.47 of "2nd Edition NACHC 340B Manual")

| COMMUNICARE HEALTH CENTERS | | |
|---|---|---|
| **Procedure Name:** | Clinic Administered-Dispensed Drugs | |
| **Department/Committee:** | Compliance | |
| **Procedure Number:** | COM 002.1 | **Page: 1 of 10** |
| **Department/Committee Chair:** | | |
| **Print Name:** | Michael Hernandez | |
| **Chief Executive Officer:** | | |
| **Print Name:** | Paul M. Nguyen | |
| **Effective Date:** | 2-26-24 | |

1. **GENERAL PROCEDURE STATEMENT:**

   This procedure is intended to ensure that CommuniCare, which participates in the HRSA 340B Drug Pricing Program, remains compliant with all applicable 340B state and federal laws and regulations. As such, this procedure should not be interpreted or implemented in a manner that would contradict any such law. Furthermore, the purpose is to define a systematic approach to protect the integrity of and adherence to the rules and regulations of the Health Resources and Services Administration (HRSA) 340B Drug Pricing Program (340B Program).

   This procedure is applicable to CommuniCare's participation in the 340B drug pricing program, which provides 340B covered outpatient drugs to its outpatients. This document includes guidelines for managing 340B drug purchasing and compliance at CommuniCare.

2. **AFFECTED DEPARTMENT(S), COMMITTEE(S) OR PERSONNEL:**

   Chief Executive Officer, Accounting, Clinical and Compliance Officers, 340B Committee

3. **MATERIALS, and/or EQUIPMENT REQUIRED:**

   Office of Pharmacy Affairs (OPA) database and website

4. **PROCEDURE:**

   A. 340B Eligibility and Registration: Covered entities need to ensure that the following 340B eligibility determination filters are implemented.



| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  2 of  10 |

**(1)** Eligibility/Registration Information and Enrollment:

(a) Eligibility/Registration Information: CommuniCare ensures its eligibility/registration information is complete, accurate, and up-to-date:

(b) EHB: CommuniCare clinic sites (including associated sites) and provided services are kept up-to-date, complete, and accurate and included within CommuniCare's listed scope of project in the EHB system.

    **(i)** CommuniCare scope of project includes service delivery sites, services, providers, service areas, and target population supported under total budget approved for CommuniCare. CommuniCare's scope of project serves as the basis for its eligibility as a 340B Covered Entity.

    **(ii)** Changes to CommuniCare's scope of project are approved and added to the EHB by CommuniCare's Authorizing Official prior to being updated on the HRSA/OPA 340B database during recertification or via a change request form.

(c) HRSA/OPA database: CommuniCare's eligibility/registration information on the HRSA/OPA 340B database is kept up-to-date, complete, and accurate. Any change, including CommuniCare becoming ineligible for participation in the 340B Drug Purchasing Program, is reported immediately to OPA.

    **(i)** CommuniCare immediately notifies OPA of any change to CommuniCare's eligibility or information:

- When outside of CommuniCare's annual recertification period: change(s) will be submitted to OPA by Authorizing Official via OPA's online change/termination request form.

- During CommuniCare's annual recertification period: change(s) will be included in CommuniCare's annual recertification.

**(2)** New Associated Site Participation:

(a) New associated site approval: CommuniCare ensures that each new associated site (i.e. new service delivery site) is assessed/approved internally before participating in the 340B Drug Pricing Program:

(b) CommuniCare's 340B Committee evaluates a new service delivery site of CommuniCare to determine if the location is eligible for participation in the 340B Program as an associated site of CommuniCare.

(c) The 340B Committee validates that the new service delivery site is added to the EHB prior to being enrolled as a new associated site of CommuniCare on the HRSA/OPA 340B database.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  3 of  10 |

(d) At the 340B Committee's <u>recommendation</u>, the Authorizing Official informs the 340B Committee and CommuniCare's accountable 340B staff member(s), of his/her approval of the new associated site's participation in the 340B Drug Pricing Program.

(e) <u>New associated site enrollment/registration</u>:

　　(i) CommuniCare ensures that each new associated site approved by CommuniCare is enrolled/registered as associated site of CommuniCare and listed on the HRSA/OPA 340B database before participating.

　　(ii) The Authorizing Official enrolls each new associated site approved by CommuniCare on the HRSA/OPA 340B database during the next available online OPA registration period.

(f) <u>New associated site participation:</u>

　　(i) The 340B Committee validates that each new associated site approved by CommuniCare is enrolled and listed on the HRSA/OPA 340B database before participating in the 340B Drug Purchasing Program.

　　(ii) The 340B Committee validates that each new associated site does not begin participation prior to the next available start date following registration/enrollment.

　　(iii) For example, if a new associated site is enrolled/registered on January 1-15, the next available start date is April 1.

**(3)** Annual Recertification:

(a) Covered entities must annually recertify their eligibility to participate in the 340B program and continue purchasing covered outpatient drugs at 340B prices.

(b) Advance notification of the next upcoming annual recertification window will be provided to the CommuniCare's primary contact and authorizing official via email by HRSA/OPA.

(c) Once the CommuniCare's recertification period begins, the authorizing official only will receive a username and password to recertify. The authorizing official will login to the HRSA/OPA website using the username and password to recertify within the recertification time period allotted.

(d) CommuniCare will ensure annually and with each change CommuniCare's primary contact information or authorizing official information, that all

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  4 of  10 |

CommuniCare's information on the HRSA/OPA database is accurate and up-to date, including all contact information for CommuniCare.

(4) Associated Site Listing with HRSA/OPA

CommuniCare will confirm on a regular basis that each of its associated sites that purchase or use 340B purchased covered outpatient drugs are listed as an associated site on the HRSA/OPA database.  Each listed associated site must be within the CommuniCare's federally approved scope of project.

**B.** Patient/Prescriber Eligibility Compliance:

(1) Eligible drug orders or prescriptions are filled with 340B-purchased inventory for 340B eligible patients.

(2) An individual is considered a 340B Eligible Patient of CommuniCare if:

(a) CommuniCare has established a relationship with the individual, which includes maintaining records of the individual's healthcare.

(b) The individual receives healthcare services from a healthcare professional that is either employed by CommuniCare or provides healthcare are under contractual or other arrangements (e.g., referral for consultation) such that responsibility for the individual's care remains with CommuniCare.

(c) The individual receives a health care service or range of services from CommuniCare which is consistent with the service or range of services for which grant funding or Federally-Qualified Health Center look-alike status has been provided to CommuniCare.

(i) Note: Individuals registered in a State-operated or funded AIDS Drug Assistance Program (ADAP) that receive Federal Ryan White funding ARE considered patients of the participant ADAP if so registered as eligible by the State program.

(3) An individual is not considered a 340B Eligible Patient of CommuniCare if the sole healthcare service rendered is the dispensing or prescribing of a drug for self-administration.

(4) A 340B Eligible Patient of CommuniCare is considered qualified for a 340B drug in the following cases:
(a) The patient is a 340B Eligible Patient treated at a 340B Eligible Location and has a legal drug order written by a prescriber employed by, under contract or referral relationship (e.g., physician specialty practice) with CommuniCare.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  5 of  10 |

(b) The patient is a patient of CommuniCare at the date/time the drug is administered.

(c) An active patient is one who has had a visit, as defined by HRSA's UDS Manual, documented in the EMR within the last 2 years.

(i) UDS currently defines a visit as, "[an] interaction [that is] documented, face-to-face contact, between a patient and a licensed or credentialed provider who exercises independent, professional judgment in the provision of services to the patient."

(ii) NACHC states that most FQHCs consider 2 years an appropriate time frame for active patient status because it is consistent with UDS requirements that patients be seen within the previous two-years to be counted as unduplicated patients the FQHC is responsible for.  (See p.47 of "2nd Edition NACHC 340B Manual")

C. Compliance with Duplicate Discount Prohibition:

(1) CommuniCare has mechanisms in place to prevent duplicate discounts by ensuring manufacturers are not subjected to Medicaid rebates for 340B purchased drugs.

(2) CommuniCare ensures that its information on OPAIS and the HRSA Medicaid Exclusion File (MEF) is consistent with actual practice. CommuniCare informs OPA immediately of any changes to its information on OPAIS/MEF.

(3) Carve In: CommuniCare has placed itself on the Medicaid Exclusion File by listing all applicable Medicaid billing numbers and/or National Provider Identifiers (NPI) for the parent and each registered off-site location and outpatient pharmacies. CommuniCare administered drugs are purchased under 340B pricing and billed to Medicaid payer(s) according to applicable billing requirements.

(a) CommuniCare dispenses or administers 340B purchased drugs to Medicaid patients AND subsequently bills Medicaid for those 340B drugs (carve-in).

(b) CommuniCare has answered "yes" to the question, "Will the covered entity dispense 340B purchased drugs to Medicaid patients?" on the HRSA 340B Database.

(c) CommuniCare adheres to applicable Medicaid payer billing requirements.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| **Procedure Number:  COM 002.1** | **Page:  6 of  10** |

D. Procurement:

(1) 340B drug purchase orders for CommuniCare locations are generated from individual clinic locations and approved utilizing standard purchasing procedures of CommuniCare.

(2) Inventories:  CommuniCare maintains inventories of 340B drugs in secured clinic locations.  Inventories are labeled and tracked through the use of logs that indicate counts on hand, dispensed amounts with corresponding patient information.  Clinic inventories are restocked based on predetermined par levels.

(3) Pharmacy Wholesaler Purchases:

   (a) Separate Pharmacy 340B/PHS Wholesaler accounts are maintained for the purchase of 340B drugs.

   (b) Each account is populated with the 340B contract load and is designated as a 340B account in the account name.

   (c) The contract load is performed each quarter with new purchase prices provided by HRSA/OPA through the Prime Vendor.

(4) 340B covered outpatient drug purchases from the pharmacy wholesaler are purchased on a 340B specific account.

(5) Direct Purchases:

   (a) Covered outpatient drugs not available from the pharmacy wholesaler may be purchased from the manufacturer using a direct account.

   (b) Separate 340B accounts can be maintained with each manufacturer to purchase 340B drugs.

   (c) A non-340B or GPO account and 340B account (when possible) is established with each source.

   (d) Credits of purchased drugs and subsequent rebills are processed in the event a 340B account is utilized for a drug purchase that should have been purchased on a non-340B purchasing account.

   (e) Credits of purchased goods and subsequent rebills are processed in the event a non-340B purchasing account is utilized to purchase drugs that are eligible for 340B purchase.  CommuniCare may petition the manufacturer, via the distributor, to credit the non-340B purchasing

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  7 of  10 |

account and rebill the 340B account.  The manufacturer may or may not accept CommuniCare's request.

**E.** Borrow/Lend:

(1) To minimize complexity and compliance risk, CommuniCare follows a process of borrowing/loaning or buying/selling 340B purchased drugs only in emergent situations and not as part of its normal process for inventory replenishment.

(2) CommuniCare staff may follow the Apexus Borrow and Loan/Buy decision grid below when borrowing/loaning or buying/selling in emergent situations:

**Decision Table for Covered Entities (not subject to GPO Prohibition)**

**Entity Sending Product**

| Entity Requesting Product | | Neutral Inventory Location (GPO based) | Separate 340B Inventory | Non-Covered Entity |
|---|---|---|---|---|
| | **Neutral Inventory Location (GPO based)** | *Purchaser's buyer*<br>• Sell at GPO price (preferred)<br>• Fill out the borrow/loan log.<br>• Verify that the NDC received is tied in the 340B split-billing catalog with the correct CDM so that utilization will show.<br>• Enter purchased product into split-billing software.<br>• Add the purchased item into the monthly borrow upload spreadsheet to show a non-GPO/WAC purchase.<br>*Seller's buyer*<br>• Add product to split-billing software using GPO pricing. | Borrowing facility must replace item<br>*Borrower's buyer*<br>• Fill out the borrow/loan log.<br>• Pharmacy site indicates that replacement is necessary.<br>• Order replacement product.<br>• Return replacement product to lender.<br>• Other than borrow/loan log, nothing needs to go into split-billing software for a borrow and return.<br>*Lender's buyer*<br>• Enter date replacement product is received. | |
| | **Separate 340B Inventory** | • Sell at GPO price (preferable)<br>• See instructions above | • Borrowing facility must replace item<br>• See instructions above<br><br>OR<br><br>• Sell at 340B price (only if within same covered entity)<br>• See instructions | • Borrowing facility must replace item<br>• See instructions above |
| | **Non-Covered Entity** | • Sell at GPO price<br>• See instructions above | • Borrowing facility must replace item<br>• See instructions above | • Sell at GPO price |

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 002.1 | Page:  8 of  10 |

F.  Returns/Waste:

    (1) Patient-Specific Waste: Waste associated with a dosage form of a drug provided (e.g., dispensed, administered) to a patient may be documented and purchased based on the patient's eligibility status.

    (2) Inventory Waste: Drug inventory which is wasted/disposed may be documented and purchased based on applicable pricing and purchase history.

    (3) 340B Oversight:

        (a) The oversight of the 340B Drug Pricing Program is the responsibility of the 340B Committee, which is comprised of the following individuals:

        (b) Chief Executive Officer

        (c) Chief Financial Officer

        (d) Chief Clinical Officer

        (e) Chief Operating Officer

        (f)  Chief Information Officer

        (g) Chief Performance Officer

        (h) General Counsel/Compliance Officer

        (i)  340B Consultant

    (4)  The 340B Committee has the following responsibilities:

        (a) Setting the general direction and policy for 340B drug purchasing and compliance.

        (b) Establishing an audit plan for audits conducted by the 340 Committee and Compliance Department.

    (5) The audit plan is conducted monthly as defined by OPA guidelines and according to CommuniCare audit guidelines maintained by the accounting department.

        (a) Meets on a quarterly basis to review reports, trends and audit results.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number: COM 002.1 | Page: 9 of 10 |

(b) Maintaining information on current best practices by sending key CommuniCare personnel to related conferences and/or training programs (e.g., webinars, teleconferences).

(c) Providing compliance and oversight direction.

(d) Providing appropriate resources.

(e) Determining needed modifications or expansion.

(f) Correcting and/or reporting deficiencies within expected timeframes.

(g) Communication to CommuniCare leadership of potential changes/trends to the 340B program that will impact the institution.

(6) Discrepancies are immediately corrected and reported to the 340B Committee. Any significant discrepancies are documented, corrected, and discussed by the 340B Committee.

(7) CommuniCare acknowledges that if there is a discrepancy breach, CommuniCare may be liable to the individual manufacturer of the covered outpatient drug that is the subject of the violation, and depending upon the circumstances, may be subject to the repayment of the difference in the price between 340B acquisition and non-340B acquisition and/or removal from the list of eligible 340B entities. Discrepancies that are considered material are self-reported to HRSA. A breach that results in more than 5% of the total pharmacy spend per 340B Universe in a fiscal year and does not self-correct within six (6) months is considered to be material.

(a) 340B Program related records and transactions are maintained for a period of 3 years in a readily retrievable and auditable format.

(8) Competency:

Staff with 340B procurement responsibilities are provided comprehensive training on the 340B Program and the compliance requirements of this program. This training is completed by procurement staff initially upon hire and competency is also verified annually. Staff complete basic training on the 340B and Prime Vendor Programs website and at least one person within the 340B Leadership Group attends 340B University or other similar level 340B training program every two years.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number: COM 002.1 | Page: 10 of 10 |

**G. References**

(1)    Apexus: https://www.apexus.com/home/

(2)    Section 340B of the Public Health Service Act ("PHSA"), Section 602 of the Veterans Health Care Act of 1992

(3)    Health Resources and Services Administration (HRSA) Bureau of Primary Health    Care,    Office    of    Pharmacy    Affairs    (OPA): *http://www.hrsa.gov/opa/index.html*

| COMMUNICARE HEALTH CENTERS | | |
|---|---|---|
| Policy Name: | 340B Clinic Administered Drug Policy | |
| Department/Committee: | Compliance | |
| Policy Number: | COM 002 | Page: Page 1 of 6 |
| Department/Committee Chair: | *[signature]* | |
| Print Name: | Michael Hernandez | |
| Chief Executive Officer: | *[signature]* | |
| Print Name: | Paul M. Nguyen | |
| Board Chair: | *[signature]* | |
| Print Name: | Shawn Lovorn, JD | |
| Effective Date: | 3-7-24 | |

## 1. GENERAL POLICY STATEMENT:

This policy is intended to ensure that CommuniCare, which participates in the HRSA 340B Drug Pricing Program, remains compliant with all applicable 340B state and federal laws and regulations. As such, this policy and procedure should not be interpreted or implemented in a manner that would contradict any such law. Furthermore, the purpose is to define a systematic approach to protect the integrity of and adherence to the rules and regulations of the Health Resources and Services Administration (HRSA) 340B Drug Pricing Program (340B Program).

## 2. AFFECTED DEPARTMENT(S), COMMITTEE(S) OR PERSONNEL:

All employees, contract employees, or agents of CommuniCare providing services under the 340B program.

## 3. MATERIALS, and/or EQUIPMENT REQUIRED:

eCW EMR, eCW medication module, 340B electronic audit tool

## 4. BACKGROUND

Section 340B of the Public Health Service Act (1992) requires drug manufacturers participating in the Medicaid Drug Rebate Program to sign a pharmaceutical pricing agreement (PPA) with the Secretary of Health and Human Services. This agreement limits the price that manufacturers may charge certain covered entities for covered outpatient drugs. The 340B Program is administered by the federal Health Resources and Services Administration (HRSA) in the Department of Health and Human Services (DHHS). Upon registration on the Office of Pharmacy Affairs Information System (OPAIS) 340B Database as a participant in the 340B Program, the entity: Agrees to abide by specific statutory requirements and prohibitions and may access 340B drugs.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number:  COM 002 | Page: Page 2 of 6 |

## 5. SCOPE

This policy and procedure is applicable to CommuniCare's participation in the 340B drug pricing program, which provides 340B covered outpatient drugs to its outpatients.  This document includes guidelines for managing 340B drug purchasing and compliance at CommuniCare.

## 6. DEFINITIONS

A.  340B Drug Pricing Program: The 340B Drug Pricing Program resulted from enactment of Public Law 102-585, the Veterans Health Care Act of 1992, which is codified as Section 340B of the Public Health Service Act.  The 340B Drug Pricing Program is managed by the Health Resources and Services Administration (HRSA) Office of Pharmacy Affairs (OPA).  Section 340B limits the cost of covered outpatient drugs to certain federal grantees, federally-qualified health center look-alikes, and qualified hospitals.  Participation in the Program results in significant savings on the cost of pharmaceuticals for safety-net providers.  The purpose of the 340B Program is to enable these entities to stretch scarce federal resources, reaching more eligible patients, and providing more comprehensive services.

B.  340B Eligible Patient: A patient of a covered entity that meets HRSA's definition of a patient.  A 340B eligible patient may receive 340B purchased covered outpatient drugs while receiving care as an established patient within the covered entity's scope of project.

C.  HRSA's definition of a patient requires that (1) The covered entity has established a relationship with the individual, such that the covered entity maintains records of the individual's healthcare; and (2) the individual receives healthcare services from a healthcare professional who is either employed by the covered entity or provides healthcare under contractual or other arrangements (e.g., referral for consultation) such that responsibility for the care provided remains with the Health Center.

D.  340B Price: The maximum price for a covered outpatient drug that manufacturers can charge covered entities participating in the 340B drug pricing program.

E.  340B Purchased Drugs: Covered outpatient drugs purchased by a covered entity under the 340B Drug Pricing Program.

F.  Affiliated Sites (Formerly Child Site): An outpatient clinic that is eligible to participate in the 340B program because it is an integral part of a covered entity (e.g., health center, etc.) that participates in the 340B program, as evidenced by the fact that it is within the covered entity's federally approved scope of project in

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number:  COM 002 | Page: Page 3 of 6 |

the HRSA Electronic Handbook (EHB) (as maintained through HRSA's Bureau of Primary Health Care (BPHC) website).

G. Contract Pharmacy: A pharmacy other than the covered entity's owned pharmacy with which the covered entity has contracted to provide comprehensive pharmacy services to 340B eligible patients utilizing covered outpatient drugs purchased under the 340B Drug Pricing Program.

H. Contract Pharmacy Arrangement: An agreement with a pharmacy other than the covered entity's owned pharmacy with which the covered entity has contracted to provide comprehensive pharmacy services to 340B eligible patients utilizing 340B purchased covered outpatient drugs.

I. Covered Entity:  A federally qualified health center or other facility enrolled in the 340B Drug Pricing Program and eligible to purchase covered outpatient drugs for 340B eligible patients through the program at 340B prices.

J. Covered Outpatient Drug: A drug defined in Section 1927(k) of the Social Security Act (42 USC § 1396r–8(k) that may be purchased, with certain possible exceptions, by covered entities under the 340B Drug Pricing Program.

K.  Diversion Prohibition:  The prohibition against the resale or transfer of covered outpatient drugs purchased under the 340B Pricing Program to anyone other than a 340B eligible patient of a Covered Entity.

L. Duplicate Discount Prohibition:   The prohibition against subjecting a manufacturer to providing both a drug at a discounted price under the 340B Pricing Program and also to providing a rebate for the drug under Title XIX of the Social Security Act (Medicaid).

M. Federally Qualified Health Center (FQHC): A private, not for profit or public entity that is a "Health Center" under Section 330 of the Public Health Services Act (PHS) (codified in 42 U.S. Code § 254b) and that meets the requirements for receiving grant under Section 330.  FQHCs are "safety net" providers such as community health centers, public housing centers, outpatient health programs funded by the Indian Health Service, or programs serving migrants and the homeless. FQHCs qualify for enhanced reimbursement from Medicare and Medicaid, as well as other benefits. FQHCs must be an entity that:

(1) is receiving a grant under PHS Section 330 (i.e., " Section 330 grant");

(2) is receiving funding from a Section 330 grant under a contract with a recipient of such a grant and that meets the requirements to receive such a grant;

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number:  COM 002 | Page: Page 4 of 6 |

(3) is not receiving Section 330 grant but that meets the requirements to receive such a grant as an FQHC Look-alike (FQHC-LA);

(4) was treated by the Secretary of the Department of HHS for purposes of Medicare Part B as a comprehensive Federally funded health center as of January 1, 1990; or

(5) is operating as an outpatient health program or facility of a tribe or tribal organization under the Indian Self-Determination Act or as an urban Indian organization receiving funds under Title V of the Indian Health Care Improvement Act as of October 1, 1991.

N. Federally Qualified Health Center (FQHC) Covered Entity: An FQHC that is enrolled in the 340B Drug Pricing Program as a Covered Entity.

O. Health Center: Generally, a community-based and patient-directed organization that serves populations with limited access to health care.  More specifically, Section 330 of the Public Health Services Act (PHS) defines a health center as an entity that serves a population that is a medically underserved area, or a special medically underserved population comprised of migratory and seasonal agricultural workers, the homeless, and residents of public housing by providing either directly through the staff and supporting resources of the center or through contracts or cooperative agreements required primary health services (as defined in section 330(b)(1)) and, as may be appropriate for particular centers, additional health services (as defined in section 330(b)(2) necessary for the adequate support of the primary health services …; for all residents of the area service by the center."

P. Health Resources Services Administration (HRSA): An agency of the U.S. Department of Health and Human Services that is the primary Federal agency for improving access to healthcare services for people who are uninsured, isolated or medically vulnerable.

Q. Medicaid Exclusion File: Covered entities are required to designate in the application process whether 340B drugs will be utilized for Medicaid patients. HRSA maintains this information in the Medicaid Exclusion File which is available to state Medicaid programs.  The purpose of this file is to exclude 340B drugs from Medicaid rebate requests.  This prevents drug manufacturers from providing duplicate discounts – upfront as the 340B drug price and the later as the Medicaid rebate.

R. Office of Pharmacy Affairs (OPA): The component within HRSA that administers the 340B Drug Pricing Program.  The Office of Pharmacy Affairs is located within HRSA's Special Programs Bureau.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number:  COM 002 | Page: Page 5 of 6 |

S. <u>Scope of Project</u>: A FHQC's scope of project defines the activities that are supported, all or in part, by Section 330 grant funds. Specifically, the scope of project defines the approved service sites, services, providers, service area(s) and target population(s).  For each FQHC the Health Center Program approved scope of project must be consistent with statutory and regulatory requirements and the mission of the health center. Project scope evolves over time and expands each time a health center receives increased funding through new grant awards.  The scope of project is in the FQHC's Electronic Handbook (EHB) (as maintained through HRSA's Bureau of Primary Health Care (BPHC) website).

## 7.  POLICY

A. CommuniCare, which is participating in the 340B Drug Pricing Program as a covered entity, will adhere to all applicable 340B state and federal laws and regulations.

B. CommuniCare will be responsible for implementing a procedure to ensure compliance with all applicable state and federal 340B laws and regulations and to ensure that at least the following requirements are met:

(1) Annual 340B recertification by CommuniCare is kept current.

(2) Only 340B Eligible Patients receive 340B purchased drugs to avoid diversion.

(3) Manufacturers are not subjected to duplicate discounts for 340B drugs purchased by CommuniCare under the 340B Drug Pricing Program.

(4) CommuniCare uses any savings generated from 340B in accordance with 340B Program intent and scope of project.

Section 330 statute requires health centers to reinvest any 340B savings into activities that promote the purpose of their HRSA/BPHC Scope of Project and advance their goal of providing care to medically underserved populations.

(5) CommuniCare has systems/mechanisms and internal controls in place to reasonably ensure ongoing compliance with all 340B requirements.

(6) CommuniCare maintains auditable records demonstrating compliance with the 340B Program.

(a) These records are reviewed monthly as part of its 340B oversight and compliance program.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number:  COM 002 | Page: Page 6 of 6 |

(b) The Chief Compliance Officer and Chief Financial Officer will be responsible for ensuring the implementation of the 340B Compliance and Audit Plan. This will include periodic auditing based on the corresponding 340B Clinic Administered Drug Auditing Guide.

(c) 340B Program related records and transactions are maintained for a minimum period of 3 years in a readily retrievable and auditable format.

C. CommuniCare will appoint an accountable 340B staff member that will serve as the day-to-day point person and coordinator for all the activities related its participation in the 340B Pricing Program.

(1) CommuniCare will implement a 340B Committee, that will meet on regular basis (at least quarterly) to assess the covered entity's overall compliance, address and resolve any lapses in compliance, and otherwise oversee the covered entity's participation in the 340B program.

(2) The 340B Committee will include those staff listed in Procedure 002.1.

(3) The team will also include, either as regularly scheduled participants or ad hoc participants, other employees that are identified as being available to respond to a 340B audit from HRSA/OPA or a drug manufacturer (e.g., compliance staff, legal staff, information technology staff).

## 8.  REFERENCES

A. Apexus: https://www.apexus.com/home/

B. Section 340B of the Public Health Service Act ("PHSA"), Section 602 of the Veterans Health Care Act of 1992

C. Federal Register, Vol. 75, No. 43, Friday, March 5, 2010

D. Federal Register, Vol. 76, No. 98, Friday, May 20, 2011

E. Health Resources and Services Administration (HRSA) Bureau of Primary Health Care, Office of Pharmacy Affairs (OPA): http://www.hrsa.gov/opa/index.html

| COMMUNICARE HEALTH CENTERS | | |
|---|---|---|
| Procedure Name: | 340B Contract Pharmacy Compliance | |
| Department/Committee: | Compliance | |
| Procedure Number: | COM 003.1 | Page: 1 of 3 |
| Department/Committee Chair: | | |
| Print Name: | Michael Hernandez | |
| Chief Executive Officer: | | |
| Print Name: | Paul M. Nguyen | |
| Effective Date: | 2·26·24 | |

1. **GENERAL PROCEDURE STATEMENT:**
   This procedure is intended to ensure that CommuniCare, which participates in the HRSA 340B Drug Pricing Program, remains compliant with all applicable 340B state and federal laws and regulations. As such, this procedure should not be interpreted or implemented in a manner that would contradict any such law. Furthermore, the purpose is to define a systematic approach to protect the integrity of and adherence to the rules and regulations of the Health Resources and Services Administration (HRSA) 340B Drug Pricing Program (340B Program). This procedure is applicable to 340B Contract Pharmacy activities at CommuniCare.

2. **AFFECTED DEPARTMENT(S), COMMITTEE(S) OR PERSONNEL:**
   Chief Executive Officer, Accounting, Clinical and Compliance Officers, 340B Committee

3. **MATERIALS, and/or EQUIPMENT REQUIRED:**
   Office of Pharmacy Affairs (OPA) database and website

4. **PROCEDURE:**

   A. As a covered entity participating in the 340B Drug Pricing Program, CommuniCare will adhere to all applicable federal, state, and local laws and requirements.

   B. Contract Pharmacy Arrangement: CommuniCare will establish a contract pharmacy arrangement with each contract pharmacy that will provide comprehensive pharmacy services to 340B eligible patients of CommuniCare.

      (1) Each contract pharmacy arrangement will include a current written contract that includes HRSA's suggested contract provisions and that specifies the responsibilities/duties of each party with respect to the provisions of this procedure and the comprehensive pharmacy services provided by the contract pharmacy.

   C. Drug shipping and billing: a "ship to, bill to" process will be used for providing 340B purchased drugs to each contract pharmacy. Under this process, CommuniCare will purchase covered outpatient drugs at 340B prices from manufacturers/wholesalers. Each manufacturer/wholesaler will bill

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 003.1 | Page:  2 of  3 |

CommuniCare's administrative accounting location for the 340B purchased but ship the drugs directly to the contract pharmacy.

    (1) In accordance with its written contract with the covered entity, the contract pharmacy will compare all shipments of 340B purchased drugs received by the contract pharmacy to orders for the drugs and inform CommuniCare of any discrepancies.

**D.** Diversion prohibition: CommuniCare will collaborate with each contract pharmacy to ensure that 340B purchased drugs are not provided to patients who are not 340B Eligible Patients (diversion).  This collaboration will include:

    (1) CommuniCare and the contract pharmacy establishing a verification system for verifying patients of the contract pharmacy as 340B Eligible Patients.

    (2) The contract pharmacy regularly providing CommuniCare with its readily retrievable customary business records for confirming that a tracking system is in place and for auditing for diversion, as set forth below.  Such records may include prescription files, velocity reports, and records of ordering and receipt that will be maintained in accordance with federal and state requirements.

    (3) CommuniCare and the contract pharmacy establishing a tracking system and utilizing the tracking system and/or contract pharmacy's customary business records to periodically audit for diversion, in accordance with the Contract Pharmacy 340B Audit Guide, by comparing prescribing records of the covered entity with dispensing records of the contract pharmacy to identify any irregularities.

**E.** Duplicate discount prohibition: CommuniCare will collaborate with each contract pharmacy to ensure that manufacturers are not subjected to duplicate discounts for 340B purchased drugs.  This collaboration will include:

    (1) Establishing a system for ensuring that 340B purchased drugs are not dispensed to Medicaid patients or if 340B purchased drugs are dispensed proper procedures are in place to identify such drugs with appropriate modifiers when billed to Medicaid Managed Care to ensure proper compliance.

    (2) CommuniCare utilizing the tracking system and/or contract pharmacy's customary business records to periodically audit for duplicate discounts, in accordance with the Contract Pharmacy 340B Audit Guide, by inspecting a determined number of dispensing records (e.g., 340B eligible patient records and/or Medicaid Managed Care patient records).

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Procedure Number:  COM 003.1 | Page:  3 of  3 |

F. Multiple Covered Entity Arrangement: CommuniCare will not participate in an arrangement with one or more contract pharmacies if the arrangement includes a network (or other similar arrangement) of multiple covered entities, unless specifically authorized by HRSA in writing.

G. Audits: to ensure ongoing compliance with the provisions set forth in this procedure, CommuniCare will perform regularly scheduled internal audits. CommuniCare will also contract with an external 3rd party to complete an audit of the 340B program annually.

H. Certification and/or recertification: For each arrangement with a contract pharmacy, CommuniCare shall submit to OPA a certification that it has signed and has in effect an agreement (i.e., contract) with the contract pharmacy, as set forth by HRSA/OPA in the Federal Register. HC shall submit re-certifications as required by HRSA/OPA.

I. Anti-Kickback: In accordance with the Medicare and Medicaid Anti-Kickback statute, CommuniCare will allow its patients the freedom to choose a pharmacy provider and will not direct patients to a specific pharmacy or restrict patients' ability to utilize the pharmacy of their choice.

J. **References**

(1) Section 340B of the Public Health Service Act ("PHSA"), Section 602 of the Veterans Health Care Act of 1992 ("VHCA").

(2) Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 2302; 42 U.S.C. 256b(e).

(3) Federal Food, Drug, and Cosmetic Act (FDCA), Pub. L. No. 75-717 § 526; 21 U.S.C. 360bb.

(4) Federal Register, Vol. 75, No. 43, Friday, March 5, 2010.

(5) Federal Register, Vol. 76, No. 98, Friday, May 20, 2011.

(6) Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. 1320a-7b(b).

(7) Health Resources and Services Administration (HRSA) Bureau of Primary Health Care, Office of Pharmacy Affairs (OPA): http://www.hrsa.gov/opa/index.html.

| COMMUNICARE HEALTH CENTERS | | |
|---|---|---|
| **Policy Name:** | **340B Contract Pharmacy Policy** | |
| **Department/Committee:** | Compliance | |
| **Policy Number:** | **COM 003** | **Page: Page 1 of 5** |
| **Department/Committee Chair:** | | |
| **Print Name:** | **Michael Hernandez** | |
| **Chief Executive Officer:** | | |
| **Print Name:** | **Paul M. Nguyen** | |
| **Board Chair:** | | |
| **Print Name:** | **Shawn Lovorn, JD** | |
| **Effective Date:** | 3-7-24 | |

## 1. GENERAL POLICY STATEMENT:

This policy is intended to ensure that CommuniCare Health Centers (CommuniCare), which participates in the HRSA 340B Drug Pricing Program Contract Pharmacy Services, remains compliant with applicable 340B Federal laws and regulations. As such, this policy should not be interpreted or implemented in a manner that would contradict any such law.

## 2. AFFECTED DEPARTMENT(S), COMMITTEE(S) OR PERSONNEL:

All employees, contract employees, or agents of CommuniCare providing services under the 340B program.

## 3. MATERIALS, and/or EQUIPMENT REQUIRED:

eCW EMR, eCW medication module, 340B electronic audit tool.

## 4. SCOPE

This policy is intended to ensure that CommuniCare Health Centers (CommuniCare), which participates in the HRSA 340B Drug Pricing Program Contract Pharmacy Services, remains compliant with applicable 340B Federal laws and regulations. As such, this policy should not be interpreted or implemented in a manner that would contradict any such law.

## 5. DEFINITIONS

A. 340B Drug Pricing Program: The 340B Drug Pricing Program resulted from enactment of Public Law 102-585, the Veterans Health Care Act of 1992, which is codified as Section 340B of the Public Health Service Act. The 340B Drug Pricing Program is managed by the Health Resources and Services Administration (HRSA) Office of Pharmacy Affairs (OPA). Section 340B limits the cost of covered outpatient drugs to certain federal grantees, federally qualified health center look-alikes, and qualified hospitals. Participation in the Program results in significant savings on the cost of pharmaceuticals for safety-net providers. The purpose of the 340B Program is to enable these entities to stretch scarce federal resources, reaching more eligible patients, and providing more comprehensive services.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: COM 003 | Page: Page 2 of 5 |

B. <u>340B Eligible Patient</u>: A patient of a covered entity that meets HRSA's definition of a patient. A 340B eligible patient may receive 340B purchased covered outpatient drugs while receiving care as an established patient within the covered entity's scope of project.

C. <u>340B Ceiling Price</u>: The maximum price for a covered outpatient drug that manufacturers can charge covered entities participating in the 340B drug pricing program.

D. <u>340B Pricing Program</u>: There are several possible 340B drug pricing programs under which an entity might enroll, if qualified, as a 340B covered entity. Possible programs include but are not limited to: Consolidated Health Centers programs (CHC) including Community Health Centers, School Based Programs, Health Care for the Homeless Programs, Migrant Health Programs, and Public Housing Primary Care Programs entities, Federally Qualified Health Center Look-Alikes (FQHCLA), Ryan White (HV) and Title X -Family Planning (FP).

E. <u>340B Purchased Drugs</u>: Covered outpatient drugs purchased by a covered entity under the 340B Drug Pricing Program.

F. <u>Contract Pharmacy</u>: A pharmacy other than the covered entity's owned pharmacy with which the covered entity has contracted to provide comprehensive pharmacy services to 340B eligible patients utilizing covered outpatient drugs purchased under the 340B Drug Pricing Program.

G. <u>Contract Pharmacy Arrangement</u>: An agreement with a pharmacy other than the covered entity's owned pharmacy with which the covered entity has contracted to provide comprehensive pharmacy services to 340B eligible patients utilizing 340B purchased covered outpatient drugs.

H. <u>Covered Entity</u>: A federally qualified health center or other facility enrolled in the 340B Drug Pricing Program and eligible to purchase covered outpatient drugs for 340B eligible patients through the program at 340B prices.

I. <u>Covered Outpatient Drug</u>: A drug defined in Section 1927(k) of the Social Security Act (42 USC § 1396r–8(k) that may be purchased, with certain possible exceptions, by covered entities under the 340B Drug Pricing Program.

J. <u>Diversion Prohibition</u>: The prohibition against the resale or transfer of covered outpatient drugs purchased under the 340B Pricing Program to anyone other than a 340B eligible patient of a Covered Entity.

| COMMUNICARE HEALTH CENTERS ||
|---|---|
| Policy Number: COM 003 | Page: Page 3 of 5 |

K. Duplicate Discount Prohibition:   The prohibition against subjecting a manufacturer to providing both a drug at a discounted price under the 340B Pricing Program and also to providing a rebate for the drug under Title XIX of the Social Security Act (Medicaid).

L. Federally Qualified Health Center (FQHC): A private, not for profit or public entity that is a "Health Center" under Section 330 of the Public Health Services Act (PHS) (codified in 42 U.S. Code § 254b) and that meets the requirements for receiving grant under Section 330.  FQHCs are "safety net" providers such as community health centers, public housing centers, outpatient health programs funded by the Indian Health Service, or programs serving migrants and the homeless. FQHCs qualify for enhanced reimbursement from Medicare and Medicaid, as well as other benefits. FQHCs must be an entity that:

(1) is receiving a grant under PHS Section 330 (i.e., " Section 330 grant");

(2) is receiving funding from a Section 330 grant under a contract with a recipient of such a grant and that meets the requirements to receive such a grant;

(3) is not receiving Section 330 grant but that meets the requirements to receive such a grant as an FQHC Look-alike (FQHC-LA);

(4) was treated by the Secretary of the Department of HHS for purposes of Medicare Part B as a comprehensive Federally funded health center as of January 1, 1990; or

(5) is operating as an outpatient health program or facility of a tribe or tribal organization under the Indian Self-Determination Act or as an urban Indian organization receiving funds under Title V of the Indian Health Care Improvement    Act as of October 1, 1991.

M. Federally Qualified Health Center (FQHC) Covered Entity: An FQHC that is enrolled in the 340B Drug Pricing Program as a Covered Entity.

N. Grantees (Formerly Child Site):  An outpatient clinic that is eligible to participate in the 340B program because it is an integral part of a covered entity (e.g., health center, etc.) that participates in the 340B program, as evidenced by the fact that it is  within the CHC covered entity's federally approved scope of project in the HRSA Electronic Handbook (EHB) (as maintained through HRSA's Bureau of Primary Health Care (BPHC) website).

O. Office of Pharmacy Affairs (OPA):  The component within HRSA that administers the 340B Drug Pricing Program.  The Office of Pharmacy Affairs is located within HRSA's Special Programs Bureau.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: COM 003 | Page: Page 4 of 5 |

## 6. POLICY

A. As a covered entity participating in the 340B Drug Pricing Program, CommuniCare will adhere to all applicable federal, state, and local laws and requirements.

B. CommuniCare will remain responsible for all 340B covered outpatient drugs purchased through a contract pharmacy and for adhering to the 340B contract Pharmacy Procedure and corresponding 340B Contract Pharmacy Auditing Guide to ensure that at least the following requirements are met:

(1) Diversion prohibition: only 340B eligible patients of the covered entity will receive 340B purchased drugs from a contract pharmacy.

(2) Duplicate discount prohibition: manufacturers will not be subjected to duplicate discounts for 340B purchased drugs.

Written contract(s): a contract pharmacy arrangement that includes a current written contract shall be in place between the covered entity with associated grantee sites and each contract pharmacy utilized by the covered entity.

(3) Each written contract shall include the essential covered entity compliance elements identified by HRSA.

(4) Multiple Covered Entity Arrangement: A covered entity will not participate in a contract pharmacy arrangement with a contract pharmacy if the arrangement includes a network (or other similar arrangement) of multiple covered entities - unless the network has been specifically authorized by HRSA in writing.

C. To ensure ongoing compliance with the provisions set forth in this policy and the 340B Contract Pharmacy Procedure, CommuniCare will perform regularly scheduled audits in accordance with the corresponding 340B Contract Pharmacy Auditing Guide.

D. For each contract pharmacy arrangement, CommuniCare shall submit to OPA a certification (electronically) that it has signed and has in effect an agreement (i.e., contract) with the contract pharmacy, as set forth by HRSA/OPA in the Federal Register.

E. CommuniCare shall submit re-certifications annually, when required by HRSA/OPA.

| COMMUNICARE HEALTH CENTERS | |
|---|---|
| Policy Number: COM 003 | Page: Page 5 of 5 |

F. CommuniCare will remain aware of, and adhere to, anti-kickback provisions of the Medicare and Medicaid Anti-Kickback statute.

## 7. REFERENCES

A.      Section 340B of the Public Health Service Act ("PHSA"), Section 602 of the Veterans Health Care Act of 1992 ("VHCA").

B.      Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 2302; 42 U.S.C. 256b(e).

C.      Federal Food, Drug, and Cosmetic Act (FDCA), Pub. L. No. 75-717 § 526; 21 U.S.C. 360bb.

D.      Federal Register, Vol. 75, No. 43, Friday, March 5, 2010.

E.      Federal Register, Vol. 76, No. 98, Friday, May 20, 2011.

F.      Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. 1320a-7b(b).

G.      Health Resources and Services Administration (HRSA) Bureau of Primary Health Care, Office of Pharmacy Affairs (OPA): http://www.hrsa.gov/opa/index.html.

Case 1:26-cv-01190      Document 1-2      Filed 04/08/26      Page 113 of 155

## 📝 Self Updates: Services details

▼ **H80CS00672: Barrio Comprehensive Family Health Care Center, Inc., San Antonio, TX**

| Grant Number: H80CS00672 | BHCMIS ID: 062360 | Project Period: 02/01/2002 - 01/31/2028 |
|---|---|---|
| Budget Period: 02/01/2025 - 01/31/2026 | | |

**Required Services**

| Service Type | Column I. Direct (Health Center Pays) | Column II. Formal Written Contract/Agreement (Health Center Pays) | Column III. Formal Written Referral Arrangement (Health Center DOES NOT pay) |
|---|:---:|:---:|:---:|
| General Primary Medical Care | X | X | |
| Diagnostic Laboratory | X | X | |
| Diagnostic Radiology | | X | |
| Screenings | X | X | |
| Coverage for Emergencies During and After Hours | X | | |
| Voluntary Family Planning | X | | |
| Immunizations | X | | |
| Well Child Services | X | | |
| Gynecological Care | X | | |
| **Obstetrical Care** | | | |
| Prenatal Care | X | X | |
| Intrapartum Care (Labor & Delivery) | X | | |
| Postpartum Care | X | | |
| Preventive Dental | X | | |
| Pharmaceutical Services | X | X | |
| Case Management | X | | |
| Eligibility Assistance | X | | |
| Health Education | X | | |
| Outreach | X | | |
| Transportation | X | | |
| Translation | X | X | |

**Additional Services**

| Service Type | Column I. Direct (Health Center Pays) | Column II. Formal Written Contract/Agreement (Health Center Pays) | Column III. Formal Written Referral Arrangement (Health Center DOES NOT pay) |
|---|:---:|:---:|:---:|
| Additional Dental Services | X | | |
| **Behavioral Health Services** | | | |
| Mental Health Services | X | | |
| Physical Therapy | X | | |
| Nutrition | X | | |

**Speciality Services**

| Service Type | Service Delivery Methods | | |
| --- | --- | --- | --- |
| | Column I. Direct (Health Center Pays) | Column II. Formal Written Contract/Agreement (Health Center Pays) | Column III. Formal Written Referral Arrangement (Health Center DOES NOT pay) |
| Psychiatry | X | | |
| Cardiology | X | | |
| Pulmonology | X | | |
| Dermatology | X | | |
| Gastroenterology | X | | |
| Other - Allergy | X | | |
| Other - Neurology | X | | |
| Other - Rheumatology | X | | |
| Other - Sports Medicine | X | | |

Close Window



Electronic Handbooks

☰  Search                    🔍              Logout

🏠 | Tasks | Organization | **Grants** | Free Clinics | FQHC-LALs | Dashboards | Resources

You are here: Home » Grants » Browse » Grant Folder [ ▬ ]

### ALL FUNCTIONS «

🔍 Search

**Other Functions**

**My Portfolio**
 Return to Grants List

**Grant Folder**

**Grant Overview**
 Grant Home
 Award History
 Users

**Approved Scope**
 Services
 **Sites**
 Other Activities and
 Locations

## 📄 Self Updates: Sites in Scope

▼ **H80CS00672: Barrio Comprehensive Family Health Care Center, Inc., San Antonio, TX**

Grant Number: H80CS00672    BHCMIS ID: 062360    Project Period: 02/01/2002 - 01/31/2028

Budget Period: 02/01/2025 - 01/31/2026

▼ **Resources** ⬈

**View**

Form 5A  |  Form 5B  |  Form 5C

### Sites in Scope

| Site ID | Site Name | Site Address (City, State, Zip, CDistrict) | Service Site Type | Site Status | Site Location Type | Options |
|---|---|---|---|---|---|---|
| BPS-H80-037168 | CommuniCare Health Centers - Westover Hills | 9022 Culebra Rd STE 101, San Antonio, TX 78251 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-037563 | CommuniCare Health Centers - Town & Country | 10350 Bandera Rd, Ste 210, San Antonio, TX 78250 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-035550 | San Antonio Specialty Health & Sports Medicine | 1200 Brooklyn Ave. STE 320, San Antonio, TX 78212 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-034420 | CommuniCare Health Centers - Stone Oak | 20642 Stone Oak Pkwy STE 105, San Antonio, TX 78258 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-010104 | CommuniCare Health Centers - Northwest | 8210 Callaghan, San Antonio, TX 78230 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-020855 | CommuniCare Health Centers - Navigation Center | 7420 Blanco Rd Ste 210, San Antonio, TX 78216 | Administrative/Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-036067 | CommuniCare Health Centers - Hallmark University | 9855 Westover Hills Blvd. STE 156, San Antonio, TX 78251 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-039004 | CommuniCare Health Centers - Mobile Health Unit | 3066 E Commerce St, San Antonio, TX 78220 | Service Delivery Site | Active | Mobile Van | 📝 Update ▼ |
| BPS-H80-001887 | CommuniCare Health Centers - East | 3066 E Commerce St, San Antonio, TX 78220 | Administrative/Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-027024 | CommuniCare Health Centers - Medical Center | 7220 Louis Pasteur Dr STE 140, San Antonio, TX 78229 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-028110 | CommuniCare Health Centers - Helotes | 12850 Bandera Rd Ste 106, Helotes, TX 78023 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-030098 | CommuniCare Blvd Dental | 5138 Utsa Blvd Ste 116, San Antonio, TX 78249 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-018765 | CommuniCare Health Centers - Potranco | 10002 Westover Blf, San Antonio, TX 78251 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |
| BPS-H80-029941 | CommuniCare Health Centers - Wimberley | 203 Stillwater Ste 6, Wimberley, TX 78676 | Service Delivery Site | Active | Permanent | 📝 Update ▼ |

Case 1:26-cv-01190    Document 1-2    Filed 04/08/26    Page 116 of 155

| Site ID | Site Name | Site Address (City, State, Zip, CDistrict) | Service Site Type | Site Status | Site Location Type | Options |
|---|---|---|---|---|---|---|
| BPS-H80-008672 | CommuniCare Health Centers - Kyle | 2810 Dacy Ln, Kyle, TX 78640 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-027437 | CommuniCare Health Centers - Leon Springs | 21195 W Interstate 10 Ste 2101, San Antonio, TX 78257 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-039301 | CommuniCare Health Centers - Vital Life Wellness Broadway | 2520 Broadway St, Ste 100, San Antonio, TX 78215 | Administrative/Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-039302 | CommuniCare Health Centers - Vital Life Wellness Stone Oak | 418 N Loop 1604 W, San Antonio, TX 78232 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-035311 | CommuniCare at The MAC | 5210 Thousand Oaks Dr STE 1203, San Antonio, TX 78233 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-015210 | CommuniCare Health Centers - Boerne | 430 W. Bandera, Suite 9, Boerne, TX 78006 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-024792 | CommuniCare Health Centers - San Marcos | 1941 S Interstate 35 Ste 101, San Marcos, TX 78666 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-003849 | CommuniCare Health Centers - West | 1102 Barclay St, San Antonio, TX 78207 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-014110 | CommuniCare Health Centers - Metropolitan | 1200 Brooklyn Ave Ste 300, San Antonio, TX 78212 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-036840 | Apollo Wellness | 6511 West FM 1604 North STE 105, San Antonio, TX 78254 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-039657 | CommuniCare Health Centers - Roosevelt | 3727 Roosevelt Ave, San Antonio, TX 78214 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-033954 | CommuniCare Health Centers - Alamo Ranch | 6838 Alamo Pkwy Ste 5, San Antonio, TX 78253 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-039796 | CommuniCare Health Centers - South | 2316 SE Military Dr, San Antonio, TX 78223 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-039005 | CommuniCare Health Centers - Allergy Institute | 4456 Lockhill Selma Rd, Ste 103, San Antonio, TX 78249 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-034235 | CommuniCare Health Centers - Encino Park | 20306 Encino Ledge Ste 101, San Antonio, TX 78259 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-031315 | CommuniCare Health Centers - Luckey Ranch | 11930 W US Highway 90 Ste 110, San Antonio, TX 78245 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-017399 | CommuniCare Health Centers - Hill Country Village | 14811 San Pedro Ave, San Antonio, TX 78232 | Service Delivery Site | Active | Permanent | Update ▼ |
| BPS-H80-034876 | Health Outcomes Centers | 4751 Hamilton Wolfe Rd STE 200, San Antonio, TX 78229 | Service Delivery Site | Active | Permanent | Update ▼ |

Acceptable Use Policy | Accessibility | Site Map (Coming Soon) | Viewers And Players | Product: SCP | Platform #: 4.18.10.0 | Build #: 5.1.5.10 | Environment: Production
Contact Us | Vulnerability Disclosure Policy
Last Login: 04/11/25 12:42:00 PM ET

https://grants2.hrsa.gov/WebSCPExternal/Interface/Common/SelfUpdates/ScopeSites.aspx?controlName=LeftMenu&PRoleId=18&grantId=44DA3387... 2/2

| NPI | LAST_NAME | FIRST_NAME |
|---|---|---|
| 1669931275 | ABRAHAM | ASHLIE |
| 1982426045 | ADAMS | ZHORAE |
| 1538452339 | Akinsanya | Adekemi |
| 1134814700 | ALAM | FRAMARZ |
| 1467130195 | AMEN | ANGELA |
| 1295915254 | Anca | Yadira |
| 1841828498 | Anderson | Gabrielle |
| 1205543931 | ARTHUR | RICHARD |
| 1316179781 | BEAN | BECKY |
| 1851995054 | BELMUNDEZ ESPURVOA | NICOLE RENEE |
| 1497299184 | BERK | CORRIE |
| 1801613815 | BETANCOURT | MANUEL |
| 1780083360 | BLANCHARD | SARA |
| 1790457810 | BOAL | OMPIGA |
| 1386723179 | BRANCHIZIO | TARALYN KAY |
| 1255185096 | BREED | KYLE |
| 1578929071 | Broadbent | Emma |
| 1881056414 | BROOKS | KELLY MEGHAN |
| 1801590914 | BROWN | DANIEL |
| 1922664861 | BROWN | ABBY |
| 1992930366 | Bullock | Sally |
| 1205914140 | Burgman | Sandra |
| 1407255102 | BURY-FIOL | ARLENE |
| 1326535436 | BUSTAMANTE | CLAIRE ELISE |
| 1831943091 | CANLAS | MARY ROSE |
| 1851364673 | CARABIN | CHRISTOPHER |
| 1184207045 | CAROLINA | TABITHA JOANA FAITH |
| 1356579049 | CASIMIER | ROSEMARY |
| 1053804476 | CASTELLANOS-CASTRO | LLILIAM |
| 1770209942 | CATANGAL | CAMILLE |
| 1598400566 | CAVAZOS | JACOB |
| 1932217676 | Cepeda | Claudio |
| 1700102043 | Chaffe | Erin |
| 1871349746 | CHASE | RAWSON |
| 1063596716 | ChincanChan | Carol |
| 1376704544 | CHOUCROUN | ASHLEY |
| 1629712849 | CHRISTENSEN | COLLIN |
| 1316472970 | CHU | STEPHANIE |
| 1134160377 | CLEVELAND-TRAYLOR | AMELIA |
| 1598761066 | Coleman | Vincent |
| 1245246420 | Collins | Karyn |
| 1932370020 | COMPAGNONE | BRENDA |
| 1568904852 | CONOVER | DALE |

| | | |
|---|---|---|
| 1861820946 | COSTON | MATTHEW JASON |
| 1063091601 | DATRI | JEWEL |
| 1811570930 | DAVIS | BRANDON |
| 1720720071 | DAVISON | TIARA |
| 1093441172 | DE LA CRUZ | ANNETTE |
| 1194349654 | DEREMER | VALERIE |
| 1366112138 | DIENHART | DANIELLE |
| 1700406717 | DIXON | GRANT AUSTIN |
| 1902817612 | DONNEL | JAMES |
| 1033831490 | DOSWELL | MIRANDA |
| 1932646940 | Dupont | Leslie |
| 1740442151 | Duvic | Margaret |
| 1487235040 | DYBDAL-HARGREAVES | MICHAEL |
| 1215434527 | ECK | JENNIFER |
| 1477559821 | ERES | MARIO |
| 1114300308 | Feili | Ali |
| 1427526839 | Ferris | Christina |
| 1063422525 | FISCHER | STEVEN |
| 1801531132 | Flores | Alfred Oliver |
| 1356652424 | Frere | Andrea |
| 1609058908 | FRYE | KASEY |
| 1902369838 | GAMEZ | RICARDO |
| 1871709436 | Garcia | Javier |
| 1992729875 | Garcia | Michael |
| 1548769052 | GARCIA | CRISTOBAL |
| 1659388957 | GARCIA-HODGE | MARISOL |
| 1891159646 | Gardner | Rachel Rose |
| 1679573836 | Garza | Armando |
| 1982197877 | GENNIE | AMBER |
| 1730823352 | GERELBAT | NADMID BAATAR |
| 1902581945 | GOMEZ | EMILY |
| 1184622904 | GONZALEZ | BERNICE |
| 1104382803 | GREEN | KAREN |
| 1669193660 | HARB | LISSETTE |
| 1962084749 | HARB | CRYSTEL MARIE |
| 1912988007 | Henderson | Jeffrey |
| 1215461090 | HERNANDEZ | MARICELA |
| 1093276230 | HERRERA | DENISE |
| 1003443193 | Horne | Josiah |
| 1790099547 | HOWELL | NICOLE |
| 1255328019 | Hughes Juarez | Patricia |
| 1386101277 | Inglish | Amanda |
| 1467298711 | JABALY | MIRIAM |
| 1457040743 | JIMENEZ | JOSE |

| | | |
|---|---|---|
| 1598450454 | KANNAN | DHIVYA |
| 1851528715 | Kelly | Heather |
| 1730672833 | KELLY | PATRICK |
| 1841940178 | KU | FANG JUNG (Catherine) |
| 1831894971 | KURTZMAN | KIRA |
| 1619079274 | Laneman | Aspen |
| 1629698816 | LATHAM | SHANICE |
| 1619139847 | LaWendy | Emad |
| 1417643792 | LE | MICHELLE |
| 1225492481 | Littlejohn | Joaquin |
| 1851768543 | LONG | ELIZABETH |
| 1083600035 | LOPEZ | LUIS ALFONSO |
| 1336796408 | LOPEZ | BIANCA |
| 1013925130 | LU | DOUGLAS |
| 1144851064 | LUPERCHIO | KAITLYN |
| 1700012424 | Martinez | Manuel L |
| 1861108789 | MARTINEZ | ELAINA |
| 1447245469 | MARTINEZ-PRIETO | JORGE |
| 1497209894 | MATHENY | CHRISTINA |
| 1265789598 | MATTHEWS | AMANDA |
| 1538510664 | MAUPIN | SUZANNA |
| 1295123982 | MCGINNIS | ROBIN |
| 1255359212 | MEER | SADOUTOUNNISSA |
| 1548578321 | Menchaca | Arturo |
| 1376851451 | MERCHANT | ASIM |
| 1164195392 | MERRITT | KAYLA |
| 1801048533 | Meyer | Linda |
| 1255525440 | Miller Jr | Ernest |
| 1700085859 | Mills | Alicia |
| 1174207146 | MOHAMED | ZAHRA |
| 1700883170 | Mohr | Michael |
| 1295749778 | Molina | Josue |
| 1659358406 | Morales | Luis O |
| 1154512341 | Moreira | Marcia |
| 1063875417 | MORGAN | NURAH |
| 1730700022 | MULLER | BRENDAN |
| 1457914194 | MURRAY | ELEANOR |
| 1932780970 | NATHANIEL | RICHA |
| 1508387986 | NGUYEN | NGUYEN |
| 1932840063 | NICOLWALA | MEHER ADIL |
| 1225162316 | NISTAL | LOUIS |
| 1073564456 | Nutt | Terri |
| 1093240475 | O'Neal | Shannon Kristina |
| 1124799978 | ORTIZ | STEPHANIE |

| | | |
|---|---|---|
| 1326720095 | PACHECO | MARIA |
| 1740649987 | PAGAN | BRENDA |
| 1568104255 | PAINTER | KAPIL HEMANT |
| 1396859211 | PARTALAS | EYTHIMIOS |
| 1013954221 | PATEL | TARAK |
| 1811367451 | Pham | Tram Emma |
| 1841749595 | PIERCE | MARISSA |
| 1174551766 | Poordad | Fred |
| 1588033344 | Porter | Vanessa |
| 1811604218 | POWAO | KELLEAH |
| 1912994559 | QUESADA | PAUL |
| 1457700049 | Quijada | Jose Gilberto |
| 1235293457 | QUIROZ | REBECCA ANN |
| 1124607882 | RAMIREZ | JOHN |
| 1497183529 | RAMOS | JAMIEL SUZETTE |
| 1518719202 | RAZZAK | SANIA |
| 1649403262 | Reddy | Janie |
| 1144644493 | Rehwaldt | Don |
| 1164117883 | RICHARDSON JR. | JOSEPH |
| 1265817753 | Robertson | Ryan |
| 1235970849 | ROCHA | ANTHONY CHRISTOPHER |
| 1972734234 | Rodas Ochoa | Fabian |
| 1093211476 | RODRIGUEZ | MIRANDA |
| 1093327108 | RODRIGUEZ | HEVONY |
| 1548898950 | RODRIGUEZ DELGADO | YANIER |
| 1841307568 | Rogeness | Graham A |
| 1538146345 | Roller | Violetta |
| 1730326679 | ROSILLO | PATRICIA |
| 1649588492 | SALAZAR | SELINDA |
| 1710410568 | Sanathra | Rex |
| 1386498392 | SANCHEZ | JENIKA |
| 1407870819 | Sanders | Robert |
| 1003593575 | SANTOVENA | KATHERINE |
| 1134710411 | SARABIA | JESSICA |
| 1770723595 | Sethuraman | Siva |
| 1730409095 | SHAH | MITAL |
| 1669648861 | SHAH | ARATHI APURVA |
| 1528700846 | SHIN | BENJAMIN |
| 1366400210 | SHIRLEY | CYNTHIA |
| 1528198405 | Smith | Kelly |
| 1528552932 | SOLIS | RUBEN |
| 1235872359 | SOUNDARARAJAN | PRIYA |
| 1255713491 | SPARKMAN-ROYO | ALEXANDER |
| 1447980032 | SPENCER | RACHEL |

| | | |
|---|---|---|
| 1457746364 | STACHNIAK | DAVID ROBERT |
| 1578958237 | STACHNIAK | KIMBERLEY |
| 1932185287 | Switzer | Richard |
| 1215163910 | Thackeray | Bridget |
| 1780379107 | THOMAS | LAUREN |
| 1083810972 | THOMAS | STEPHANIE |
| 1548754161 | THOMAS | ERNEST |
| 1346771433 | TIBERIO | NATHALIE |
| 1942385091 | Trautmann | Paul |
| 1538533104 | TREVINO | DARA |
| 1124288626 | Van De Putte | Nichole |
| 1245247519 | VARGAS | LETICIA |
| 1144725565 | VARGHESE | MERIN |
| 1467009936 | VASQUEZ | ELIZABETH |
| 1174140842 | Vega-Cartagena | Kermith |
| 1982838470 | Vela | Jeni |
| 1760479935 | VILLALOBOS | ELISEO |
| 1609373810 | VILLANACCI | JOSEPH |
| 1154732683 | Villarreal Luo | Josephine |
| 1477812121 | Vizuete | John |
| 1639632821 | VU | TINA |
| 1396027884 | Wall | Shawna |
| 1245872670 | WEGESA | BRONTA |
| 1902096175 | WLODARXZYK | CHRIS |
| 1346246626 | Wu | William |
| 1205841947 | XENAKIS | ELLY MJ |
| 1417938507 | ZUFLACHT | MICHAEL |
| 1093412900 | RANDOLPH | BRIANA |
| 1750886610 | DANG | KIM MINH |
| 1053322438 | KORDAB | NADA |

**May 7, 2025 correspondence between AbbVie and Barrio**

**Van Etten, Elizabeth**

| | |
|---|---|
| **From:** | Scheidler, Edward A |
| **Sent:** | Wednesday, May 7, 2025 2:05 PM |
| **To:** | Ricardo Gonzalez; Schmidt, Vanessa |
| **Cc:** | Alexander Cantri; Paul Nguyen; Michael Hernandez; Scheidler, Edward A |
| **Subject:** | Abbvie Follow Up with CommuniCare |
| **Attachments:** | CH062360_GFI_AbbVie Follow-up GFI Letter_20250507.pdf |

Dear Rick,

Thank you again for your response to our inquiry. We ask that you answer additional questions raised by your response. Please see the attached letter.

Thank you,

Edward

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228

**abbvie**

26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
**MOBILE**  847-452-8228
**EMAIL**  EDWARD.SCHEIDLER@ABBVIE.COM

From: Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
Sent: Wednesday, April 30, 2025 4:58 PM
To: Scheidler, Edward A <edward.scheidler@abbvie.com>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
Cc: Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael
Hernandez <mhernandez@CommuniCareSA.org>
Subject: [EXTERNAL] FW: Response to AbbVie Letter Dated February 6, 2025

Edward,

Please find attached our response to your inquiry as well as our associated documents.  I appreciate your
patience in the time we took to respond.

Thank you.


**Rick C. Gonzalez | Vice President and CFO**
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070 | communicaresa.org

i



**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.



**By Email**

May 7, 2025

Barrio Comprehensive Family Health Care Center, Inc. (CH062360)
HRSA-Funded Health Center
Ricardo Gonzalez
Vice President & Chief Financial Officer
CommuniCare Health Centers
3066 E. Commerce
San Antonio, TX, 78220

RE: Response to April 30, 2025 letter regarding purchases of AbbVie products by Barrio Comprehensive Family Health Care Center, Inc. (CH062360), inclusive of associated grantee sites ("Barrio")

Dear Rick,

Thank you for your letter in response to our February 6, 2025 letter and March 19, 2025 email regarding the reasons underlying Barrio's increased purchases of AbbVie immunology products under the 340B program. We appreciate the responses you have provided to us thus far. However, your responses raise additional questions for us.  Accordingly, we request your answers to the following:

1. You state that increased 340B purchases stem from, among other reasons, "rising patient volume," and "increased capabilities for patients to access services through telemedicine."
   - Can you provide a breakdown of what percentage of your "rising patient volume" (i.e., new 340B patients) during the time period of this inquiry have established patient eligibility through telehealth appointments versus those qualifying for patient status through in-person services?
   - What documentation do you require to support that a telemedicine encounter qualifies as 340B eligible?
   - Please describe how individuals are referred to you or your affiliated providers for telehealth services.

2. In response to our questions about the types of healthcare services that qualify an individual as a patient of Barrio, you stated that to be a patient, an individual must have a "medical encounter" with a provider.
   - Please provide more detail for how Barrio defines a "medical encounter." Does Barrio have substantive standards for evaluating what type of interaction qualifies as a "medical encounter?" What documentation does Barrio require to support an encounter?

3. You also separately define a "visit" to include "virtual contacts between a patient and a licensed or credentialed provider."[1]
   - Please describe the range of providers with whom a virtual visit will confer patient eligibility.
   - What types of virtual services confer patient eligibility? Would this include virtual contacts with clinical pharmacy staff?  How long must the encounter with the virtual provider be in order to confer patient eligibility?  How do you establish that

---

[1] *See* Barrio 340B Policy ACC 822, § 4.C.22.

1

abbvie

the encounter involves the provision of bona fide medical care?
- What is the average amount of time spent by patients in a virtual/telehealth encounter with Barrio?  What CPT code or codes are used for billing those encounters?

4. In response to our questions about why Barrio's 340B purchases appear to be multiples higher than the number of prescriptions written by Barrio providers, you attributed this to Barrio's referral practices.  You stated that "prescriptions for certain drugs often prescribed by specialists can exceed the prescriptions that [Barrio] writes directly."
- Can you confirm whether, during the time period of this inquiry, prescriptions for AbbVie drugs prescribed by specialists have in fact exceeded prescriptions that Barrio writes directly?

5. Please provide more information regarding the conditions under which Barrio will consider itself to retain the "requisite responsibility" for patients referred to a non-Barrio provider such that Barrio will claim a 340B discount on the non-Barrio provider's prescription.
- Subsequent to the referral, does Barrio require that a Barrio-affiliated provider review or evaluate the care that the patient is receiving from specialty providers?
- What is the contractual or other relationship with each of the specialists to whom Barrio has a referral relationship?
- What services are retained by Barrio such that Barrio retains "responsibility for the patients' overall health care" when its patients are referred to those specialists?

6. Barrio's referral policy indicates that Barrio will engage in 340B claim capture when a Barrio patient is referred to a "specialist, specialist group or specialty." How does Barrio define these terms?
- For example, under Barrio's policies, could Barrio (a) refer an individual out to a primary care provider and (b) capture 340B prescriptions signed by that provider?   If so, please explain why the individual in that circumstance remains a patient of Barrio.

7. You state that Barrio has partnered with Pharma Strategies for "referral prescription validation at BioPlus," although you cannot disclose the details of your arrangements with Pharma Strategies.
- Please explain why you cannot disclose details about your arrangements with Pharma Strategies.  Would you be able to inform us of the contractual relationships in general between Barrio, Pharma Strategies and BioPlus respectively?  If so, we would appreciate your doing so.
- Please provide details about the growth of your referral captures, if any, subsequent the start of your relationship with Pharma Strategies.
- In connection with your arrangement with Pharma Strategies, please explain whether patients who obtain telehealth services also retain relationships with their primary care or attending physician.  If so, please explain how the encounter with the telehealth provider through Pharma Strategies establishes a patient relationship with Barrio.

8. What is Barrio's affiliation, if any, with River Medical Pharmacy?  River Medical Pharmacy is listed as a Ship To address for Barrio in OPAIS.  AbbVie has recently received a request to significantly increase weekly purchase allocations for River Medical Pharmacy for three AbbVie Immunology products.
- If Barrio uses River Medical Pharmacy to fill prescriptions, please identify the



approximate percentage of Barrio's prescriptions that are filled through River Medical.

- Please explain the relationship between Barrio and River Medical Pharmacy and how patients are referred from Barrio to River Medical Pharmacy.

Thank you for your attention to these follow-up questions.  We would appreciate a response by May 16.  AbbVie remains committed to working cooperatively during this good faith process. We value our relationship with Barrio and appreciate your engagement with us on this matter.

Sincerely,


Edward Scheidler
Senior Director

**May 30, 2025 correspondence between AbbVie and Barrio**

**Van Etten, Elizabeth**

---

**From:**           elizabeth.vanetten@abbvie.com
**Subject:**        FW: Abbvie Follow Up with CommuniCare
**Attachments:**    AbbVie 05302025.pdf

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Friday, May 30, 2025 1:43 PM
**To:** Scheidler, Edward A <edward.scheidler@abbvie.com>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>
**Subject:** [EXTERNAL] RE: Abbvie Follow Up with CommuniCare

Edward,

Please see attached.

Thank you.

## Rick C. Gonzalez | Vice President and CFO
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070 | communicaresa.org



**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

---

**From:** Scheidler, Edward A <edward.scheidler@abbvie.com>
**Sent:** Wednesday, May 7, 2025 1:05 PM
**To:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>; Scheidler, Edward A <edward.scheidler@abbvie.com>
**Subject:** Abbvie Follow Up with CommuniCare

**CAUTION**: External email. Do not open attachments, click on links or comply with requests unless you trust the sender. Never share your User ID or password.

Dear Rick,

Thank you again for your response to our inquiry. We ask that you answer additional questions raised by your response. Please see the attached letter.

Thank you,

Edward

**EDWARD SCHEIDLER**
Head of 340B Center of Excellence
Mobile: 847-452-8228



26525 Riverwoods Blvd.
ABV1-3SE
Mettawa, IL 60045
MOBILE  847-452-8228
EMAIL  EDWARD.SCHEIDLER@ABBVIE.COM

---

**From:** Ricardo Gonzalez <rgonzalez@CommuniCareSa.org>
**Sent:** Wednesday, April 30, 2025 4:58 PM
**To:** Scheidler, Edward A <edward.scheidler@abbvie.com>; Schmidt, Vanessa <vanessa.schmidt@abbvie.com>
**Cc:** Alexander Cantri <acantri@CommuniCareSa.org>; Paul Nguyen <pnguyen@CommuniCareSa.org>; Michael Hernandez <mhernandez@CommuniCareSA.org>
**Subject:** [EXTERNAL] FW: Response to AbbVie Letter Dated February 6, 2025

Edward,

Please find attached our response to your inquiry as well as our associated documents.  I appreciate your patience in the time we took to respond.

Thank you.

**Rick C. Gonzalez | Vice President and CFO**
**Corporate Campus**
431 Wolfe Rd., San Antonio, TX 78216
210-233-7070 | communicaresa.org



**NOTICE:** This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information that is privileged

2

and confidential. Protected Health Information may only be used or disclosed in accordance with applicable laws.  Should you improperly disseminate any Protected Health Information contained in this email, you may be subject to penalties under these laws. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.



May 30, 2025

Edward Scheidler
Head of 340B Center of Excellence
AbbVie
26525 Riverwoods Blvd., ABV1-3SE
Mettawa, IL 60045

     **RE:    Response to Your May 7, 2025 Letter**

Dear Mr. Scheidler,

     We received your follow-up questions via an e-mailed letter on May 7, 2025. At this time, Barrio Comprehensive Family Health Care Center, Inc. d/b/a CommuniCare respectfully declines to provide additional information. In our last response, we fully answered 46 individual questions and provided all requested supporting documents. We honor HRSA's desire that we respond to good faith inquiries received from manufacturers, but we cannot devote significant leadership time to responding to multiple inquiries from a single manufacturer.

     We utilize the 340B program as intended and in accordance with all published guidance issued by the Health Resources and Services Administration and its Office of Pharmacy Affairs. Thank you again for the opportunity to explain how we comply with 340B program requirements with respect to our purchases of your drugs and the drugs sold by the more than 600 manufacturers that participate in the 340B program.

                    Sincerely,

                    Ricardo Gonzalez
                    VP & CFO
                    CommuniCare Health Centers

*Employers Get Big Drug Discounts Through Program For Hospitals that Serve Poor Patients*, Wall St. J. (Mar. 15, 2025)

HEALTH | HEALTHCARE

# Employers Get Big Drug Discounts Through Program For Hospitals That Serve Poor Patients

Companies sell benefit plans to employers that lower prescription drug costs for workers by tapping a federal hospital program

By *Joseph Walker* [ Follow ]

*March 15, 2025 9:08 am ET*



Several startups are aiming to change the business of pharmacy-benefit managers. PHOTO: GETTY IMAGES

A new breed of drug middlemen are pushing an unusual cost-saving strategy that lets their employer clients tap a federal program meant for hospitals that serve the poor.

The government program, known as 340B, allows hospitals that care for many uninsured and low-income patients to purchase outpatient medicines at steep discounts. Hospitals can pocket the savings, but they can also choose to pass the discounts on to patients at their pharmacies.

Companies such as Rescription, MakoRx and Liviniti are selling pharmacy-benefit plans that save employers money by funneling workers to those 340B hospital pharmacies instead of traditional drugstores. The workers get the discounted 340B price under these plans. Hospitals participate because it expands their customer base and they receive fees for dispensing prescriptions, the companies say.

The companies count some of the participating hospitals among their clients, providing benefits for hospital workers. They say they are hoping to change the business of pharmacy-benefit managers, or PBMs, which traditionally negotiate prices for their clients with drugmakers and demand rebates to cut net costs.

Exactly how much of those rebates actually goes back to employers is in dispute, with some critics contending that PBMs take more than their fair share.

"Employers incorrectly think, 'Oh, my God, I got this monster rebate check,'" said Scott Martin, chief executive of Ketchum, Idaho-based Rescription. "But the only reason you're getting a massive rebate is because you're paying exponentially more on the drugs than you did last year."

Scott Martin is chief executive of Rescription, which saves employers money by funneling workers to special hospital pharmacies instead of traditional drugstores. PHOTO: ANDREA MARTIN

The arrangements with 340B hospitals avoid rebates because the hospitals buy directly from the drugmakers at the discounted price—and through these plans they pass on that low price directly to the employers, the companies say. The PBMs make money by charging a monthly administrative fee for the employees they manage.

These models, and the 340B program itself, are controversial.

The 340B program has grown into a behemoth since it was created by Congress in 1992, cutting the cost of drugs today for thousands of participating hospitals. In 2023, 340B hospitals purchased $66 billion in drugs, according to federal data, and at an estimated 55% discount to their list prices, according to Iqvia.

It has raised the ire of pharmaceutical companies that say 340B encroaches on their profits while enriching already-fat hospitals that sometimes abuse the program. For instance, hospitals sometimes charge marked-up prices on the discounted drugs to uninsured patients and insurers instead of passing on the savings to the poor.

Extending those discounts instead to employers pushes the envelope even further, critics say.

"It is a blatant abuse of the program," said Adam Fein, president of the research group Drug Channels Institute, and a critic of PBMs and the 340B system.

Martin says his program is compliant with regulations governing the 340B program, which is meant to help hospitals offset the cost of caring for the indigent. The program benefits the hospital by expanding its revenue, "while simultaneously delivering significant savings for employer-sponsored prescription drug programs," Martin said.

Martin said Rescription is careful to avoid the abuses that some critics have levied against the 340B program, such as not passing along the discounts to patients. Hospitals pass along 100% of the discounts they receive through 340B to employers, and are compensated only with a dispensing fee for each prescription they provide to patients, he said.

Rescription targets the 5% of high-price drug claims that comprise 70% or more of prescription-drug spending, says Martin. The company gives clients a guaranteed price for every drug, using 340B prices for high-cost medicines; for typical generic and branded drugs, it uses benchmark pricing of retail pharmacy acquisition costs published by the Centers for Medicare and Medicaid Services.

To make this work, employees who participate in Rescription's program must become a patient at a participating 340B hospital.

So far, Rescription has enrolled two hospitals and piloted the program with the hospitals' own employees, including Louisiana's Baton Rouge General Medical Center. The hospital implemented the program earlier this year, reaching roughly 4,000 employees and dependents covered by its health plan.

Case 1:26-cv-01190   Document 1-2   Filed 04/08/26   Page 137 of 155



Louisiana's Baton Rouge General Medical Center implemented Rescription's program earlier this year.
PHOTO: BATON ROUGE GENERAL

Pharmaceuticals represent about 32% of the hospital system's $31 million health-insurance costs, said Paul Douglas, senior vice president of strategy, business development and human resources at Baton Rouge General Medical Center. "It was becoming unsustainable," he said. "We just couldn't afford these year-over-year increases."

In January, the hospital's prescription-drug spending was 33% lower than in the same month a year earlier, said Douglas. Baton Rouge says its greatest use of 340B is in its emergency room and infusion center, where it typically gets paid a fixed dollar amount for each episode of care.

For some high-cost drugs, Baton Rouge's 340B discounts are upward of 80%. The rheumatoid arthritis drug Enbrel, for example, will cost $600, compared with an average net price of $4,830 after rebates through other PBMs, according to marketing material by Rescription and Baton Rouge General.

To be eligible for the discounts, employees must complete a telehealth visit with one of Baton Rouge's clinical pharmacists. So far, 99% of workers taking high-cost drugs have signed up for Rescription, according to Douglas. And they all receive their medications with no out-of-pocket costs.

At Bergen New Bridge Medical Center, a safety net hospital in Paramus, N.J., spending on employee prescription drugs also fell. In 2023, the first year it joined with Rescription, prescription-drug spending was reduced by 28%, compared with what it

would have spent under its previous PBM, said Bergen's Geoffrey Gibson, senior vice president of corporate affairs.



Bergen New Bridge Medical Center saw spending on employee prescription drugs fall after it began working with Rescription. PHOTO: KENA BETANCUR/AGENCE FRANCE-PRESSE/GETTY IMAGES

The hospital also saw its year-over-year drug spending decline last year. Bergen New Bridge paid 1% to 3% less for its drugs, compared with the 8% to 10% increase employers usually expect, Gibson said. The hospital system has about 2,200 people on its health benefits plan, including employees and their dependents. Bergen says it also passes along the discounts it receives to uninsured patients.

Bergen New Bridge is in the process of obtaining a state retail pharmacy license by the end of this year, so that it and Rescription can start marketing the program to other employers in the state. New Bridge will be responsible for dispensing medications through its pharmacy.

Louisiana-based Liviniti, a PBM formerly known as Southern Scripts, is also in the business. The company guarantees drug cost savings of at least 20% and $0 out-of-pocket cost for many patients through its TelesaverRx service. Employees just need to have a once-annual telehealth visit, via phone or videoconference, with someone from a 340B hospital, according to company marketing online.

In one case, Liviniti said, a client saved $41,000 over a year on an employee's multiple sclerosis medication Gilenya by tapping the hospital discounts.

**Corrections & Amplifications**
Liviniti has been in business over 10 years. An earlier version of this article incorrectly said the company was a startup. (Corrected on March 15)

*Payer Matrix* Injunction Hearing Transcript

*Payer Matrix* Injunction Hearing Transcript

222

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABBVIE, INC.,                          )  Case No.  23 C 2836
                                       )
                  Plaintiff,           )
                                       )
        v.                             )
                                       )
PAYER MATRIX, LLC,                     )  Chicago, Illinois
                                       )  January 30, 2025
                  Defendant.           )  10:25 a.m.
                                       )

    TRANSCRIPT OF PROCEEDINGS - PRELIMINARY INJUNCTION HEARING

        BEFORE THE HONORABLE GEORGIA N. ALEXAKIS

APPEARANCES:

For the Plaintiff:     ARNOLD & PORTER KAYE SCHOLER LLP
                       BY:  MS. VALARIE HAYS
                            MR. DANIEL E. RAYMOND
                            MS. EMILY DORNER
                            MR. NICHOLAS C. ZEBROWSKI
                            MR. STEPHEN FERRO
                       70 West Madison Street, Suite 4200
                       Chicago, Illinois 60602

                       BY:  MR. VOLODYMYR PONOMAROV
                       601 Massachusetts Avenue, NW
                       Washington, DC 20001-3743

                       BY:  MR. STEPHEN CHA-KIM
                            MR. MAX ROMANOW
                       250 West 55th Street
                       New York, New York 10019-9710

Court Reporter:        JENNIFER COSTALES, RMR, CRR, CRC
                       Official Court Reporter
                       219 S. Dearborn Street, Room 1714
                       Chicago, Illinois 60604
                       Telephone:  (312) 435-5895
                       jenny.uscra@yahoo.com

                     *    *    *    *    *

            PROCEEDINGS REPORTED BY STENOTYPE
    TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

223

APPEARANCES:   (Continued)

For the Defendant:        SHEPPARD MULLIN RICHTER & HAMPTON LLP
                          BY:  MR. DAVID M. POELL
                               MR. JULES MAX ROGERS
                          321 North Clark Street, 32nd Floor
                          Chicago, Illinois 60654

                          BY:  MS. DANIELLE VRABIE
                               MS. MEGHAN M. STUER
                          30 Rockefeller Plaza
                          New York, New York 10112

get charged.

Q.   So no markup from Payer Matrix?

A.   No, because we're not, we're not rebilling it.

Q.   So the only fees you earn are the 10 percent, is that your testimony?

A.   We get the 10 percent.  RxFree4Me marks up somewhat on before they invoice the clients.

Q.   So Payer Matrix gets that benefit because they get a higher -- there is a higher number that they're taking the 10 percent from, is that fair to say?

A.   Correct.

Q.   Okay.  I want to now turn to discussing another way Payer Matrix is currently using AbbVie's medicines.

        The international sourcing program isn't the only new program that Payer Matrix is offering using AbbVie's medicines, right?

A.   Correct.

Q.   In your review of the BRG summary chart, did you see that several of the patients on the chart were listed as receiving their medicines from BioPlus pharmacy?

A.   Yes.

Q.   And BioPlus is the pharmacy that Payer Matrix uses in its new Enhanced Care Management Program, right?

A.   It's actually not our program.  That's another vendor called Pharma Strategies.

MS. HAYS: Your Honor, we're going to be referring to tab 72 of the binder, which is an impeachment document.

(Discussion off the record)

MS. HAYS: We'll mark this as Plaintiff's Exhibit 254.

BY MS. HAYS:

Q. Do you recognize the document --

A. Yes.

Q. -- in 274, or in tab 72?

So you just testified it's not -- the Enhanced Care Management Program is not your program, right? That was your testimony?

A. It's Pharma Strategies' program.

Q. Okay.

A. Which we say right in the first line.

Q. There is Payer Matrix' letterhead on the document, true?

A. Yes.

Q. It says, "In partnership with Pharma Strategies, Payer Matrix, your trusted specially drug advocacy program, now offers an additional way for you and your members to maximize health care dollars on high cost specialty medications for chronic health conditions."

A. Okay.

Q. Did I read that correctly?

A. Yes.

Q.   So it's a program that you are partnering with Pharma Strategies in?

A.   Correct.

Q.   What services does Payer Matrix Enhanced Care Management Program provide its clients related to AbbVie's medicines?

A.   Well, first off, there are, I think, five AbbVie members that I'm aware of getting product through this program.  It is -- BioPlus ends up dispensing the product, and they can offer a discount of 20 percent to our plan sponsors.

Q.   And how is it arranged that BioPlus can offer that 20 percent discount?

A.   That's the pricing solution that they offer.

Q.   Right.  I'm saying how does that pricing solution work?

A.   I don't know what you mean.  I'm sorry.

Q.   Well, how does BioPlus manage to get a 20 percent discount on AbbVie's products?

A.   I believe that they're utilizing 340(b) discounts.

Q.   Right.  So this Enhanced Care Management Program involves Payer Matrix using discounts that are provided by AbbVie for the federal government's 340(b) program, right?

          THE COURT:  What is a 340(b)?  Answer the question. And then if someone can clue me in as to what a 340(b) program is, I'd appreciate it.

BY THE WITNESS:

A.   So, yes.  A 340(b) program is a program the government

provides to give -- and I might, I might botch this, and I apologize. They provide discounts on medication to federally qualified health centers. So they offer significant discounts on medications that get billed to insurance. And the profits that the federally qualified health center, they're able to keep those and put them back into patient services and things like that.

So this is a program that members, if they're interested and if their plan is interested, they are -- they become part of that federally qualified health center and become a patient of the FQHC.

THE COURT: What is an FQHC?

THE WITNESS: The federally qualified health center.

THE COURT: What makes someone qualified to be a federally qualified health center?

THE WITNESS: Am I explaining all of this correctly? I'm sorry.

MS. HAYS: Your testimony.

THE COURT: Do the best that you can, just so I can appreciate the significance of the evidence that I'm hearing. That's all I'm asking for.

THE WITNESS: Okay. They are qualified as a nonprofit entity by the government.

THE COURT: Okay. Thank you.

BY MS. HAYS:

Q. And the way the federally qualified health clinics are selected is they are supposed to be serving patients who are living in underserved areas, and they're located in underserved areas, is that fair to say?

A. I don't know the nuances on that.

Q. Okay. To qualify for receiving one of these AbbVie discounts, a patient's healthcare provider has to be working at one of these federally qualified health clinics, true?

A. That's true.

Q. Okay. But what Payer Matrix's new program does is it has commercially insured patients living in other areas do a 20 to 30-minute telehealth appointment with these clinics once a year in an attempt to qualify for these discounts, true?

A. They are state driven. So the members live in that state. And all members who receive services from a 340(b) institute usually have commercial insurance. They bill commercial insurance all the time. It's pretty common.

Q. And my question was about how these patients qualify for these discounts or their plan sponsors actually because they're insured, their plan sponsors qualify for them. The patients don't live -- they live in the state, but they don't live in the area, the underserved area. They have a 20 to 30-minute telehealth appointment once a year with these clinics, and that's Payer Matrix's basis for claiming discounts for these patients, true?

A.   I don't know where these patients live or if they live in an underserved area.  All the members get a telehealth visit regardless of where they live.

Q.   And these patients are told that you have to have -- you can have this telehealth appointment, but you get to keep your actual real doctors, right?

A.   Correct.

THE COURT:  When you say all the members get a telehealth visit regardless of where they live, who is all the members?

THE WITNESS:  The five members that are receiving these products.

THE COURT:  The five members of the plan?

THE WITNESS:  Mm-hmm.

THE COURT:  Okay.

THE WITNESS:  Or the five members who elect to have this type of service.

THE COURT:  Okay.

BY MS. HAYS:

Q.   Does Payer Matrix intend to expand this program as it applies to AbbVie patients?

A.   We've been working with Pharma Strategies for quite some time, longer than international.  I don't know what the future holds, but a lot of our clients aren't interested.

Q.   In the little bit of time I have left, Ms. Hoefner, I do

**Pharma Strategies Brochure**







# Self-Insured Health Plan Specialty Medication Savings Program

The Enhanced Care Management Program (ECMP) is a plug-and-play, chronic care support program developed, managed, and offered by Pharma Strategies. This proven and confirmed methodology can be easily added to almost any existing self-insured arrangement to improve medical outcomes and significantly lower pharmaceutical expense. The program is provided at no cost to the member, requires no provider changes, and is designed to be implemented with minimal administrative impact.

The Pharma Strategies ECMP solution incorporates established community health networks and their available drug discounts to provide members with improved care coordination and disease management strategies, while at the same time providing plan sponsors with substantially lower RX prices which when combined lead to better long-term claims results.



**PharmaStrategiesInc.com**







Existing prescriptions remain in place and are now authorized under the new ECMP, where they are eligible for program associated pricing discounts. This discount equates to a **20% savings to the employer health plan on all affected pharmaceuticals**.

**Guaranteed 20% Savings**

**Additional Care**

The ECMP provides members with an additional level of care, not a replacement. **Members keep all their existing primary care and specialty physicians.**

The ECMP requires no capital investment and is provided at **no ongoing administrative cost to the member**.

**No Cost for Members**

**Plug & Play**

The ECMP plugs into the existing plan structure **allowing the plan sponsor to keep its current health plan design and broker relationship**. No vendor changes occur, no material modifications to the plan, and the program can start on any date.



To participate, patients have **one annual telehealth visit or video conference consultation** for a minimal fee, paid for by the plan sponsor ($85).  All scripts are sent through mail order with special handling and services.

Individuals managing chronic conditions represent 50% to 75% of total healthcare expenditures for most employers.



# TRENDS

In addition to the continuing rising costs of pharmaceuticals, patient identification and corresponding diagnoses have also increased. These factors contribute to an average pharmacy plan representing 25% to 35% of total healthcare costs.



**25% to 35%**

Pharmacy represents **25% to 35% of the overall expense on healthcare** and is expected to increase at a rate of 5% to 10% each year for the foreseeable future.

Specialty drug spend is expected to see more than a 3% price inflation in the upcoming years.



The bio-specialty drug category accounts for **35% to 55% of total** pharmacy spend on average in the US and is expected to increase to 60% even **though only 1% to 3% of Americans use specialty drugs**.



60% of Americans live with a chronic illness, and account for **91% of all prescriptions** filled. In addition, health care coverage costs for individuals managing a chronic condition is **5X** higher than those without a condition.



At the time of the COVID-19 outbreak, the use of **telehealth services was expected to grow by 80%** in 2020 alone and forecasted to expand at a rate of 29% by 2025.





## FREQUENTLY ASKED QUESTIONS

### What Is the Enhanced Care Management Program?

The ECMP is being offered through your employer sponsored health plan and provides participating members with additional prescription resources to help better manage their diagnosed chronic health condition. The program is provided at no cost to you and does not require that you change doctors or medications.

### Why Am I Participating In The ECMP?

As part of our ongoing efforts to provide all members managing chronic diseases with solutions that will improve overall health, you have been selected and approved to participate.

### What Are The Main Benefits For Enrolling In The ECMP?

The program provides an additional healthcare resource for members managing chronic conditions. As your employer and plan-sponsor, we strive to maximize our healthcare dollars so we can continue to provide our members with the most competitive benefits package possible.

### Am I Required To Enroll In The ECMP And Use Their Specialty Pharmacy?

Enrollment in the ECMP requires use of our in-network and accredited mail-order specialty pharmacy.

### Are My Prescription Drug Benefits Changing?

Participating in the ECMP does not impact your existing prescription drug plan; it is merely an enhancement to your current plan.

### Will I Be Receiving A New Prescription Benefits Drug Card?

No. You will continue to use your current prescription drug card.

### Will I Have To Change Physicians Or Find A New Specialist?

No. One of the great features of the ECMP is that your relationship with your current physician or specialist does not change.

### Do I Have To Notify My Current Doctor, Specialist, Or Pharmacy That I Am Now Participating In ECMP?

No. Your treating specialist will be notified through the onboarding and enrollment process about your participation.





## FREQUENTLY ASKED QUESTIONS

### Are My Medicines Going To Change?

No. Your medications will remain the same as prescribed through your treating physician.

### How Will I Receive My Medicine?

The same as you always have. Shortly after registering, you will be contacted and asked to confirm the location that you want your medications to be sent by mail order.

### Why Do I Have To Talk With Another Physician If I Already Have One?

A program requirement for those members selected to participate is that they speak with a program healthcare provider once a year. To make it convenient, the visit is conducted by a telehealth or a video phone call. This means you can schedule and complete the 20 to 30 minute call when its most convenient for you.

### Are My Applications And Online Answers Confidential & Secure?

Our online tools and communications meet all HIPAA and security protocols required to protect your personal information. All information provided remains confidential and will never be shared.

### Do I Have To Sign Up During My Employer's Open Enrollment Period?

The ECMP is an addition to your current plan and can be implemented at any time throughout the year. You will be notified via email regarding the timeframe to enroll.

### Where Can I Go To Get Answers About My Health Plan And/Or My Prescription Plan Benefits?

Your HR Department will assist with any questions regarding benefits or your pharmacy plan.

### Can My Spouse Or Dependents Participate In The ECMP?

Yes. Any family members or dependents that are on the employer health plan can participate if they are diagnosed with a chronic condition.

### Does ECMP Cover Prescriptions For Preexisting Conditions?

If your prescription is currently through your employer health plan and it qualifies for the ECMP, then it will be covered.




## FREQUENTLY ASKED QUESTIONS

### What Do I Do If I Am Diagnosed With A New Chronic Condition?

No action is required. You will be identified for the program based on your prescribed medication and will receive a communication package detailing how to enroll for the program. If you are already enrolled in the ECMP, then your new medication will be added.

### How Do I Enroll In The ECMP?

Click on the link in the communication package to be directed to Pharma Strategies secure registration and scheduling portal.

- Create a password-protected personal account.
- Accept program-related consent forms.
- Fill out a confidential health questionnaire.
- Schedule your 30-minute telehealth consultation.

### Once I'm Enrolled, Do I Have To Do Anything Else?

No. But remember shortly after completing your telehealth consultation, you will be contacted by your new specialty pharmacy to arrange and confirm your specialty medication shipping instructions.

### What Happens After I Enroll Online?

- You will immediately receive a text or email confirming the date and time of your selected telehealth appointment.
- Appointment reminders will be sent to you 24 hours prior and again 30 minutes prior to your scheduled telehealth visit.
- On the confirmed date/time of your telehealth visit, simply click the link contained in your day-of appointment reminder (smartphone or computer), and you will be connected with a program provider.
- Approximately one week after your telehealth visit has been completed, you will be contacted by the Specialty Pharmacy to schedule the delivery (location/time) of your specialty medication prescription.

### What Types Of Questions Will I Be Asked During The Initial Consultation And Annual Telehealth Calls?

The healthcare provider will ask you questions specific to the condition for which you have been prescribed the specialty drug, inquire about any specialty drug side effects, ask how you are tolerating the specialty drug, and be able to answer questions you may have. These consultations do not replace your visits with your current PCPs and specialists.

 

## FREQUENTLY ASKED QUESTIONS

### What Information Am I Required To Provide The Specialty Pharmacy?

You will provide the same information you have given your current specialty pharmacy including payment information for any amounts not covered by your plan.

### Will My Prescription Be Transferred To The New Specialty Pharmacy Automatically?

Yes. Within a couple of days following your initial telehealth consultation, you will be contacted by the specialty pharmacy regarding prescription transfer approvals. One of their pharmacists will contact your existing pharmacy and treating specialist to transfer your prescription.

### What If There Are No Refills Left For My Medication?

You will follow the same process as you always have and obtain a new prescription if there are no more refills for your medication. You can contact your healthcare provider for a new prescription, or the specialty pharmacy can work directly with your provider to request a refill.

### Will I Need To Go Through The Pre-Authorization Process Again?

The process will work exactly as it does currently. While your Prior Authorization (PA) is still in effect, you will not need to go through the process again. Before your PA expires, please ask your provider to contact the specialty pharmacy to renew your PA.

### Will I Be Able To See My Prescription Information Online?

Yes. The specialty pharmacy offers an online patient dashboard that provides an easy way to access the information you need about your specialty pharmacy care for yourself and your dependents. Details are available after your initial consultation.

### When Will The Plan Receive The Savings?

The savings are immediate.  The plan will receive the reduced cost of the pharmaceutical when the prescription is filled.



PharmaStrategiesInc.com